## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| JACK BOOTHE, Individually and on Behalf of All Others Similarly Situated, | Case No.: 1:16-cv-03742-JKB |
| Plaintiff, | **ORAL ARGUMENT REQUESTED** |
| v. | |
| NORTHSTAR REALTY FINANCE CORP., INC., *et al.*, | |
| Defendants. | |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO INTERVENE AND FOR RELIEF FROM FINAL ORDER AND JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................1

ARGUMENT .....................................................................................................3

    I.    The Court Should Grant the Rule 60 Motion..............................................3

        A.    The Settlement Admittedly Violated the PSLRA ...........................3

        B.    It Is Clear that the Court Was Misled About the Nature of Claims Being Released.......................................................................5

        C.    It Is Fundamentally Unfair to Allow Defendants to Use a Disclosure-Only Settlement to Extinguish $1 Billion in Securities Claims that They, But No One Else, Were Aware of ....................................7

        D.    The Record Is Clear Concerning Plaintiff's Failure to Properly Investigate the Released Claims ...................................8

        E.    The Federal Rules Have Changed to Prevent the Secret Pay-Off that Was Likely Made to Objector-Appellee Dvores ..................................10

    II.    The Parties' Procedural Arguments Do Not Change the Analysis ..........................11

        A.    Intervenors Have Satisfied the Conditions for Rule 24 and 60 Motions ................................................11

            1.    Timeliness .....................................................11

            2.    The Class Has Meritorious Securities Act Claims............................13

            3.    The Class Was Not Adequately Represented ...................................17

            4.    Granting This Rule 60 Motion Does Not Prejudice Plaintiff or Defendants ..................................................18

CONCLUSION....................................................................................................19

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Boryan v. U.S.*,
   884 F.2d 767 (4th Cir. 1989) ..................................................................7

*In re Constar Int'l Inc. Sec. Litig.*,
   585 F.3d 774 (3d Cir. 2009)..................................................................14

*Dutton v. Harris Stratex Networks Inc.*,
   270 F.R.D. 171 (D. Del. 2010) ..............................................................16

*In re Enron Corp. Sec., Deriv. & ERISA Litig.*,
   235 F. Supp. 2d 549 (S.D. Tex. 2002) ............................................14, 15

*Gould v. Alleco, Inc.*,
   883 F.2d 281 (4th Cir. 1989) ..........................................................12, 13

*In re Jiffy Lube Sec. Litig.*,
   927 F.2d 155 (4th Cir. 1991) ..................................................................7

*Kapps v. Torch Offshore, Inc.*,
   379 F.3d 207 (5th Cir. 2004) ................................................................16

*Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*,
   238 F.3d 363 (5th Cir. 2001)................................................................14

*Malinowski v. The Lichter Grp., LLC*,
   165 F. Supp. 3d 328 (D. Md. 2016) ........................................................5

*Scott v. Bond*,
   734 F. App'x 188 (4th Cir. 2018) ........................................................12

*In re Trulia, Inc. Stockholder Litig.*,
   129 A.3d 884 (Del. Ch. 2016)..............................................................19

*United Airlines, Inc. v. McDonald*,
   432 U.S. 385 (1977)..............................................................................13

*In re USEC Sec. Litig.*,
   168 F. Supp. 2d 560 (D. Md. 2001) ....................................................3, 4

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982)......................................................................7

**STATUTES, RULES & REGULATIONS**

15 U.S.C.
§77k ................................................................................................................14
§77k(a) ...........................................................................................................14
§77*l*(a)(2) ........................................................................................................16
§78u-4(a)(3)(A)(i) ..........................................................................................4, 5

FEDERAL RULES OF CIVIL PROCEDURE
Rule 23(e)(1)(C) .............................................................................................13
Rule 23(e)(5)(B) ...................................................................................2, 10, 11
Rule 60(c) ........................................................................................................12

**OTHER AUTHORITIES**

*Recent and Proposed Amendments to the Federal Rules – Annual Report 2017*,
U.S. COURTS (2018) .........................................................................................11

Wright & Miller, FED. PRAC. & PROC. §1797.1 (3d ed.) ..............................13

Proposed Intervenors Michael Bumgardner, William Pennington, John Wood, and Marjorie Wood ("Intervenors"), by and through their undersigned counsel, respectfully submit this Reply Memorandum of Law in Further Support of their Motion to Intervene and for Relief from Final Order and Judgment pursuant to Rules 24 and 60 of the Federal Rules of Civil Procedure ("FRCP"), respectively.

## INTRODUCTION

This is a securities class action regarding a tri-party merger that occurred in 2016. Plaintiff Jack Boothe ("Plaintiff" or "Boothe") alleged that the related Proxy was "materially incomplete and misleading" in very specific respects (ECF No. 1 at ¶¶2-3, 20-33) and Plaintiff's counsel settled this case for additional disclosures and attorneys fees.[1] In exchange, Defendants received a broad release of any and all claims related to the merger transaction. In order to secure court approval of the Settlement, Plaintiff's counsel represented to this Court that the class did not possess monetary claims. But this was not true. It is now clear that the settlement order in this case must be vacated or modified in order to avoid grave injustice to the class. Intervenors have brought putative class actions with $1 billion of strict liability securities claims that Defendants claim this settlement released.

The Court should vacate or amend the Order and Final Judgment (the "Order") because the release was unduly broad in light of the minimal investigation conducted by counsel, it extinguishes more than a billion dollars in securities claims for zero monetary consideration, and was approved based on incorrect statements made to the Court by Plaintiff's counsel about the nature of the claims being released. In addition, the Order violated the PSLRA.

---

[1] All capitalized terms herein are defined in Intervenors' opening brief, unless otherwise indicated. *See* ECF No. 36-1.

The opposition briefs filed by Plaintiff (ECF No. 43, hereinafter "Pl. Opp.") and Defendants (ECF No. 42, hereinafter "Defs. Opp.") provide no meaningful rebuttal to Intervenors' motion. First, Boothe admits to violating the PSLRA. Boothe wishes to gloss over this issue, but it is incredibly problematic to settle a case governed by the PSLRA in violation of the PSLRA. Second, neither Plaintiff nor Defendants provide any real explanation regarding the misrepresentation clearly made to the Court at the Fairness Hearing regarding the release of monetary damages. The record is clear that this Court was misled and its role as independent guardian of absent class members was, therefore, critically undermined. If the parties had been honest with the Court, the settlement would not have been approved.

Third, Plaintiff offers no substantive defense regarding the due diligence he claims to have undertaken prior to settling the case and agreeing to the broad release. Plaintiff summarily states that due diligence was performed, but provides no meaningful explanation of what documents were actually reviewed or how counsel reached the view that it was fair and reasonable to release all securities claims related to the Proxy.

Finally, the parties try to take credit for Objector-Appellant Lawrence D. Dvores's ("Dvores") appeal being dismissed without addressing Intervenors' very reasonable assumption that it was due to a monetary settlement with him. That the parties do not acknowledge that Dvores was paid off to cease his appeal demonstrates the unfair and questionable nature of counsel's conduct in this case, particularly given the fact that this conduct would now be barred under recent changes to the FRCP. *See* FRCP 23(e)(5)(B).

Unable to mount a substantive defense, Defendants and Plaintiff both focus on procedural arguments, essentially arguing that Intervenors are too late to bring their application. This argument fails for three reasons. First, Intervenors are not too late. FRCP Rule 60 provides a

one-year time limit for an intervention motion and this motion is indisputably made within that time period. Moreover, the motion was made within a reasonable time after the March 2018 revelation to the public of the truth about the status of the merged company, and after the pending appeal of this case was voluntarily dismissed on September 14, 2018. Second, the argument made by Defendants and Plaintiff would allow them to benefit from their own deceptive behavior. Had the parties acted properly – Defendants by disclosing to investors the true status of the merging companies at the time of the merger, and Plaintiff by admitting to the Court that valuable potential monetary claims were being released – the Court would not have approved the settlement and there would be no timeliness issue. Finally, the parties' argument is inconsistent with the primary role of the Court being to provide justice and correct wrongdoing and to protect the class in the class action context.

## ARGUMENT

### I.     The Court Should Grant the Rule 60 Motion

#### A.     The Settlement Admittedly Violated the PSLRA

Plaintiff cannot and does not dispute that he violated positive law in failing to comply with the PSLRA and provide statutory notice to the class of the lawsuit and the ability to move for lead plaintiff. The PSLRA is a principal securities law. "Congress enacted the PSLRA, 'in response to perceived abuses in securities fraud class action litigation[.]'" *In re USEC Sec. Litig.*, 168 F. Supp. 2d 560, 563-64 (D. Md. 2001) (quoting *In re Microstrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 430 (E.D. Va. 2000)). The principal motivation "'was the belief that the plaintiff's bar had seized control of class action suits, bringing frivolous suits on behalf of only nominally interested plaintiffs in the hope of obtaining a quick settlement.'" *Id.* at 564 (quoting *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 58 (D. Mass. 1996), citing S. REP. NO. 104-98

(1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 687-90). This concern is what played out in this case.

The PSLRA changed the procedure for establishing control of the litigation. First, the plaintiff who filed the initial complaint must give notice to absent class members of the case and inform them of the opportunity to serve as lead plaintiff. 15 U.S.C. §78u-4(a)(3)(A)(i). Then, there must be "a selection process whereby the most adequate plaintiff or plaintiffs would be selected to lead the litigation[,]" rather than it automatically being the plaintiff who filed the case. *USEC*, 168 F. Supp. 2d at 564 (citing *In re Lucent Techs., Inc., Sec. Litig.*, 194 F.R.D. 137, 144-45 (D.N.J. 2000)). The procedure is mandated by federal law and "designed to provide assurances that the litigation in question is being pursued by the actual plaintiffs, as opposed to nominal or so-called 'professional' plaintiffs." *Id.* (citing *Greebel*, 939 F. Supp. at 58). This is why this Court has said that "the failure of a plaintiff to serve a notice to class members [is] fatal to the maintenance of a putative class action." *Id.* at 566.[2] Plaintiff's complete disregard of the required procedure is thus hugely problematic and should void the settlement under the circumstances present here.

That Defendants did not object to Plaintiff's failure to comply with the PSLRA is also telling. Indeed, it demonstrates the conflict of interest that was present in this case. Defendants had little incentive to keep the case in compliance with federal law when they were promised a broad release for no monetary damages and limited disclosures. Likewise, Plaintiff's counsel's ability to unilaterally approve a disclosure-only settlement in exchange for a broad release,

---

[2] Plaintiff disputes that *USEC* supports the proposition that failure to provide adequate notice is fatal to a PSLRA class action despite the case saying just that. Pl. Opp. at 20 n.21. Plaintiff is wrong. The court there specifically "conclude[d] on the record [] that the notice and certification requirements of the PSLRA *[had]* been met in [that] case." 168 F. Supp. 2d at 556-67. There is no dispute here that the notice requirements of the PSLRA were not met.

without thoroughly investigating what was being released, would potentially have been compromised had other class members been notified of their ability to move for lead plaintiff.

Plaintiff asserts that his admitted deficiencies in complying with the PSLRA were "cured during the settlement process." Pl. Opp. at 19-22. This is far from the case. Plaintiff's notice deficiencies were never cured. Notifying the class of a settlement once a case is over is not the same as notifying the class of a lead plaintiff opportunity and deadline. Plaintiff's other justifications for ignoring the PSLRA's requirements do not hold water either. Plaintiff points to the fact that the case was "disclosed in public filings with the SEC in the [] Proxy and publicized by news agencies throughout the proceedings, including publication of the proposed settlement prior to its preliminary approval." *Id.* at 21. Yet this is not what the PSLRA requires. *See* 15 U.S.C. §78u-4(a)(3)(A)(i). Plaintiff cannot be permitted to conduct the class action as he and his counsel deem fit, rather than how Congress has dictated.

**B.      It Is Clear that the Court Was Misled About the Nature of Claims Being Released**

Exceptional circumstances exist in this case that justify relief under Rule 60. "[T]he Fourth Circuit has recognized [that] the Rule 60(b) remedy is 'extraordinary' and should only be granted in 'exceptional circumstances.'" *Malinowski v. The Lichter Grp., LLC*, 165 F. Supp. 3d 328, 334 (D. Md. 2016); *see* Defs. Opp. at 12. What was extraordinary here is the fact that the Court was misled during the settlement approval process about a case that did not comply with the PSLRA and that sought approval of a settlement releasing potential Securities Act claims in exchange for no monetary relief to the class and attorneys' fees for Plaintiff's counsel. Both Plaintiff and Defendants attempt to talk around or walk away from this fact, but the transcript from the Fairness Hearing is clear.

Plaintiff's counsel explicitly represented to this Court that no damages claim existed and that, even if there was no broad release, investors could not bring a suit for damages related to the merger:

> MR. MONTEVERDE: . . . defendants cannot get sued for damages after the transaction closes. . . . The only exception is if there's entire fairness. That's if it's a controlled transaction, which wasn't the case here.
>
> * * *
>
> THE COURT: How does this intersect with the agreement then for the bar going forward to future litigation? Are you saying that it really just flows naturally from law that would be governing regardless of your agreement.
>
> MR. MONTEVERDE: Yes. And that's why we can easily give up claims because, frankly, there were no viable claims. And we conducted deposition to ensure there was nothing that could even arise to a potential argument for entire fairness, which can be the traditional procedure where you have a lead buyout, or it could be that someone is receiving a unique benefit, sometimes there's an exception that allows sometimes to argue entire fairness.

Tr. at 9:18-10:16 (ECF No. 36-11); *see also id.* at 27:16-17 ("So the notion that there were claims is just erroneous. Legally there were no claims.").

Moreover, Plaintiff's counsel specifically addressed federal securities claims, again stating there were "no damages" that could be pursued after the merger vote. *Id.* at 11:8-14. Plaintiff's counsel referred only to the "[Securities and] Exchange Act [of 1934]," not even acknowledging the potential existence of the strict-liability Securities Act claims associated with the Proxy and Registration Statement, nor the common occurrence of material misstatements coming to light after the passage of some time:

> MR. MONTEVERDE: . . . There were no claims whatsoever that we felt could be pursued. On the federal side, the Exchange Act, the statute is -- its purpose is to ensure an informed vote. That's its purpose. And if you have the disclosure of material information done before the vote, which is what the statute tends to ensure, there's no damages that you can pursue after.

*Id.*

Plaintiff attempts to walk away from these statements by mischaracterizing them as statements about claims **pled in the Complaint**, rather than claims **being released as part of the settlement**. Pl. Opp. at 18. The excerpts above show this argument to be a defensive attempt to reframe what actually happened at the Fairness Hearing. Defendants simply ignore the transcript excerpts cited by Intervenors and instead reframe the various statements to the Court as "for the sake of argument, . . . a stray misstatement[.]" Defs. Opp. at 19-20. Misstatements like those perpetrated by Plaintiff, and defended by Defendants due to their interest in keeping the broad release in place, undermine the Court's integral and independent function as reviewer of the terms of class action settlements and guardian of absent class members. *See In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991) ("The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations."); *see also Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). Those misstatements must not be allowed to stand as a barrier to meritorious claims that could result in a significant monetary recovery for the investor class.

### C. It Is Fundamentally Unfair to Allow Defendants to Use a Disclosure-Only Settlement to Extinguish $1 Billion in Securities Claims that They, But No One Else, Were Aware of

Rule 60 relief is warranted under Rule 60(b)(2) because new evidence came to light on March 1, 2018, just three months after the Order was signed. This evidence, the public disclosure of a massive write-down by Colony, is newly discovered since the judgment was entered. *See Boryan v. U.S.*, 884 F.2d 767, 771 (4th Cir. 1989) (listing Rule 60(b)(2) elements including new evidence discovered since the judgment was entered).

Defendants argue that the write-down is "not newly discovered evidence" because it was "'not in existence at the time of the judgment.'" Defs. Opp. at 17. But this is not true. While the write-down had not yet been disclosed to the public, the fact that the assets were overvalued

by hundreds of millions of dollars, and that a write-down was inevitable, was certainly known to Defendants well before the March 1, 2018 announcement, including at the time of the Fairness Hearing only three months prior. We know this because, per Colony's own press release, "$375 million write-down of goodwill and intangibles related to our retail investment management business" was recorded for "the fourth quarter and full year ended December 31, 2017." Smith Reply Decl., Ex. P (filed herewith). In other words, even according to Colony, the decline in its business was so significant by the time of the Fairness Hearing that a huge write down was warranted.

While Defendants were aware of the problems and the fact that a write-down was inevitable, they sought and obtained a broad release from Plaintiff, in exchange for nothing but additional disclosures (a "peppercorn")[3] and approximately $328,000 in attorneys' fees. ECF No. 30 at ¶13. This conduct, obscuring the truth both in the Proxy and Registration Statement and during settlement negotiations and at the Fairness Hearing, is pernicious conduct that should not be rewarded by this Court.

### D. The Record Is Clear Concerning Plaintiff's Failure to Properly Investigate the Released Claims

This evidence of an inevitable write-down may also have been discoverable by Plaintiff if his counsel had conducted a thorough investigation before agreeing to a broad release that would dispose of unknown claims. Plaintiff contends that "[f]ull and proper discovery was completed" (Pl. Opp. at 15), but does not actually describe how he was diligent in the context of agreeing to a global release. He does not explain the scope of the discovery performed or why it formed a sufficient basis to believe that no potential monetary securities claims were being released.

---

[3] *See* ECF No. 36-1 at 6 n.7 for discussion of courts that have criticized disclosure-only settlements, which are often referred to as "peppercorn settlements."

Plaintiff simply states generally that his counsel "reviewed voluminous public and private documents, and participated in six depositions, which included a financial advisor (banker) and a Director from each of the three merging companies. This investigation involved the examination of internal financial information prepared by the financial advisors and presented to each Company's board of directors." Pl. Opp. at 14. Even the Joint Memorandum of Law in Support of Motion for Preliminary Approval of Class Action Settlements (the "Preliminary Approval Memo"), in which Plaintiff states that the "timing and extent of the discovery is fully explained" (Pl. Opp. at 15 n.16), does not provide sufficient detail to demonstrate a thorough investigation. *See also* ECF No. 14-1 at 4-5 (the Final Approval Memo). The Preliminary Approval Memo merely states that Plaintiff conducted:

> among other things, a review of publicly available documents related to the Transaction, nonpublic documents produced to Plaintiffs by Defendants, and [ ] depositions of Colony Capital Director John Somers; Cavan Yang, a representative of Bank of America; NRF Director and special committee member Charles Schoenherr; Alan Felder, a representative of UBS; NSAM Director and special committee member Justin Metz; and Keith Wetzel, a representative of Goldman.

ECF No. 10-2 at 6. This is hardly a full explanation. There is no information about what nonpublic documents were reviewed, what topics were covered during the depositions, or even how long the depositions were. There is simply no basis for Plaintiff's assertion that "[t]he discovery enabled counsel to vet the fairness of the Merger to each group of shareholder" (Pl. Opp. at 14), at least not in the context of agreeing to a global release.

Plaintiff also asserts that the Court "was aware of the extensive discovery and vetting process" by virtue of the Preliminary Approval Memo and because, at the Fairness Hearing, Defendants agreed that "'**[t]hey did their diligence.**'" *Id.* at 15 (emphasis in original). Defendants' general nod to Plaintiff's "diligence" is hardly a compelling argument that Plaintiff performed an investigation thorough enough to justify a global release. On the contrary, it is

now clear that Defendants were getting a windfall with the release and had absolutely no reason to stand in the way of the settlement.

### E.  The Federal Rules Have Changed to Prevent the Secret Pay-Off that Was Likely Made to Objector-Appellee Dvores

As discussed in Intervenors' opening memorandum, Objector-Appellant Dvores timely appealed the Order to the Fourth Circuit Court of Appeals.  *See* ECF No. 36-1 at 10.  Intervenors, by their counsel, became involved in that appeal by filing an *amicus* brief.  Then, suddenly, on September 14, 2018, Dvores dismissed his appeal.  It appears that the dismissal occurred because Dvores reached an individual settlement.  This had the effect of ending judicial review of the Order and terms of the settlement, including the release.  It also deprived Intervenors of an active forum to air their claims of unfairness regarding the release.  Neither Plaintiff nor Defendants acknowledge or directly address the notion of a pay-off to Dvores.  However, the FRCP has now changed to bar the type of conduct apparently engaged in by the parties here by requiring a hearing and court approval.  *See* FRCP 23(e)(5)(B) (eff. Dec. 1, 2018).

Pursuant to the Federal Rules of Appellate Procedure, counsel to Intervenors, Scott+Scott Attorneys at Law ("Scott+Scott"), first spoke with Dvores regarding his active appeal in late June 2018 and a number of times thereafter.  *See* Smith Decl. Ex. O at ¶¶2-3 (the Declaration of Thomas L. Laughlin ("Laughlin Decl.")).  Dvores was enthusiastic about the merits of his appeal and agreed that an *amicus* brief could and should be filed by counsel for Intervenors in support of his appeal and in opposition to Plaintiff-Appellee's Motion to Dismiss for Lack of Jurisdiction.  *Id.* at ¶4.  The *amici* brief was filed on July 27, 2018.  Smith Decl., Ex. M.[4]  As stated in the *amici* brief, Plaintiff-Appellee's Motion to Dismiss lacked legal merit.  Then,

---

[4]    The Smith Declaration, and exhibits in support thereof, was filed with Intervenors' opening motion.  *See* ECF Nos. 36-2 to 36-17.

without explanation to the Court, on September 14, 2018, Dvores stipulated with both Plaintiff and Defendants to dismiss the appeal.  Smith Decl., Ex. N.

As of December 1, 2018,[5] the FRCP includes a requirement that any payment made in exchange for abandoning a class action appeal from a judgment approving a settlement must be disclosed and approved by the court.  Specifically, Rule 23(e)(5)(B) now provides, "[u]nless approved by the court after a hearing, no payment or other consideration may be provided in connection with: (i) forgoing or withdrawing an objection, or (ii) forgoing, dismissing, or abandoning an appeal from a judgment approving the proposal."  *Id.*

Rather than address whether a payment was made to Dvores, Defendants simply say his "appeal was later dismissed" (Defs. Opp. at 6) and leave it at that.  Similarly, Plaintiff simply says "the Appeal was dismissed" and that "Dvores dismissed his Appeal."  Pl. Opp. at 6, 9.  The parties' silence speaks volumes.  Indeed, based on the record and the facts, it appears extremely likely that Dvores was paid to dismiss his appeal.

## II.     The Parties' Procedural Arguments Do Not Change the Analysis

### A.      Intervenors Have Satisfied the Conditions for Rule 24 and 60 Motions

#### 1.      Timeliness

The parties largely focus their oppositions on the timeliness of Intervenors' motion. However, this motion was brought within one year of the Order, the time limit set by Rule 60.

---

[5]      The bar has been on notice of this rule change since at least May 10, 2018.  The proposed Rule 23 amendments were approved by the Judicial Conference on September 12, 2017, and transmitted to the Supreme Court on October 4, 2017.  *See Recent and Proposed Amendments to the Federal Rules – Annual Report 2017*, U.S. COURTS (2018) (http://www.uscourts.gov/statistics-reports/recent-and-proposed-amendments-federal-rules-annual-report-2017).  On August 11, 2017, the proposed amendments were published and comments were solicited "from the bench, bar, and public"; the public comment period closed on February 15, 2018.  *Id.*  On April 26, 2018, the Supreme Court adopted the changes and transmitted them to Congress, to be effective December 1, 2018.  *See* Smith Reply Decl., Ex. Q.  This communication was published by the House of Representatives on May 10, 2018.  *Id.*

*See* FRCP 60(c).  Moreover, the timing of the motion is "reasonable" (*id.*) because Intervenors acted diligently to protect their rights.  Intervenors and the public learned of Defendants' Securities Act violations in March 2018, when the write-downs were announced.  Before that occurred, they were not on notice that valuable claims had been released by the Order.  They took action shortly thereafter to file state court cases and to become involved in Dvores's appeal of the Order (via counsel).  The write-downs in March 2018, just over three months after the Order was entered, were a significant change in the circumstances of this case.  The Fourth Circuit has said that "a delay in filing [a Rule 60 motion] might be justified . . . if there ha[s] been a substantial 'change of circumstances' in the case[.]"  *Scott v. Bond*, 734 F. App'x 188, 192 (4th Cir. 2018) (citing *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016)). Finally, soon after Defendants presumably settled with Dvores, and just two months after Dvores's appeal was no longer live, Intervenors took action by bringing this Rule 60 motion.

The cases cited by Defendants denying intervention are not comparable to the instant case.  *See* Defs. Opp. at 7.  First, in neither *Scott* nor *Gould* did the exceptional circumstances exist as those that give rise to the instant motion; namely, the misrepresentations by Plaintiff's counsel that there existed no possible monetary claims that were going to be released and the post-settlement revelation by Defendants of massive problems at the Company that resulted in inevitable write-downs.  In addition, both *Scott* and *Gould* are appellate court opinions that evaluate the ruling of the respective district court using an abuse of discretion standard.  Their respective affirmances that there was no abuse of discretion in denying intervention are therefore not instructive as to whether the motion should be granted in this case.  Moreover, in *Gould*, the proposed intervenors did not even have standing as they were not members of the class, and

there had been "[t]wo years of *extensive* litigation and settlement negotiations[.]" *Gould v. Alleco, Inc.*, 883 F.2d 281, 284, 286 (4th Cir. 1989).[6]

Notably, *Gould* acknowledges "post-judgment intervention may be proper in some cases[.]" *Id.* at 286. For example, *Gould* discusses *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977), in which the U.S. Supreme Court found intervention appropriate where class representatives had been actively pursuing the interests of the class until certiorari was denied. *Gould*, 883 F.2d at 286.

In focusing on the timing of Intervenors' motion, the parties ignore that had they presented the true facts to the Court at the Fairness Hearing, the Court would not have approved the settlement. They also ignore the very strong policy argument against allowing a class action process to disadvantage or exploit the class. Rule 23(e)(1)(C) explicitly directs that a court approving a settlement must find that it is "fair, reasonable, and adequate." *Id.* This is because "[t]he main judicial concern is that the rights of the passive class members not be jeopardized by the possible settlement." Wright & Miller, FED. PRAC. & PROC. §1797.1, at 78-79 (3d ed.). Here, the rights of the class have been jeopardized to the tune of a billion dollars in Securities Act claims.

### 2. The Class Has Meritorious Securities Act Claims

Intervenors, former NRF shareholders who have filed class actions in California state court, allege strict liability claims under §§11, 12, and 15 of the Securities Act against Colony, certain current and former Colony officers and directors, and certain former officers and directors of NSAM, CC, and NRF. Intervenors allege that the Registration Statement issued in

---

[6]    Unless otherwise indicated, all emphasis is added and internal citations are omitted.

connection with the January 2017 merger of NSAM, CC, and NRF omitted material information in violation of the Securities Act and that Intervenors and the class were harmed thereby.

Under §11, "[t]he liability of an issuer to a plaintiff who purchases a security issued pursuant to a registration statement for a material misstatement or omission is 'virtually absolute.'" *Lone Star Ladies Inv. Club v. Schlotzsky's Inc*., 238 F.3d 363, 369 (5th Cir. 2001); *see also* 15 U.S.C. §77k.[7] "To prevail on a claim under §11, a plaintiff must show '(1) that the registration statement contained an omission or misrepresentation and (2) that the omission or misrepresentation was material, that it would have misled a reasonable investor about the nature of his or her investment.'" *Id.* Moreover, "Section 11 does not require a showing of individualized loss causation, because injury and loss are presumed." *In re Constar Int'l Inc. Sec. Litig*., 585 F.3d 774, 785 (3d Cir. 2009) (reversing a district court's dismissal of §11 claims premised on negligence).

Intervenors adequately allege that the Registration Statement contained misstatements or omissions of material facts. The Registration Statement incorporated the SEC filings by NSAM, CC, and NRF concerning their intangible assets and goodwill. Specifically, Intervenors allege that in seeking approval of the merger, the Registration Statement drastically misstated the goodwill and intangible assets in Colony's Healthcare and Investment Management ("IM") segments. Smith Decl., Ex. B at ¶¶6, 32-39.[8] The Registration Statement put the Company's IM

---

[7]     Specifically, "Section 11, 15 U.S.C. §77k(a), creates a private remedy for anyone who purchases a security based on a materially misleading registration statement at the time it became effective against the issuer of the securities, the issuer's directors or partners, the underwriters of the offering, and . . . every person who signed the registration statement[.]" *In re Enron Corp. Sec., Deriv. & ERISA Litig*., 235 F. Supp. 2d 549, 596 (S.D. Tex. 2002).

[8]     Intervenors also allege that Colony's internal controls suffered from material deficiencies and weaknesses, as well as the likely and consequent material adverse effects on the Company's future results and prospects. *Id.* The Registration Statement also stated that "the assets

business segment at the heart of the operation and nearly all benefits revolved around this feature of the merger. The merger, however, faced an insurmountable hurdle – new regulations were forcing Defendants to be transparent about IM fees by requiring Defendants to itemize their fees or describe the value of an investment on a net basis. *Id.* at ¶46. As alleged in the pending federal securities class action filed against Colony, with the new regulations, investors and their financial advisers understandably avoided the Company's retail IM funds because of their excessive fees.[9] These were material facts that reasonable investors would have viewed as significantly altering the total mix of information made available when deciding how to vote on the merger. *See id.* at ¶38; *see also Enron*, 235 F. Supp. 2d at 567. But Defendants made material misstatements regarding the IM segment in the Registration Statement and proceeded with the merger in order to inflate Colony's stock price multiple and the value of their personal holdings. Pursuant to the materially misleading Registration Statement, Defendants completed the merger.

On March 1, 2018, after a year of incredibly optimistic claims about the status and benefits of the merger, Defendants shocked investors by slashing the dividend by approximately 60% and writing down the IM assets by $375 million, which included a $316 million impairment charge to the IM goodwill that was recorded as a direct result of the merger. Smith Decl., Ex. B at ¶6. The stock reacted accordingly, collapsing 23% in a single day of trading. *Id.* at ¶9. After the impairment was disclosed, Defendants admitted that the Company's "earnings performance

---

(including identifiable intangible assets) . . . of NSAM and NRF will be recorded at their respective fair value at the date of the Merger." *Id.* at ¶33.

[9] *See* Amended Complaint for Violations of the Federal Securities Laws (ECF No. 49) at ¶¶27, 35-36 in *Barry v. Colony Northstar, Inc.*, No. 2:18-cv-002888-GW-MRW (C.D. Cal.). In the event this Court grants Intervenors' requested relief, Intervenors plan to file a consolidated amended complaint in California state court that further details the misstatements in the Registration Statement.

has not lived up to expectations, emanating from more challenging industry conditions in health care, real estate we well as our retail broker dealer distribution business," noting the "enormous transition from major regulatory headwinds, including the newly implemented fiduciary rule" in the retail broker-dealer distribution segment. *Id.* at ¶45. Based on these material misstatements in the Registration Statement, Intervenors allege valid §11 claims, as "an issuer is not free to make material misrepresentations, or to omit material information that is either required to be disclosed by law or that is necessary to disclose in order to prevent statements made in the registration statement from being misleading." *Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 213 (5th Cir. 2004).

Intervenors also allege valid §12(a)(2) claims. Section 12(a)(2) imposes liability on a person who sells securities or solicits their purchase using a prospectus that contains omissions or misstatements. 15 U.S.C. §77*l*(a)(2). As explained above, the Registration Statement and incorporated prospectus contained made material misrepresentations and omitted material information. Smith Decl., Ex. B at ¶¶9, 52. Therefore, Defendants violated §12 of the Securities Act. *See* 15 U.S.C. §77*l*(a)(2); Smith Decl., Ex. B at ¶24.

Intervenors also adequately allege §15 claims. Section 15 of the Securities Act provides for joint and several liability on the part of one who controls a violator of §11. 15 U.S.C. §77o. Intervenors sufficiently allege a primary violation of §11 and have demonstrated that Defendants were control persons. Smith Decl., Ex. B at ¶¶56, 70. Accordingly, Intervenors have properly plead claims under §15. *See Dutton v. Harris Stratex Networks Inc.*, 270 F.R.D. 171, 179 (D. Del. 2010) (finding "Plaintiffs have adequately pled" claims under §15 where defendants "signed financial reports and held positions directly relating to the financial disclosures").

### 3.    The Class Was Not Adequately Represented

Intervenors have described how they were not adequately represented by Plaintiff and his counsel in this case.  First, Plaintiff did not comply with the PSLRA.  Second, Plaintiff's counsel put its interests above the class by agreeing to a global release without performing adequate diligence as to what was potentially being released.

In the interest of maintaining their windfall of a blanket release, Defendants unsurprisingly defend Plaintiff's representation of the class.  Defendants acknowledge that Intervenors can satisfy this requirement by '"demonstrat[ing] adversity of interest, collusion, or nonfeasance'" (Defs. Opp. at 10), but refuse to recognize that Intervenors have demonstrated all three.  It is clear that Plaintiff's counsel acted against the interest of the class in agreeing to the broad release.  It is also clear that the parties colluded, even if that collusion was not explicit, to defend the settlement of the case without full disclosure of the true facts to the Court.  Finally, Plaintiff's failure to perform an act required by federal law – that is, his failure to comply with the PSLRA – was nonfeasance.  Contrary to Defendants' defense of Plaintiff, this was not a mere difference of opinion.

Plaintiff relies on the Order, itself drafted by counsel, to defend his counsel's representation of the class.  Pl. Opp. at 14.  This circular argument belies common sense.  Intervenors do not dispute that the settlement was approved by the Court and the Order issued with language stating that Plaintiff's counsel "fairly and adequately protected and represented the interests of the [] Class."  ECF No. 30 at ¶3(d).  The issue, and the whole point of Intervenors' motion, is that the Court approved the Order based on misrepresentations.  Plaintiff's counsel had a key role in those misrepresentations by: (i) failing to thoroughly investigate all representations made in the Registration Statement and Proxy despite agreeing to release all related claims; and (ii) falsely representing to the Court that no monetary claims were being

released as part of the Settlement (because none existed). Intervenors posit that Plaintiff's counsel was more interested in having fees awarded than protecting the class. This is why the class and Intervenors were not adequately represented and why this motion should be granted.

That certain objectors lodged objections to the settlement and were heard at the Fairness Hearing does not trump Intervenors' argument. The mere presence of the objectors is not legally relevant and no case has been cited that states otherwise. Intervenors agree that Dvores raised some of the concerns raised in this motion, which is why Intervenors' counsel stepped in to assist with his appeal. It is also why he was paid off to end his appeal. The key, again, is that no objector or potential objector had all the facts because Defendants had not yet made their write-down disclosures.

### 4. Granting This Rule 60 Motion Does Not Prejudice Plaintiff or Defendants

This motion addresses significant issues of unfairness to the class and misrepresentation by Plaintiff and his counsel, as well as Defendants. On the other hand, the prejudice that would result to the parties from the granting of this motion is minor. The only prejudice is that Defendants will have to have to face and defend a securities class action that they tried to forestall on the cheap. This does not justify denial of relief here.

First, relatively little work was done on the instant case. The case was filed on November 18, 2016; the memorandum of understanding of a settlement ("MOU") was reached on December 9, 2016. ECF No. 5. Even the Court acknowledged that the settlement in this case was arrived at quickly and without much work. *See* Tr. at 46:8-14 ("My view is I don't think there was much here from – on the plaintiff's side. And I think you pursued a resolution of the dispute. I think relatively quickly. You achieved one. You had defendants that had every

incentive to remove impediments and to get their deal done. And I, in looking at the total picture here, don't see that there was some enormously tall or difficult mountain that was climbed.").

Second, vacating or modifying the Order will not undue the merger that was the subject of the underlying suit. The merger closed, thus Defendants got what the litigation originally threatened they would not. Vacating or modifying the Order will not change that.

Third, in class actions with disclosure-only settlements, courts generally recommend that settlement be by voluntary dismissal and a mootness hearing rather than on a class-wide basis. *See In re Trulia, Inc. Stockholder Litig.*, 129 A.3d 884, 896-87 (Del. Ch. 2016). Thus, granting this Rule 60 motion would bring the resolution of the case back to where it should have been originally.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in their opening motion papers, Intervenors respectfully request that the Court grant the motion to intervene and vacate the Order. In the alternative, Intervenors ask the Court to amend the release in the Order with the following language: "Notwithstanding anything in this Order, this Order shall not be construed as a release of the claims at issue in *Bumgardner v. Colony Capital, Inc.*, No. BC712865 (Cal. Super. Ct., L.A. Cty.); *Wood v. Colony Capital, Inc.*, No. BC714159 (Cal. Super. Ct., L.A. Cty.); or *Weitzul v. Colony Capital, Inc.*, No. BC714169 (Cal. Super. Ct., L.A. Cty.)."

DATED:     December 18, 2018
           Baltimore, Maryland

                                        **DEHAY & ELLISTON**

                                         */s/ Patrick C. Smith*
                                        PATRICK C. SMITH (Bar No. 02054)
                                        36 South Charles Street, Suite 1400
                                        Baltimore, MD 21201
                                        Telephone: (410) 783-7019
                                        Facsimile:  (410) 783-7221

**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
THOMAS L. LAUGHLIN, IV
RHIANA SWARTZ
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
Email: tlaughlin@scott-scott.com
         rswartz@scott-scott.com

**ROBBINS ARROYO LLP**
STEPHEN ODDO
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile:  (619) 525-3991
Email: soddo@robbinsarroyo.com

*Counsel for Intervenors*