# EXHIBIT Q

# AMENDMENTS TO THE FEDERAL RULES OF CIVIL PROCEDURE

---

## COMMUNICATION

### FROM

## THE CHIEF JUSTICE, THE SUPREME COURT OF THE UNITED STATES

### TRANSMITTING

AMENDMENTS TO THE FEDERAL RULES OF CIVIL PROCEDURE THAT HAVE BEEN ADOPTED BY THE SUPREME COURT, PURSUANT TO 28 U.S.C. 331



MAY 10, 2018.—Referred to the Committee on the Judiciary and ordered to be printed

---

U.S. GOVERNMENT PUBLISHING OFFICE

WASHINGTON : 2018

79–011

SUPREME COURT OF THE UNITED STATES,
*Washington, DC, April 26, 2018.*

Hon. PAUL D. RYAN,
*Speaker of the House of Representatives,*
*Washington, DC.*

DEAR MR. SPEAKER: I have the honor to submit to the Congress the amendments to the Federal Rules of Civil Procedure that have been adopted by the Supreme Court of the United States pursuant to Section 2072 of Title 28, United States Code.

Accompanying these rules are the following materials that were submitted to the Court for its consideration pursuant to Section 331 of Title 28, United States Code: a transmittal letter to the Court dated October 4, 2017; a redline version of the rules with committee notes; an excerpt from the September 2017 Report of the Committee on Rules of Practice and Procedure to the Judicial Conference of the United States; and an excerpt from the May 2017 Report of the Advisory Committee on Civil Rules.

Sincerely,

JOHN G. ROBERTS, Jr.,
*Chief Justice.*

SUPREME COURT OF THE UNITED STATES

ORDERED:

1.  That the Federal Rules of Civil Procedure be, and they hereby are, amended by including therein amendments to Civil Rules 5, 23, 62, and 65.1.

[*See infra* pp. __ __ __.]

2.  That the foregoing amendments to the Federal Rules of Civil Procedure shall take effect on December 1, 2018, and shall govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings then pending.

3.  That THE CHIEF JUSTICE be, and hereby is, authorized to transmit to the Congress the foregoing amendments to the Federal Rules of Civil Procedure in accordance with the provisions of Section 2074 of Title 28, United States Code.

## PROPOSED AMENDMENTS TO THE
## FEDERAL RULES OF CIVIL PROCEDURE

**Rule 5.   Serving and Filing Pleadings and Other Papers**

\* \* \* \* \*

**(b)   Service:  How Made.**

\* \* \* \* \*

(2)   *Service in General.*  A paper is served under this

rule by:

(A)   handing it to the person;

\* \* \* \* \*

(E)   sending it to a registered user by filing it

with the court's electronic-filing system or

sending it by other electronic means that the

person consented to in writing—in either of

which events service is complete upon

filing or sending, but is not effective if the

filer or sender learns that it did not reach

the person to be served; or

2      FEDERAL RULES OF CIVIL PROCEDURE

\* \* \* \* \*

**(3)** ***Using Court Facilities.*** [Abrogated (Apr. __, 2018, eff. Dec. 1, 2018.)]

\* \* \* \* \*

**(d) Filing.**

    **(1)** ***Required Filings; Certificate of Service.***

        **(A)** *Papers after the Complaint.* Any paper after the complaint that is required to be served must be filed no later than a reasonable time after service. But disclosures under Rule 26(a)(1) or (2) and the following discovery requests and responses must not be filed until they are used in the proceeding or the court orders filing: depositions, interrogatories, requests for documents or tangible things or to

permit entry onto land, and requests for admission.

**(B)** *Certificate of Service.* No certificate of service is required when a paper is served by filing it with the court's electronic-filing system. When a paper that is required to be served is served by other means:

    **(i)** if the paper is filed, a certificate of service must be filed with it or within a reasonable time after service; and

    **(ii)** if the paper is not filed, a certificate of service need not be filed unless filing is required by court order or by local rule.

**(2)** *Nonelectronic Filing.* A paper not filed electronically is filed by delivering it:

    **(A)** to the clerk; or

4          FEDERAL RULES OF CIVIL PROCEDURE

**(B)** to a judge who agrees to accept it for filing, and who must then note the filing date on the paper and promptly send it to the clerk.

**(3)** *Electronic Filing and Signing.*

**(A)** *By a Represented Person—Generally Required; Exceptions.* A person represented by an attorney must file electronically, unless nonelectronic filing is allowed by the court for good cause or is allowed or required by local rule.

**(B)** *By an Unrepresented Person—When Allowed or Required.* A person not represented by an attorney:

**(i)** may file electronically only if allowed by court order or by local rule; and

          **(ii)**   may be required to file electronically only by court order, or by a local rule that includes reasonable exceptions.

  **(C)**  *Signing.*  A filing made through a person's electronic-filing account and authorized by that person, together with that person's name on a signature block, constitutes the person's signature.

  **(D)**  *Same as a Written Paper.*  A paper filed electronically is a written paper for purposes of these rules.

* * * * *

6        FEDERAL RULES OF CIVIL PROCEDURE

**Rule 23.  Class Actions**

\* \* \* \* \*

**(c)  Certification Order; Notice to Class Members; Judgment; Issues Classes; Subclasses.**

\* \* \* \* \*

**(2)  *Notice.***

\* \* \* \* \*

**(B)  *For (b)(3) Classes.*  For any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice may be by one or more

of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language:

* * * * *

**(e)** **Settlement, Voluntary Dismissal, or Compromise.**

The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

**(1)** *Notice to the Class.*

**(A)** *Information That Parties Must Provide to the Court.* The parties must provide the court with information sufficient to enable

8        FEDERAL RULES OF CIVIL PROCEDURE

> it to determine whether to give notice of the
> proposal to the class.
>
> **(B)** *Grounds for a Decision to Give Notice.*
> The court must direct notice in a reasonable
> manner to all class members who would be
> bound by the proposal if giving notice is
> justified by the parties' showing that the
> court will likely be able to:
>
> **(i)** approve      the      proposal      under
> Rule 23(e)(2); and
>
> **(ii)** certify the class for purposes of
> judgment on the proposal.
>
> **(2)** ***Approval of the Proposal.*** If the proposal would
> bind class members, the court may approve it
> only after a hearing and only on finding that it is
> fair, reasonable, and adequate after considering
> whether:

**(A)** the class representatives and class counsel have adequately represented the class;

**(B)** the proposal was negotiated at arm's length;

**(C)** the relief provided for the class is adequate, taking into account:

    **(i)** the costs, risks, and delay of trial and appeal;

    **(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    **(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and

    **(iv)** any agreement required to be identified under Rule 23(e)(3); and

10          FEDERAL RULES OF CIVIL PROCEDURE

(D)  the proposal treats class members equitably
     relative to each other.

(3)  ***Identifying Agreements.***  The parties seeking
     approval must file a statement identifying any
     agreement made in connection with the proposal.

(4)  ***New Opportunity to Be Excluded.***  If the class
     action  was  previously  certified  under
     Rule 23(b)(3), the court may refuse to approve a
     settlement unless it affords a new opportunity to
     request exclusion to individual class members
     who had an earlier opportunity to request
     exclusion but did not do so.

(5)  ***Class-Member Objections.***

(A)  *In General.*  Any class member may object
     to the proposal if it requires court approval
     under this subdivision (e).  The objection
     must state whether it applies only to the

objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection.

**(B)** *Court Approval Required for Payment in Connection with an Objection.* Unless approved by the court after a hearing, no payment or other consideration may be provided in connection with:

**(i)** forgoing or withdrawing an objection, or

**(ii)** forgoing, dismissing, or abandoning an appeal from a judgment approving the proposal.

**(C)** *Procedure for Approval After an Appeal.* If approval under Rule 23(e)(5)(B) has not been obtained before an appeal is docketed in the court of appeals, the procedure of

12      FEDERAL RULES OF CIVIL PROCEDURE

Rule 62.1 applies while the appeal remains pending.

**(f)** **Appeals.** A court of appeals may permit an appeal from an order granting or denying class-action certification under this rule, but not from an order under Rule 23(e)(1). A party must file a petition for permission to appeal with the circuit clerk within 14 days after the order is entered, or within 45 days after the order is entered if any party is the United States, a United States agency, or a United States officer or employee sued for an act or omission occurring in connection with duties performed on the United States' behalf. An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.

\* \* \* \* \*

FEDERAL RULES OF CIVIL PROCEDURE        13

**Rule 62.   Stay of Proceedings to Enforce a Judgment**

**(a)   Automatic Stay.**   Except as provided in Rule 62(c)
and (d), execution on a judgment and proceedings to
enforce it are stayed for 30 days after its entry, unless
the court orders otherwise.

**(b)   Stay by Bond or Other Security.**   At any time after
judgment is entered, a party may obtain a stay by
providing a bond or other security.   The stay takes
effect when the court approves the bond or other
security and remains in effect for the time specified in
the bond or other security.

**(c)   Stay of an Injunction, Receivership, or Patent
Accounting Order.**   Unless the court orders
otherwise, the following are not stayed after being
entered, even if an appeal is taken:

**(1)**   an interlocutory or final judgment in an action
for an injunction or receivership; or

14          FEDERAL RULES OF CIVIL PROCEDURE

**(2)**   a judgment or order that directs an accounting in
an action for patent infringement.

**(d) Injunction Pending an Appeal.**  While an appeal is
pending from an interlocutory order or final judgment
that grants, continues, modifies, refuses, dissolves, or
refuses to dissolve or modify an injunction, the court
may suspend, modify, restore, or grant an injunction
on terms for bond or other terms that secure the
opposing party's rights.   If the judgment appealed
from is rendered by a statutory three-judge district
court, the order must be made either:

**(1)**   by that court sitting in open session; or

**(2)**   by the assent of all its judges, as evidenced by
their signatures.

* * * * *

## Rule 65.1.  Proceedings Against a Security Provider

Whenever these rules (including the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions) require or allow a party to give security, and security is given with one or more security providers, each provider submits to the court's jurisdiction and irrevocably appoints the court clerk as its agent for receiving service of any papers that affect its liability on the security.  The security provider's liability may be enforced on motion without an independent action.  The motion and any notice that the court orders may be served on the court clerk, who must promptly send a copy of each to every security provider whose address is known.



JUDICIAL CONFERENCE OF THE UNITED STATES

WASHINGTON, D.C. 20544

THE CHIEF JUSTICE
OF THE UNITED STATES
*Presiding*

JAMES C. DUFF
*Secretary*

October 4, 2017

MEMORANDUM

To:  Chief Justice of the United States
Associate Justices of the Supreme Court

From:  James C. Duff

RE:  TRANSMITTAL OF PROPOSED AMENDMENT TO THE FEDERAL RULES OF CIVIL PROCEDURE

By direction of the Judicial Conference of the United States, pursuant to the authority conferred by 28 U.S.C. § 331, I transmit herewith for consideration of the Court proposed amendments to Rules 5, 23, 62, and 65.1 of the Federal Rules of Civil Procedure, which were approved by the Judicial Conference at its September 2017 session. The Judicial Conference recommends that the amendments be adopted by the Court and transmitted to the Congress pursuant to law.

For your assistance in considering the proposed amendments, I am transmitting: (i) a copy of the affected rules incorporating the proposed amendments and accompanying Committee Notes; (ii) a redline version of the same; (iii) an excerpt from the September 2017 Report of the Committee on Rules of Practice and Procedure to the Judicial Conference; and (iv) an excerpt from the May 2017 Report of the Advisory Committee on Civil Rules.

Attachments

## PROPOSED AMENDMENTS TO THE
## FEDERAL RULES OF CIVIL PROCEDURE[1]

1 **Rule 5.  Serving and Filing Pleadings and Other Papers**

2 * * * * *

3 **(b)  Service:  How Made.**

4 * * * * *

5 **(2)**  *Service in General.*  A paper is served under this

6 rule by:

7 **(A)**  handing it to the person;

8 * * * * *

9 **(E)**  sending it to a registered user by filing it

10 with the court's electronic-filing system or

11 sending it by other electronic means ~~if~~that

12 the person consented to in writing—in

13 either of which events service is complete

14 upon ~~transmission~~filing or sending, but is

15 not effective if the ~~serving party~~filer or

---

[1] New material is underlined; matter to be omitted is lined through.

16              sender learns that it did not reach the person

17              to be served; or

18                              * * * * *

19          **(3)  *Using Court Facilities.*** ~~If a local rule so~~

20              ~~authorizes, a party may use the court's~~

21              ~~transmission facilities to make service under~~

22              ~~Rule 5(b)(2)(E).~~ [Abrogated (Apr. __, 2018, eff.

23              Dec. 1, 2018.)]

24                              * * * * *

25  **(d)  Filing.**

26      **(1)  *Required Filings; Certificate of Service.***

27          **(A)  *Papers after the Complaint.***   Any paper

28              after the complaint that is required to be

29              served ~~together with a certificate of~~

30              ~~service~~ must be filed ~~within~~no later than a

31              reasonable  time  after  service.     But

32              disclosures under Rule 26(a)(1) or (2) and

33       the following discovery requests and

34       responses must not be filed until they are

35       used in the proceeding or the court orders

36       filing: depositions, interrogatories, requests

37       for documents or tangible things or to

38       permit entry onto land, and requests for

39       admission.

40       **(B)** *Certificate of Service.* No certificate of

41       service is required when a paper is served

42       by filing it with the court's electronic-filing

43       system. When a paper that is required to be

44       served is served by other means:

45       **(i)** if the paper is filed, a certificate of

46       service must be filed with it or within

47       a reasonable time after service; and

48       **(ii)** if the paper is not filed, a certificate of

49       service need not be filed unless filing

4       FEDERAL RULES OF CIVIL PROCEDURE

50                     <u>is required by court order or by local</u>

51                     <u>rule.</u>

52     **(2)** *<u>Nonelectronic Filing</u>*~~*How Filing Is Made In*~~

53         ~~*General.*~~ A paper <u>not filed electronically</u> is filed

54         by delivering it:

55         **(A)** to the clerk; or

56         **(B)** to a judge who agrees to accept it for filing,

57             and who must then note the filing date on

58             the paper and promptly send it to the clerk.

59     **(3)** *Electronic Filing<u>, and</u> Signing<u>,</u> or ~~Verification.~~*

60         ~~A court may, by local rule, allow papers to be~~

61         ~~filed, signed, or verified by electronic means that~~

62         ~~are consistent with any technical standards~~

63         ~~established by the Judicial Conference of the~~

64         ~~United States. A local rule may require~~

65         ~~electronic filing only if reasonable exceptions are~~

66         ~~allowed.~~

67          **(A)** *By a Represented Person—Generally*

68                  *Required; Exceptions.* A person

69                  represented by an attorney must file

70                  electronically, unless nonelectronic filing is

71                  allowed by the court for good cause or is

72                  allowed or required by local rule.

73          **(B)** *By an Unrepresented Person—When*

74                  *Allowed or Required.* A person not

75                  represented by an attorney:

76                  **(i)** may file electronically only if allowed

77                          by court order or by local rule; and

78                  **(ii)** may be required to file electronically

79                          only by court order, or by a local rule

80                          that includes reasonable exceptions.

81          **(C)** *Signing.* A filing made through a person's

82                  electronic-filing account and authorized by

83                  that person, together with that person's

6                FEDERAL RULES OF CIVIL PROCEDURE

84                          name on a signature block, constitutes the

85                          person's signature.

86                          **(D)** *Same as a Written Paper.*  A paper filed

87                          electronically~~in compliance with a local~~

88                          ~~rule~~ is a written paper for purposes of these

89                          rules.

90                                       * * * * *

### Committee Note

**Subdivision (b).** Rule 5(b) is amended to revise the provisions for electronic service.  Provision for electronic service was first made when electronic communication was not as widespread or as fully reliable as it is now.  Consent of the person served to receive service by electronic means was required as a safeguard.  Those concerns have substantially diminished, but have not disappeared entirely, particularly as to persons proceeding without an attorney.

The amended rule recognizes electronic service through the court's transmission facilities as to any registered user.  A court may choose to allow registration only with the court's permission.  But a party who registers will be subject to service through the court's facilities unless the court provides otherwise.  With the consent of the person served, electronic service also may be made by means that do not utilize the court's facilities.  Consent can

be limited to service at a prescribed address or in a specified form, and may be limited by other conditions.

Service is complete when a person files the paper with the court's electronic-filing system for transmission to a registered user, or when one person sends it to another person by other electronic means that the other person has consented to in writing. But service is not effective if the person who filed with the court or the person who sent by other agreed-upon electronic means learns that the paper did not reach the person to be served. The rule does not make the court responsible for notifying a person who filed the paper with the court's electronic-filing system that an attempted transmission by the court's system failed. But a filer who learns that the transmission failed is responsible for making effective service.

Because Rule 5(b)(2)(E) now authorizes service through the court's facilities as a uniform national practice, Rule 5(b)(3) is abrogated. It is no longer necessary to rely on local rules to authorize such service.

**Subdivision (d).** Rule 5(d)(1) has provided that any paper after the complaint that is required to be served "must be filed within a reasonable time after service." Because "within" might be read as barring filing before the paper is served, "no later than" is substituted to ensure that it is proper to file a paper before it is served.

Under amended Rule 5(d)(1)(B), a certificate of service is not required when a paper is served by filing it with the court's electronic-filing system. When service is not made by filing with the court's electronic-filing system, a certificate of service must be filed with the paper or

8    FEDERAL RULES OF CIVIL PROCEDURE

within a reasonable time after service, and should specify the date as well as the manner of service. For papers that are required to be served but must not be filed until they are used in the proceeding or the court orders filing, the certificate need not be filed until the paper is filed, unless filing is required by local rule or court order.

Amended Rule 5(d)(3) recognizes increased reliance on electronic filing. Most districts have adopted local rules that require electronic filing, and allow reasonable exceptions as required by the former rule. The time has come to seize the advantages of electronic filing by making it generally mandatory in all districts for a person represented by an attorney. But exceptions continue to be available. Nonelectronic filing must be allowed for good cause. And a local rule may allow or require nonelectronic filing for other reasons.

Filings by a person proceeding without an attorney are treated separately. It is not yet possible to rely on an assumption that pro se litigants are generally able to seize the advantages of electronic filing. Encounters with the court's system may prove overwhelming to some. Attempts to work within the system may generate substantial burdens on a pro se party, on other parties, and on the court. Rather than mandate electronic filing, filing by pro se litigants is left for governing by local rules or court order. Efficiently handled electronic filing works to the advantage of all parties and the court. Many courts now allow electronic filing by pro se litigants with the court's permission. Such approaches may expand with growing experience in the courts, along with the greater availability of the systems required for electronic filing and the increasing familiarity of most people with electronic

communication. Room is also left for a court to require electronic filing by a pro se litigant by court order or by local rule. Care should be taken to ensure that an order to file electronically does not impede access to the court, and reasonable exceptions must be included in a local rule that requires electronic filing by a pro se litigant. In the beginning, this authority is likely to be exercised only to support special programs, such as one requiring e-filing in collateral proceedings by state prisoners.

A filing made through a person's electronic-filing account and authorized by that person, together with that person's name on a signature block, constitutes the person's signature.

10          FEDERAL RULES OF CIVIL PROCEDURE

1   **Rule 23.  Class Actions**

2                          \* \* \* \* \*

3   **(c)  Certification  Order;  Notice  to  Class  Members;**

4          **Judgment; Issues Classes; Subclasses.**

5                          \* \* \* \* \*

6          **(2)**  *Notice.*

7                          \* \* \* \* \*

8               **(B)**  *For (b)(3) Classes.*  For any class certified

9                    under  Rule  23(b)(3),  —or upon ordering

10                   notice  under  Rule  23(e)(1)  to  a  class

11                   proposed  to  be  certified  for  purposes  of

12                   settlement under Rule 23(b)(3)—the court

13                   must direct to class members the best notice

14                   that is practicable under the circumstances,

15                   including individual notice to all members

16                   who  can  be  identified  through  reasonable

17                   effort.  The notice may be by one or more

18          of the following: United States mail,

19          electronic means, or other appropriate

20          means.    The notice must clearly and

21          concisely state in plain, easily understood

22          language:

23                              * * * * *

24     **(e)   Settlement, Voluntary Dismissal, or Compromise.**

25          The claims, issues, or defenses of a certified class—or

26          a class proposed to be certified for purposes of

27          settlement—may be settled, voluntarily dismissed, or

28          compromised only with the court's approval.    The

29          following procedures apply to a proposed settlement,

30          voluntary dismissal, or compromise:

31          **(1)   _Notice to the Class._**

32                    **(A)** _Information That Parties Must Provide to_

33                    _the Court._    The parties must provide the

34                    court with information sufficient to enable

12        FEDERAL RULES OF CIVIL PROCEDURE

35                it to determine whether to give notice of the

36                proposal to the class.

37         **(B)**  *Grounds for a Decision to Give Notice.*

38                The court must direct notice in a reasonable

39                manner to all class members who would be

40                bound by the proposal if giving notice is

41                justified by the parties' showing that the

42                court will likely be able to:

43            **(i)**  approve the proposal under

44                    Rule 23(e)(2); and

45            **(ii)**  certify the class for purposes of

46                    judgment on the proposal.

47      **(2)**  ***Approval of the Proposal.***  If the proposal would

48            bind class members, the court may approve it

49            only after a hearing and only on finding that it is

50            fair, reasonable, and adequate after considering

51            whether:.

52           **(A)** the class representatives and class counsel

53                     have adequately represented the class;

54           **(B)** the proposal was negotiated at arm's length;

55           **(C)** the relief provided for the class is adequate,

56                     taking into account:

57                **(i)** the costs, risks, and delay of trial and

58                     appeal;

59               **(ii)** the effectiveness of any proposed

60                     method of distributing relief to the

61                     class, including the method of

62                     processing class-member claims;

63              **(iii)** the terms of any proposed award of

64                     attorney's fees, including timing of

65                     payment; and

66              **(iv)** any agreement required to be

67                     identified under Rule 23(e)(3); and

14          FEDERAL RULES OF CIVIL PROCEDURE

68          **(D)** the proposal treats class members equitably

69                relative to each other.

70     **(3)** ***Identifying Agreements.*** The parties seeking

71          approval must file a statement identifying any

72          agreement made in connection with the proposal.

73     **(4)** ***New Opportunity to Be Excluded.*** If the class

74          action was previously certified under

75          Rule 23(b)(3), the court may refuse to approve a

76          settlement unless it affords a new opportunity to

77          request exclusion to individual class members

78          who had an earlier opportunity to request

79          exclusion but did not do so.

80     **(5)** ***Class-Member Objections.***

81          **(A)** *In General.* Any class member may object

82                to the proposal if it requires court approval

83                under this subdivision (e); the objection

84                may be withdrawn only with the court's

85      ~~approval~~. The objection must state whether

86      it applies only to the objector, to a specific

87      subset of the class, or to the entire class,

88      and also state with specificity the grounds

89      for the objection.

90      **(B)** *Court Approval Required for Payment in*

91      *Connection with an Objection.* Unless

92      approved by the court after a hearing, no

93      payment or other consideration may be

94      provided in connection with:

95          **(i)** forgoing or withdrawing an objection,

96              or

97          **(ii)** forgoing, dismissing, or abandoning

98              an appeal from a judgment approving

99              the proposal.

100     **(C)** *Procedure for Approval After an Appeal.* If

101     approval under Rule 23(e)(5)(B) has not

16          FEDERAL RULES OF CIVIL PROCEDURE

102                    been obtained before an appeal is docketed

103                    in the court of appeals, the procedure of

104                    Rule 62.1 applies while the appeal remains

105                    pending.

106    **(f)**    **Appeals.** A court of appeals may permit an appeal

107            from an order granting or denying class-action

108            certification under this rule, but not from an order

109            under Rule 23(e)(1).if a petition for permission to

110            appeal is filed  A party must file a petition for

111            permission to appeal with the circuit clerk within 14

112            days after the order is entered, or within 45 days

113            after the order is entered if any party is the United

114            States, a United States agency, or a United States

115            officer or employee sued for an act or omission

116            occurring in connection with duties performed on

117            the United States' behalf. An appeal does not stay

118     proceedings in the district court unless the district

119     judge or the court of appeals so orders.

120     \* \* \* \* \*

## Committee Note

Rule 23 is amended mainly to address issues related to settlement, and also to take account of issues that have emerged since the rule was last amended in 2003.

**Subdivision (c)(2).** As amended, Rule 23(e)(1) provides that the court must direct notice to the class regarding a proposed class-action settlement only after determining that the prospect of class certification and approval of the proposed settlement justifies giving notice. This decision has been called "preliminary approval" of the proposed class certification in Rule 23(b)(3) actions. It is common to send notice to the class simultaneously under both Rule 23(e)(1) and Rule 23(c)(2)(B), including a provision for class members to decide by a certain date whether to opt out. This amendment recognizes the propriety of this combined notice practice.

Subdivision (c)(2) is also amended to recognize contemporary methods of giving notice to class members. Since *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974), interpreted the individual notice requirement for class members in Rule 23(b)(3) class actions, many courts have read the rule to require notice by first class mail in every case. But technological change since 1974 has introduced other means of communication that may sometimes provide a reliable additional or alternative method for giving notice.

18      FEDERAL RULES OF CIVIL PROCEDURE

Although first class mail may often be the preferred primary method of giving notice, courts and counsel have begun to employ new technology to make notice more effective. Because there is no reason to expect that technological change will cease, when selecting a method or methods of giving notice courts should consider the capacity and limits of current technology, including class members' likely access to such technology.

Rule 23(c)(2)(B) is amended to take account of these changes. The rule continues to call for giving class members "the best notice that is practicable." It does not specify any particular means as preferred. Although it may sometimes be true that electronic methods of notice, for example email, are the most promising, it is important to keep in mind that a significant portion of class members in certain cases may have limited or no access to email or the Internet.

Instead of preferring any one means of notice, therefore, the amended rule relies on courts and counsel to focus on the means or combination of means most likely to be effective in the case before the court. The court should exercise its discretion to select appropriate means of giving notice. In providing the court with sufficient information to enable it to decide whether to give notice to the class of a proposed class-action settlement under Rule 23(e)(1), it would ordinarily be important to include details about the proposed method of giving notice and to provide the court with a copy of each notice the parties propose to use.

In determining whether the proposed means of giving notice is appropriate, the court should also give careful attention to the content and format of the notice and, if

notice is given under both Rule 23(e)(1) and Rule 23(c)(2)(B), any claim form class members must submit to obtain relief.

Counsel should consider which method or methods of giving notice will be most effective; simply assuming that the "traditional" methods are best may disregard contemporary communication realities. The ultimate goal of giving notice is to enable class members to make informed decisions about whether to opt out or, in instances where a proposed settlement is involved, to object or to make claims. Rule 23(c)(2)(B) directs that the notice be "in plain, easily understood language." Means, format, and content that would be appropriate for class members likely to be sophisticated, for example in a securities fraud class action, might not be appropriate for a class having many members likely to be less sophisticated. The court and counsel may wish to consider the use of class notice experts or professional claims administrators.

Attention should focus also on the method of opting out provided in the notice. The proposed method should be as convenient as possible, while protecting against unauthorized opt-out notices.

**Subdivision (e).** The introductory paragraph of Rule 23(e) is amended to make explicit that its procedural requirements apply in instances in which the court has not certified a class at the time that a proposed settlement is presented to the court. The notice required under Rule 23(e)(1) then should also satisfy the notice requirements of amended Rule 23(c)(2)(B) for a class to be certified under Rule 23(b)(3), and trigger the class members' time to request exclusion. Information about the

20      FEDERAL RULES OF CIVIL PROCEDURE

opt-out rate could then be available to the court when it considers final approval of the proposed settlement.

**Subdivision (e)(1).** The decision to give notice of a proposed settlement to the class is an important event. It should be based on a solid record supporting the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object. The parties must provide the court with information sufficient to determine whether notice should be sent. At the time they seek notice to the class, the proponents of the settlement should ordinarily provide the court with all available materials they intend to submit to support approval under Rule 23(e)(2) and that they intend to make available to class members. The amended rule also specifies the standard the court should use in deciding whether to send notice—that it likely will be able both to approve the settlement proposal under Rule 23(e)(2) and, if it has not previously certified a class, to certify the class for purposes of judgment on the proposal.

The subjects to be addressed depend on the specifics of the particular class action and proposed settlement. But some general observations can be made.

One key element is class certification. If the court has already certified a class, the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted. But if a class has not been certified, the parties must ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to certify the class. Although the standards for certification differ for settlement and

litigation purposes, the court cannot make the decision regarding the prospects for certification without a suitable basis in the record. The ultimate decision to certify the class for purposes of settlement cannot be made until the hearing on final approval of the proposed settlement. If the settlement is not approved, the parties' positions regarding certification for settlement should not be considered if certification is later sought for purposes of litigation.

Regarding the proposed settlement, many types of information might appropriately be provided to the court. A basic focus is the extent and type of benefits that the settlement will confer on the members of the class. Depending on the nature of the proposed relief, that showing may include details of the contemplated claims process and the anticipated rate of claims by class members. Because some funds are frequently left unclaimed, the settlement agreement ordinarily should address the distribution of those funds.

The parties should also supply the court with information about the likely range of litigated outcomes, and about the risks that might attend full litigation. Information about the extent of discovery completed in the litigation or in parallel actions may often be important. In addition, as suggested by Rule 23(b)(3)(B), the parties should provide information about the existence of other pending or anticipated litigation on behalf of class members involving claims that would be released under the proposal.

The proposed handling of an award of attorney's fees under Rule 23(h) ordinarily should be addressed in the parties' submission to the court. In some cases, it will be important to relate the amount of an award of attorney's

22          FEDERAL RULES OF CIVIL PROCEDURE

fees to the expected benefits to the class. One way to address this issue is to defer some or all of the award of attorney's fees until the court is advised of the actual claims rate and results.

Another topic that normally should be considered is any agreement that must be identified under Rule 23(e)(3).

The parties may supply information to the court on any other topic that they regard as pertinent to the determination whether the proposal is fair, reasonable, and adequate. The court may direct the parties to supply further information about the topics they do address, or to supply information on topics they do not address. The court should not direct notice to the class until the parties' submissions show it is likely that the court will be able to approve the proposal after notice to the class and a final approval hearing.

**Subdivision (e)(2).** The central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate. Courts have generated lists of factors to shed light on this concern. Overall, these factors focus on comparable considerations, but each circuit has developed its own vocabulary for expressing these concerns. In some circuits, these lists have remained essentially unchanged for thirty or forty years. The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.

A lengthy list of factors can take on an independent life, potentially distracting attention from the central

concerns that inform the settlement-review process. A circuit's list might include a dozen or more separately articulated factors. Some of those factors—perhaps many—may not be relevant to a particular case or settlement proposal. Those that are relevant may be more or less important to the particular case. Yet counsel and courts may feel it necessary to address every factor on a given circuit's list in every case. The sheer number of factors can distract both the court and the parties from the central concerns that bear on review under Rule 23(e)(2).

This amendment therefore directs the parties to present the settlement to the court in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal.

Approval under Rule 23(e)(2) is required only when class members would be bound under Rule 23(c)(3). Accordingly, in addition to evaluating the proposal itself, the court must determine whether it can certify the class under the standards of Rule 23(a) and (b) for purposes of judgment based on the proposal.

**Paragraphs (A) and (B).** These paragraphs identify matters that might be described as "procedural" concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement. Attention to these matters is an important foundation for scrutinizing the substance of the proposed settlement. If the court has appointed class counsel or interim class counsel, it will have made an initial evaluation of counsel's capacities and experience. But the focus at this point is on

24       FEDERAL RULES OF CIVIL PROCEDURE

the actual performance of counsel acting on behalf of the class.

The information submitted under Rule 23(e)(1) may provide a useful starting point in assessing these topics. For example, the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base. The pendency of other litigation about the same general subject on behalf of class members may also be pertinent. The conduct of the negotiations may be important as well. For example, the involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests. Particular attention might focus on the treatment of any award of attorney's fees, with respect to both the manner of negotiating the fee award and its terms.

**Paragraphs (C) and (D).** These paragraphs focus on what might be called a "substantive" review of the terms of the proposed settlement. The relief that the settlement is expected to provide to class members is a central concern. Measuring the proposed relief may require evaluation of any proposed claims process; directing that the parties report back to the court about actual claims experience may be important. The contents of any agreement identified under Rule 23(e)(3) may also bear on the adequacy of the proposed relief, particularly regarding the equitable treatment of all members of the class.

Another central concern will relate to the cost and risk involved in pursuing a litigated outcome. Often, courts may need to forecast the likely range of possible classwide

recoveries and the likelihood of success in obtaining such results.   That forecast cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure.

If the class has not yet been certified for trial, the court may consider whether certification for litigation would be granted were the settlement not approved.

Examination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement.   Ultimately, any award of attorney's fees must be evaluated under Rule 23(h), and no rigid limits exist for such awards.   Nonetheless, the relief actually delivered to the class can be a significant factor in determining the appropriate fee award.

Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims.   A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding.

Paragraph (D) calls attention to a concern that may apply to some class action settlements—inequitable treatment of some class members vis-a-vis others.   Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief.

26        FEDERAL RULES OF CIVIL PROCEDURE

**Subdivisions (e)(3) and (e)(4).** Headings are added to subdivisions (e)(3) and (e)(4) in accord with style conventions. These additions are intended to be stylistic only.

**Subdivision (e)(5).** The submissions required by Rule 23(e)(1) may provide information critical to decisions whether to object or opt out. Objections by class members can provide the court with important information bearing on its determination under Rule 23(e)(2) whether to approve the proposal.

**Subdivision (e)(5)(A).** The rule is amended to remove the requirement of court approval for every withdrawal of an objection. An objector should be free to withdraw on concluding that an objection is not justified. But Rule 23(e)(5)(B)(i) requires court approval of any payment or other consideration in connection with withdrawing the objection.

The rule is also amended to clarify that objections must provide sufficient specifics to enable the parties to respond to them and the court to evaluate them. One feature required of objections is specification whether the objection asserts interests of only the objector, or of some subset of the class, or of all class members. Beyond that, the rule directs that the objection state its grounds "with specificity." Failure to provide needed specificity may be a basis for rejecting an objection. Courts should take care, however, to avoid unduly burdening class members who wish to object, and to recognize that a class member who is not represented by counsel may present objections that do not adhere to technical legal standards.

**Subdivision (e)(5)(B).** Good-faith objections can assist the court in evaluating a proposal under Rule 23(e)(2). It is legitimate for an objector to seek payment for providing such assistance under Rule 23(h).

But some objectors may be seeking only personal gain, and using objections to obtain benefits for themselves rather than assisting in the settlement-review process. At least in some instances, it seems that objectors—or their counsel—have sought to obtain consideration for withdrawing their objections or dismissing appeals from judgments approving class settlements. And class counsel sometimes may feel that avoiding the delay produced by an appeal justifies providing payment or other consideration to these objectors. Although the payment may advance class interests in a particular case, allowing payment perpetuates a system that can encourage objections advanced for improper purposes.

The court-approval requirement currently in Rule 23(e)(5) partly addresses this concern. Because the concern only applies when consideration is given in connection with withdrawal of an objection, however, the amendment requires approval under Rule 23(e)(5)(B)(i) only when consideration is involved. Although such payment is usually made to objectors or their counsel, the rule also requires court approval if a payment in connection with forgoing or withdrawing an objection or appeal is instead to another recipient. The term "consideration" should be broadly interpreted, particularly when the withdrawal includes some arrangements beneficial to objector counsel. If the consideration involves a payment to counsel for an objector, the proper procedure is by motion under Rule 23(h) for an award of fees.

28      FEDERAL RULES OF CIVIL PROCEDURE

Rule 23(e)(5)(B)(ii) applies to consideration in connection with forgoing, dismissing, or abandoning an appeal from a judgment approving the proposal. Because an appeal by a class-action objector may produce much longer delay than an objection before the district court, it is important to extend the court-approval requirement to apply in the appellate context. The district court is best positioned to determine whether to approve such arrangements; hence, the rule requires that the motion seeking approval be made to the district court.

Until the appeal is docketed by the circuit clerk, the district court may dismiss the appeal on stipulation of the parties or on the appellant's motion. See Fed. R. App. P. 42(a). Thereafter, the court of appeals has authority to decide whether to dismiss the appeal. This rule's requirement of district court approval of any consideration in connection with such dismissal by the court of appeals has no effect on the authority of the court of appeals to decide whether to dismiss the appeal. It is, instead, a requirement that applies only to providing consideration in connection with forgoing, dismissing, or abandoning an appeal.

**Subdivision (e)(5)(C).** Because the court of appeals has jurisdiction over an objector's appeal from the time that it is docketed in the court of appeals, the procedure of Rule 62.1 applies. That procedure does not apply after the court of appeals' mandate returns the case to the district court.

**Subdivision (f).** As amended, Rule 23(e)(1) provides that the court must direct notice to the class regarding a

proposed class-action settlement only after determining that the prospect of eventual class certification justifies giving notice. But this decision does not grant or deny class certification, and review under Rule 23(f) would be premature. This amendment makes it clear that an appeal under this rule is not permitted until the district court decides whether to certify the class.

The rule is also amended to extend the time to file a petition for review of a class-action certification order to 45 days whenever a party is the United States, one of its agencies, or a United States officer or employee sued for an act or omission occurring in connection with duties performed on the United States' behalf. In such a case, the extension applies to a petition for permission to appeal by any party. The extension recognizes—as under Rules 4(i) and 12(a) and Appellate Rules 4(a)(1)(B) and 40(a)(1)— that the United States has a special need for additional time in regard to these matters. It applies whether the officer or employee is sued in an official capacity or an individual capacity. An action against a former officer or employee of the United States is covered by this provision in the same way as an action against a present officer or employee. Termination of the relationship between the individual defendant and the United States does not reduce the need for additional time.

30          FEDERAL RULES OF CIVIL PROCEDURE

1    **Rule 62.  Stay of Proceedings to Enforce a Judgment**

2    **(a)    Automatic    Stay;    ~~Exceptions    for    Injunctions,~~**

3    **~~Receiverships, and Patent Accountings.~~**   Except as

4    provided in Rule 62(c) and (d),~~stated in this rule,~~ ~~no~~

5    execution ~~may issue~~ on a judgment~~, nor may~~ and

6    proceedings ~~be taken~~to enforce it~~,~~ are stayed for 30

7    days ~~until 14 days have passed~~ after its entry, unless

8    the court orders otherwise.~~ But unless the court orders~~

9    ~~otherwise, the following are not stayed after being~~

10   ~~entered, even if an appeal is taken:~~

11   ~~(1)   an interlocutory or final judgment in an action~~

12   ~~for an injunction or a receivership; or~~

13   ~~(2)   a judgment or order that directs an accounting in~~

14   ~~an action for patent infringement.~~

15   **~~(b)   Stay Pending the Disposition of a Motion.~~**   ~~On~~

16   ~~appropriate terms for the opposing party's security,~~

17   ~~the court may stay the execution of a judgment   or~~

18    any proceedings to enforce it   pending disposition of

19    any of the following motions:

20    (1)   under Rule 50, for judgment as a matter of law;

21    (2)   under Rule 52(b), to amend the findings or for

22         additional findings;

23    (3)   under Rule 59, for a new trial or to alter or

24         amend a judgment; or

25    (4)   under Rule 60, for relief from a judgment or

26         order.

27    **(b)   Stay by Bond or Other Security.**  At any time after

28         judgment is entered, a party may obtain a stay by

29         providing a bond or other security.  The stay takes

30         effect when the court approves the bond or other

31         security and remains in effect for the time specified in

32         the bond or other security.

33    **(c)   Stay of an Injunction, Receivership, or Patent**

34         **Accounting Order.**   Unless the court orders

32        FEDERAL RULES OF CIVIL PROCEDURE

35    <u>otherwise, the following are not stayed after being</u>

36    <u>entered, even if an appeal is taken:</u>

37    **(1)**   <u>an interlocutory or final judgment in an action</u>

38             <u>for an injunction or receivership; or</u>

39    **(2)**   <u>a judgment or order that directs an accounting in</u>

40             <u>an action for patent infringement.</u>

41    **(<u>de</u>) Injunction Pending an Appeal.**  While an appeal is

42    pending from an interlocutory order or final judgment

43    that grants, <u>continues, modifies, refuses,</u> dissolves, or

44    ~~denies~~<u>refuses to dissolve or modify</u> an injunction, the

45    court may suspend, modify, restore, or grant an

46    injunction on terms for bond or other terms that secure

47    the opposing party's rights.  If the judgment appealed

48    from is rendered by a statutory three-judge district

49    court, the order must be made either:

50    **(1)**   by that court sitting in open session; or

51      **(2)**   by the assent of all its judges, as evidenced by

52             their signatures.

53      ~~**(d)   Stay with Bond on Appeal.**   If an appeal is taken, the~~

54             ~~appellant may obtain a stay by supersedeas bond,~~

55             ~~except in an action described in Rule 62(a)(1) or (2).~~

56             ~~The bond may be given upon or after filing the notice~~

57             ~~of appeal or after obtaining the order allowing the~~

58             ~~appeal. The stay takes effect when the court approves~~

59             ~~the bond.~~

60                           * * * * *

### Committee Note

Subdivisions (a), (b), (c), and (d) of former Rule 62 are reorganized and the provisions for staying a judgment are revised.

The provisions for staying an injunction, receivership, or order for a patent accounting are reorganized by consolidating them in new subdivisions (c) and (d). There is no change in meaning. The language is revised to include all of the words used in 28 U.S.C. § 1292(a)(1) to describe the right to appeal from interlocutory actions with respect to an injunction, but subdivisions (c) and (d) apply both to interlocutory injunction orders and to final

34      FEDERAL RULES OF CIVIL PROCEDURE

judgments that grant, refuse, or otherwise deal with an injunction.

New Rule 62(a) extends the period of the automatic stay to 30 days. Former Rule 62(a) set the period at 14 days, while former Rule 62(b) provided for a court-ordered stay "pending disposition of" motions under Rules 50, 52, 59, and 60. The time for making motions under Rules 50, 52, and 59, however, was later extended to 28 days, leaving an apparent gap between expiration of the automatic stay and any of those motions (or a Rule 60 motion) made more than 14 days after entry of judgment. The revised rule eliminates any need to rely on inherent power to issue a stay during this period. Setting the period at 30 days coincides with the time for filing most appeals in civil actions, providing a would-be appellant the full period of appeal time to arrange a stay by other means. A 30-day automatic stay also suffices in cases governed by a 60-day appeal period.

Amended Rule 62(a) expressly recognizes the court's authority to dissolve the automatic stay or supersede it by a court-ordered stay. One reason for dissolving the automatic stay may be a risk that the judgment debtor's assets will be dissipated. Similarly, it may be important to allow immediate enforcement of a judgment that does not involve a payment of money. The court may address the risks of immediate execution by ordering dissolution of the stay only on condition that security be posted by the judgment creditor. Rather than dissolve the stay, the court may choose to supersede it by ordering a stay that lasts longer or requires security.

Subdivision 62(b) carries forward in modified form the supersedeas bond provisions of former Rule 62(d). A stay may be obtained under subdivision (b) at any time after judgment is entered. Thus a stay may be obtained before the automatic stay has expired, or after the automatic stay has been lifted by the court. The new rule's text makes explicit the opportunity to post security in a form other than a bond. The stay takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or security—a party may find it convenient to arrange a single bond or other security that persists through completion of post-judgment proceedings in the trial court and on through completion of all proceedings on appeal by issuance of the appellate mandate. This provision does not supersede the opportunity for a stay under 28 U.S.C. § 2101(f) pending review by the Supreme Court on certiorari. Finally, subdivision (b) changes the provision in former subdivision (d) that "an appellant" may obtain a stay. Under new subdivision (b), "a party" may obtain a stay. For example, a party may wish to secure a stay pending disposition of post-judgment proceedings after expiration of the automatic stay, not yet knowing whether it will want to appeal.

1  **Rule 65.1. Proceedings   Against   a   ~~Surety~~Security**
2            **Provider**

3        Whenever these rules (including the Supplemental

4    Rules for Admiralty or Maritime Claims and Asset

5    Forfeiture Actions) require or allow a party to give security,

6    and security is given ~~through a bond or other undertaking~~

7    with   one   or   more   ~~sureties~~security   providers,   each

8    ~~surety~~provider submits to the court's jurisdiction and

9    irrevocably appoints the court clerk as its agent for

10   receiving service of any papers that affect its liability on the

11   ~~bond or undertaking~~security.     The   ~~surety's~~security

12   provider's liability may be enforced on motion without an

13   independent action.   The motion and any notice that the

14   court orders may be served on the court clerk, who must

15   promptly ~~mail~~send a copy of each to every ~~surety~~security

16   provider whose address is known.

## Committee Note

Rule 65.1 is amended to reflect the amendments of Rule 62. Rule 62 allows a party to obtain a stay of a judgment "by providing a bond or other security." Limiting Rule 65.1 enforcement procedures to sureties might exclude use of those procedures against a security provider that is not a surety. All security providers, including sureties, are brought into Rule 65.1 by these amendments. But the reference to "bond" is retained in Rule 62 because it has a long history.

The word "mail" is changed to "send" to avoid restricting the method of serving security providers.

# REPORT OF THE JUDICIAL CONFERENCE

## COMMITTEE ON RULES OF PRACTICE AND PROCEDURE

## TO THE CHIEF JUSTICE OF THE UNITED STATES AND MEMBERS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES:

\* \* \* \* \*

### FEDERAL RULES OF CIVIL PROCEDURE

*Rules Recommended for Approval and Transmission*

The Advisory Committee on Civil Rules submitted proposed amendments to Civil Rules 5, 23, 62, and 65.1, with a recommendation that they be approved and transmitted to the Judicial Conference. The proposed amendments were circulated to the bench, bar, and public for comment in August 2016.

Rule 5 (Serving and Filing Pleadings and Other Papers)

The proposed amendments to Civil Rule 5 are part of the inter-advisory committee project to develop rules for electronic filing and service.

Proposed amendments to Rule 5(b)(2)(E) address electronic service. The present rule allows electronic service only if the person to be served has consented in writing. The proposal deletes the requirement of consent when service is made on a registered user through the court's electronic filing system. Written consent is still required when service is made by electronic means outside the court's system (*e.g.*, discovery materials).

Proposed amendments to Rule 5(d) address electronic filing. Present Rule 5(d)(3) permits papers to be filed, signed, or verified by electronic means if permitted by local rule; a local rule may require electronic filing only if reasonable exceptions are allowed. In practice, most courts require registered users to file electronically. Proposed Rule 5(d)(3)(A) recognizes this reality by establishing a uniform national rule that makes electronic filing mandatory for

parties represented by counsel, except when non-electronic filing is allowed or required by local rule, or for good cause.

Proposed Rule 5(d)(3)(B) addresses filings by pro se parties. Under the proposal, courts would retain the discretion to permit electronic filing by pro se parties through court order or local rule. Any court order or local rule requiring electronic filing for pro se parties must allow reasonable exceptions. While the advisory committee recognizes that some pro se parties are fully capable of electronic filing, the idea of *requiring* a pro se party to electronically file raised concerns that such a requirement could effectively deny access to persons not equipped to do so.

Proposed Rule 5(d)(3)(C) establishes a uniform national signature provision. Commentators found ambiguity in the published language regarding whether the rule would require that the attorney's username and password appear on the filing. In response, the advisory committee, in consultation with the other advisory committees, made revisions to increase the clarity of this amendment.

Finally, the proposal includes a provision addressing proof of service. The current rule requires a certificate of service but does not specify a particular form. The published version of the rule provided that a notice of electronic filing generated by the court's CM/ECF system constitutes a certificate of service. Following the public comment period, the advisory committee revised the proposal to provide that no certificate of service is required when a paper is served by filing it with the court's system. The proposal also addresses whether a certificate of service is required for a paper served by means other than the court's electronic filing system: if the paper is filed, a certificate of service must be filed with it or within a reasonable time after service, and if the paper is not filed, a certificate of service is not required to be filed unless required by local rule or court order.

Rule 23 (Class Actions)

The proposed amendments to Rule 23 are the result of more than five years of study and consideration by the advisory committee, through its Rule 23 subcommittee. As previously reported, the decision to take up this effort was prompted by several developments that seemed to warrant reexamination of Rule 23, namely: (1) the passage of time since the 2003 amendments to Rule 23 went into effect; (2) the development of a body of case law on class action practice; and (3) recurrent interest in Congress, including the 2005 adoption of the Class Action Fairness Act. In developing the proposed amendments to Rule 23, the subcommittee attended nearly two dozen meetings and bar conferences with diverse memberships and attendees. In addition, in September 2015, the subcommittee held a mini-conference to gather additional input from a variety of stakeholders on potential rule amendments.

After extensive consideration and study, the subcommittee narrowed the list of issues to be addressed in proposed rule amendments. The proposed amendments published in August 2016 addressed the following seven issues:

1. Requiring earlier provision of information to the court as to whether the court should send notice to the class of a proposed settlement (known as "frontloading");

2. Making clear that a decision to send notice of a proposed settlement to the class under Rule 23(e)(1) is not appealable under Rule 23(f);

3. Making clear in Rule 23(c)(2)(B) that the Rule 23(e)(1) notice triggers the opt-out period in Rule 23(b)(3) class actions;

4. Updating Rule 23(c)(2) regarding individual notice in Rule 23(b)(3) class actions;

5. Addressing issues raised by "bad faith" class action objectors;

6. Refining standards for approval of proposed class action settlements under Rule 23(e)(2); and

7.  A proposal by the Department of Justice to include in Rule 23(f) a 45-day period in which to seek permission for an interlocutory appeal when the United States is a party.

The majority of the comments received during the public comment period for all the proposed Civil Rules amendments—both written and in the form of testimony at three public hearings—addressed the Rule 23 proposals. The advisory committee received some comments urging it to reconsider topics it had determined not to pursue, as well as comments urging it to consider additional topics not previously considered. As to those topics that were included in the proposals published for public comment, most comments addressed the modernization of notice methods and the handling of class member objections to proposed class action settlements.

The subcommittee and advisory committee carefully considered all of the comments received. Minor changes were made to the proposed rule language, and revisions to the committee note were aimed at increasing clarity and succinctness.

Rules 62 (Stay and Proceedings to Enforce a Judgment) and 65.1 (Proceedings Against a Surety)

The proposed amendments to Rule 62 and Rule 65.1 are the product of a joint subcommittee with the Advisory Committee on Appellate Rules. The advisory committee received three comments on the proposed amendments, each of which was supportive.

The proposed amendments to Rule 62 make three changes. First, the period of the automatic stay is extended to 30 days. This change would eliminate a gap in the current rule between automatic stays under subsection (a) and the authority to order a stay pending disposition of a post-judgment motion under subsection (b). Before the Time Computation Project, Civil Rules 50, 52, and 59 set the time for motions at 10 days after entry of judgment. Rule 62(b) recognized authority to issue a stay pending disposition of a motion under Rules 50, 52, or 59, or 60. The Time Computation Project reset at 28 days the time for motions under

Rules 50, 52, or 59. It also reset the expiration of the automatic stay in Rule 62(a) at 14 days after entry of judgment. An unintentional result was that the automatic stay expired halfway through the time allowed to make a post-judgment motion. Rule 62(b), however, continued to authorize a stay "pending disposition of any of" these motions. The proposed amendment to Rule 62(a) addresses this gap by extending the time of an automatic stay to 30 days. The proposal further provides that the automatic stay takes effect "unless the court orders otherwise."

Second, the proposed amendments make clear that a judgment debtor can secure a stay by posting continuing security, whether as a bond or by other means, that will last from termination of the automatic stay through final disposition on appeal. The former provision for securing a stay on posting a supersedeas bond is retained, without the word "supersedeas." The right to obtain a stay on providing a bond or other security is maintained with changes that allow the security to be provided before an appeal is taken and that allow any party, not just an appellant, to obtain the stay.

Third, subdivisions (a) through (d) are rearranged, carrying forward with only a minor change the provisions for staying judgments in an action for an injunction or a receivership, or directing an accounting in an action for patent infringement.

The proposed amendment to Rule 65.1 is intended to reflect the expansion of Rule 62 to include forms of security other than a bond. Additional changes were made following the public comment period in order to conform Rule 65.1 to the proposed amendments to Appellate Rule 8(b). As discussed above, the Advisory Committee on Appellate Rules has proposed amendments to the Appellate Rules to conform those rules with the amendments to Civil Rule 62, including amendments to Appellate Rule 8(b). Appellate Rule 8(b) and Civil Rule 65.1 parallel one another. The proposed amendments to Rule 65.1 imitate those to Appellate

Rule 8(b), namely, removing all references to "bond," "undertaking," and "surety," and

substituting the words "security" and "security provider."

The Standing Committee voted unanimously to support the recommendations of the

Advisory Committee on Civil Rules.

**Recommendation:**  That the Judicial Conference approve the proposed
amendments to Civil Rules 5, 23, 62, and 65.1 and transmit them to the Supreme
Court for consideration with a recommendation that they be adopted by the Court
and transmitted to Congress in accordance with the law.

* * * * *

Respectfully submitted,

*David G. Campbell*

David G. Campbell, Chair

| | |
|---|---|
| Jesse M. Furman | William K. Kelley |
| Gregory G. Garre | Rod J. Rosenstein |
| Daniel C. Girard | Amy J. St. Eve |
| Susan P. Graber | Larry D. Thompson |
| Frank M. Hull | Richard C. Wesley |
| Peter D. Keisler | Jack Zouhary |

Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules

COMMITTEE ON RULES OF PRACTICE AND PROCEDURE
OF THE
JUDICIAL CONFERENCE OF THE UNITED STATES
WASHINGTON, D.C. 20544

DAVID G. CAMPBELL
CHAIR

REBECCA A. WOMELDORF
SECRETARY

CHAIRS OF ADVISORY COMMITTEES

MICHAEL A. CHAGARES
APPELLATE RULES

SANDRA SEGAL IKUTA
BANKRUPTCY RULES

JOHN D. BATES
CIVIL RULES

DONALD W. MOLLOY
CRIMINAL RULES

WILLIAM K. SESSIONS III
EVIDENCE RULES

## MEMORANDUM

**TO:**      Hon. David G. Campbell, Chair
            Committee on Rules of Practice and Procedure

**FROM:**    Hon. John D. Bates, Chair
            Advisory Committee on Civil Rules

**RE:**      Report of the Advisory Committee on Civil Rules

**DATE:**    May 18, 2017

---

*Introduction*

The Civil Rules Advisory Committee met in Austin, Texas, on April 25, 2017. Draft Minutes of this meeting are attached.

Action items are presented in Part I. Proposals to amend Civil Rules 5, 23, 62, and 65.1 were published for comment last August. The Rule 5 proposals coordinate with similar proposals published for comment on recommendations by the Appellate, Bankruptcy, and Criminal Rules Committees. The Rules 62 and 65.1 proposals work in tandem with coordinating proposals published for comment on recommendation of the Appellate Rules Committee. Written comments were submitted on all proposals, although Rule 23 received a majority of them. Three hearings were held, the first on November 3 in conjunction with the Civil Rules meeting, the second on January 4, and the third, by teleconference, on February 16. Almost all of the

testimony addressed Rule 23. Summaries of the comments and testimony are provided with each rule. The Committee recommends that these proposals be recommended for adoption with revisions suggested by the comments and testimony or developed from further joint work with the other advisory committees.

* * * * *

## I. RECOMMENDATIONS TO APPROVE FOR ADOPTION

### A. RULE 5

The proposed amendments of Rule 5 address service and filing of papers after the summons and complaint. The central purpose of the amendments is to recognize the changes that have developed in practice regarding filing and service through the court's electronic-filing system. The amendments also address recurring issues about incidental aspects of e-filing and service.

Turning first to service, proposed Rule 5(b)(2)(E) is recommended for adoption as published. Present Rule 5(b)(2)(E) requires consent of the person served if service is to be made by any electronic means. Present Rule 5(b)(3) provides that if authorized by local rule, a party may use the court's transmission facilities to make service. The proposal changes this system to allow service by sending a paper to a registered user by filing it with the court's electronic filing system. Consent of the registered user is not required. Adopting a uniform national provision entails the further proposal to abrogate Rule 5(b)(3). Rule 5(b)(2)(E) will continue to require written consent of the person to be served when service is made by electronic means outside the court's system.

Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules

Although the service provisions are recommended without change, a new paragraph is proposed for the Committee Note. This paragraph summarizes the service provisions and advises that: "[T]he rule does not make the court responsible for notifying a person who filed the paper with the court's electronic filing system that an attempted transmission by the court's system failed." The Note further observes that a filer who learns that the transmission failed is responsible for making effective service, an obligation imposed by the present rule and carried forward in the proposed rule.

Present Rule 5(d)(3) permits papers to be filed, signed, or verified by electronic means if permitted by local rule. A local rule may require electronic filing only if reasonable exceptions are allowed. Most courts have come to require registered users to file electronically. Proposed Rule 5(d)(3)(A) makes this practice uniform—a person represented by an attorney must file electronically unless nonelectronic filing is allowed by the court for good cause or is allowed or required by local rule. This amendment has not generated any controversy.

Electronic filing by a person not represented by an attorney is treated differently by proposed Rule 5(d)(3)(B). Electronic filing is permitted only if allowed by court order or by local rule, and may be required only by court order or by a local rule that includes reasonable exceptions. This proposal has generated some concerns. Comments and testimony made it clear that some pro se parties are fully capable of engaging in electronic filing and that permitting this practice can work to benefit the filer, the court, and all other parties. But the Committee—in line with the other advisory committees—concluded that for the present the risks of a general opportunity to file electronically outweigh the benefits. The prospect that a pro se party might be required to file electronically raised fears that access to the court would be effectively denied to persons not equipped to do so. Proposed Rule 5(d)(3)(B) was included in the rule to support programs in a few courts that have set up systems for pro se filing by prisoners. The programs seem to work and to provide real benefits. The Committee Note includes a reminder that access to court must be protected. The Committee concluded that this provision should be included in the recommendation.

Proposed Rule 5(d)(3)(C) is a signature provision to take the place of the provisions in local rules that govern signing an electronic filing. The published version provided that "[t]he user name and password of an attorney of record, together with the attorney's name on a signature block, serves as the attorney's signature." Comments found ambiguity—this wording might be read to require that the name and password appear on the paper. The comments also expressed uncertainty about identifying an attorney of record on the party's first filing. In consultation with the other advisory committees, the recommendation is to substitute this language:

> An authorized filing made through a person's electronic filing account, together with the person's name on a signature block, constitutes the person's signature.

Proposed Rule 5(d), finally, includes a provision for a certificate of service. Present Rule 5(d)(1) states this: "Any paper after the complaint that is required to be served—together

65

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                                          Page 4

with a certificate of service—must be filed within a reasonable time after service." The published proposal aimed to dispense with a separate certificate of service for papers served by filing with the court's electronic-filing system under proposed Rule 5(b)(2)(E): "A certificate of service must be filed within a reasonable time after service, but a notice of electronic filing constitutes a certificate of service on any person served by the court's electronic-filing system." Further discussion found reasons to revise this approach. Treating the notice of electronic filing as a certificate of service has an element of fiction; the Civil Rule proposal then was modified, following the lead of the Appellate Rule proposal, to provide that no certificate of service is required when a paper is served by filing it with the court's system. That change is carried forward in the revised language set out below.

Additional difficulties emerged from carrying forward the present rule's provision that a paper must be filed within a reasonable time after service. The principal difficulty seems to be unique to the Civil Rules. Following the direction that a paper must be filed within a reasonable time after service, Rule 5(d)(1)'s second sentence directs that many disclosures and discovery papers "must not be filed until they are used in the proceeding or the court orders filing * * *." That raised the question whether a certificate of service should be required for a paper that may be filed a long time after it is served, and may well not be filed at all. Several attempts were made to draft a provision to address this situation. Different views were expressed on the value of filing the certificate. Some observers thought that filing certificates would do no more than add needless clutter to court files. But others thought that filing certificates would enable a judge to monitor the docket to ensure that the parties were diligently pursuing an action, and might also prove useful to parties not directly involved with the papers served. Weighing these concerns, the Committee recommends this language for adoption as Rule 5(d)(1)(B), recognizing that item (ii) will be unique to the Civil Rules:

| | |
|---|---|
| 1 | (B) *Certificate of Service.* No certificate of service is required when a paper is |
| 2 | served by filing it with the court's electronic-filing system. When a paper |
| 3 | that is required to be served is served by other means: |
| 4 | |
| 5 | (i) if the paper is filed, a certificate of service must be included with it or |
| 6 | filed within a reasonable time after service, and |
| 7 | |
| 8 | (ii) if the paper is not filed, a certificate of service need not be filed unless |
| 9 | filing is required by local rule or court order. |

The overstrike and underline version of Rule 5 set out here uses simple overstriking to show changes from present Rule 5, underlining to show new words included in the published proposal, overstriking and underlining to show words included in the published proposal but not in the final proposal, and double underlining to show new words added after publication by the final proposal. The simpler traditional system of overstriking and underlining is used in the Committee Note.

Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                                                Page 5

1   **Rule 5. Serving and Filing Pleadings and Other Papers**
2
3                                            * * * * *
4   **(b) SERVICE: HOW MADE.**
5
6                                            * * * * *
7
8       **(2)** *Service in General.* A paper is served under this rule by:
9
10          **(A)** handing it to the person;
11
12                                           * * * * *
13
14          **(E)** sending it to a registered user by filing it with the court's electronic-filing
15              system or sending it by other electronic means if that the person consented
16              to in writing—in either of which events service is complete upon
17              transmission filing or sending, but is not effective if the serving party filer
18              or sender learns that it did not reach the person to be served; or
19
20                                           * * * * *
21
22      ~~(3) Using Court Facilities. If a local rule so authorizes, a party may use the court's~~
23          ~~transmission facilities to make service under Rule 5(B)(2)(E).~~ [Abrogated
24          (Apr. __, 2018, eff. Dec. 1, 2018.)]
25
26                                           * * * * *
27
28  **(d) FILING.**
29
30      **(1)** *Required Filings; Certificate of Service.*
31
32          (A) *Papers after the Complaint.* Any paper after the complaint that is required to
33              be served—together with a certificate of service —must be filed within
34              no later than a reasonable time after service. But disclosures under
35              Rule 26(a)(1) or (2) and the following discovery requests and responses
36              must not be filed until they are used in the proceeding or the court orders
37              filing: depositions, interrogatories, requests for documents or tangible
38              things or to permit entry onto land, and requests for admission.
39
40          (B) *Certificate of Service.* A certificate of service must be filed within a
41              reasonable time after service, but a notice of electronic filing constitutes a
42              certificate of service on any person served by the court's electronic-filing
43              system. No certificate of service is required when a paper is served by

67

44           filing it with the court's electronic-filing system. When a paper that is
45           required to be served is served by other means:

46

47           (i) if the paper is filed, a certificate of service must be filed with it or
48           within a reasonable time after service, and
49           (ii) if the paper is not filed, a certificate of service need not be filed unless
50           filing is required by local rule or court order.

51

52           * * * * *

53

54    **(2)**   *Nonelectronic Filing* **How Filing is Made in General.** A paper not filed
55           electronically is filed by delivering it:

56

57           **(A)** to the clerk; or

58

59           **(B)** to a judge who agrees to accept it for filing, and who must then note
60           the filing date on the paper and promptly send it to the clerk.

61

62    **(3)** *Electronic Filing, and Signing, or Verification.* A court may, by local rule, allow
63           papers to be filed, signed, or verified by electronic means that are consistent with
64           any technical standards established by the Judicial Conference of the United
65           States. A local rule may require electronic filing only if reasonable exceptions are
66           allowed.

67

68    (A) *By a Represented Person—Generally Required; Exceptions.* A person represented by
69           an attorney must file electronically, unless nonelectronic filing is allowed
70           by the court for good cause or is allowed or required by local rule.

71

72      (B) *By an Unrepresented Person—When Allowed or Required.* A person not
73           represented by an attorney:
74           (i) may file electronically only if allowed by court order or by local rule;
75           and
76           (ii) may be required to file electronically only by court order, or by a local
77           rule that includes reasonable exceptions.

78

79      (C) *Signing.* The user name and password of an attorney of record, together with
80           the attorney's name on a signature block, serves as the attorney's
81           signature. An authorized filing made through a person's electronic filing
82           account, together with the person's name on a signature block, constitutes
83           the person's signature.

84

85      **(D)** *Same as a Written Paper.* A paper filed electronically in compliance with a
86           local rule is a written paper for purposes of these rules.

87

68

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                                          Page 7

88                                                  * * * * *

COMMITTEE NOTE

1
2
3      **Subdivision (b).** Rule 5(b) is amended to revise the provisions for electronic service.
4      Provision for electronic service was first made when electronic communication was not as
5      widespread or as fully reliable as it is now. Consent of the person served to receive service by
6      electronic means was required as a safeguard. Those concerns have substantially diminished, but
7      have not disappeared entirely, particularly as to persons proceeding without an attorney.
8
9          The amended rule recognizes electronic service through the court's transmission facilities
10     as to any registered user. A court may choose to allow registration only with the court's
11     permission. But a party who registers will be subject to service through the court's facilities
12     unless the court provides otherwise. With the consent of the person served, electronic service
13     also may be made by means that do not utilize the court's facilities. Consent can be limited to
14     service at a prescribed address or in a specified form, and may be limited by other conditions.
15
16         Service is complete when a person files the paper with the court's electronic-filing
17     system for transmission to a registered user, or when one person sends it to another person by
18     other electronic means that the other person has consented to in writing. But service is not
19     effective if the person who filed with the court or the person who sent by other electronic
20     means learns that the paper did not reach the person to be served. The rule does not
21     make the court responsible for notifying a person who filed the paper with the court's electronic-
22     filing system that an attempted transmission by the court's system failed. But a filer who learns
23     that the transmission failed is responsible for making effective service.
24
25         Because Rule 5(b)(2)(E) now authorizes service through the court's facilities as a
26     uniform national practice, Rule 5(b)(3) is abrogated. It is no longer necessary to rely on local
27     rules to authorize such service.
28
29         **Subdivision (d).** Rule 5(d)(1) has provided that any paper after the complaint that is
30     required to be served "must be filed within a reasonable time after service." Because "within"
31     might be read as barring filing before the paper is served, "no later than" is substituted to ensure
32     that it is proper to file a paper before it is served.
33
34     Amended Rule 5(d)(1) provides that a notice of electronic filing generated by the court's
35     electronic-filing system is a certificate of service on any person served by the court's electronic-
36     filing system. Under amended Rule 5(d)(1)(B), a certificate of service is not required when a
37     paper is served by filing it with the court's electronic-filing system. But if the serving party
38     learns that the paper did not reach the party to be served, there is no service under Rule
39     5(b)(2)(E) and there is no certificate of (nonexistent) service. When service is not made by filing
40     with the court's electronic filing system, a certificate of service must be filed with the paper or
41     within a reasonable time after service, and should specify the date as well as the manner of
42     service. For papers that are required to be served but must not be filed until they are used in the

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

43  proceeding or the court orders filing, the certificate need not be filed until the paper is filed,
44  unless filing is required by local rule or court order.

45          Amended Rule 5(d)(3) recognizes increased reliance on electronic filing. Most districts
46  have adopted local rules that require electronic filing, and allow reasonable exceptions as
47  required by the former rule. The time has come to seize the advantages of electronic filing by
48  making it generally mandatory in all districts for a person represented by an attorney. But
49  exceptions continue to be available. Nonelectronic filing must be allowed for good cause. And a
50  local rule may allow or require nonelectronic filing for other reasons.
51
52          Filings by a person proceeding without an attorney are treated separately. It is not yet
53  possible to rely on an assumption that pro se litigants are generally able to seize the advantages
54  of electronic filing. Encounters with the court's system may prove overwhelming to some.
55  Attempts to work within the system may generate substantial burdens on a pro se party, on other
56  parties, and on the court. Rather than mandate electronic filing, filing by pro se litigants is left for
57  governing by local rules or court order. Efficiently handled electronic filing works to the
58  advantage of all parties and the court. Many courts now allow electronic filing by pro se litigants
59  with the court's permission. Such approaches may expand with growing experience in the courts,
60  along with the greater availability of the systems required for electronic filing and the increasing
61  familiarity of most people with electronic communication. Room is also left for a court to require
62  electronic filing by a pro se litigant by court order or by local rule. Care should be taken to
63  ensure that an order to file electronically does not impede access to the court, and reasonable
64  exceptions must be included in a local rule that requires electronic filing by a pro se litigant. In
65  the beginning, this authority is likely to be exercised only to support special programs, such as
66  one requiring e-filing in collateral proceedings by state prisoners.
67
68          ~~The user name and password of an attorney of record, together with the attorney's name~~
69  ~~on a signature block, serves as the attorney's signature.~~ An authorized filing through a person's
70  electronic filing account, together with the person's name on a signature block, constitutes the
71  person's signature.

72                                          Gap Report

73
74          Published Rule 5(d)(1)(B) carried forward the requirement in present Rule 5(d)(1) that
75  any paper after the complaint that is required to be served "must be filed within a reasonable
76  time after service." That language does not clearly allow a paper to be filed before it is served. It
77  is changed to direct filing "no later than" a reasonable time after service.
78
79          The certificate of service provisions in proposed Rule 5(d)(1)(B) are changed. First, the
80  provision that a notice of electronic filing constitutes a certificate of service on any person served
81  by the court's electronic-filing service is replaced by a provision that no certificate of service is
82  required when a paper is served by filing it with the court's electronic-filing system. Next, the
83  provision that when a paper is served by other means a certificate of service must be filed within
84  a reasonable time after service is replaced by a two-part direction: If the paper is filed, a
85  certificate of service must be filed with it or within a reasonable time after service, and if the

Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                                    Page 9

86   paper is not filed, a certificate of service need not be filed unless filing is required by local rule
87   or court order. The provision recognizing that a paper that has been served may not be filed
88   reflects the direction in proposed Rule 5(d)(1)(A), carried over from present Rule 5(d)(1), that
89   many disclosures and discovery papers must not be filed until the court orders filing or they are
90   used in the action.
91
92        The Committee Note has been changed to reflect these changes.

## RULE 5: CLEAN TEXT

**Rule 5. Serving and Filing Pleadings and Other Papers**

\* \* \* \* \*

**(b) SERVICE: HOW MADE.**

\* \* \* \* \*

**(2)** *Service in General.* A paper is served under this rule by:

**(A)** handing it to the person;

\* \* \* \* \*

**(E)** sending it to a registered user by filing it with the court's electronic-filing
system or sending it by other electronic means that the person consented to
in writing—in either of which events service is complete upon filing or
sending, but is not effective if the filer or sender learns that it did not reach
the person to be served; or

\* \* \* \* \*

**(3)** [Abrogated (Apr. __, 2018, eff. Dec. 1, 2018.)]

\* \* \* \* \*

**(d) FILING.**

*(1) Required Filings; Certificate of Service.*

(A) *Papers after the Complaint.* Any paper after the complaint that is required to
be served must be filed no later than a reasonable time after service. But
disclosures under Rule 26(a)(1) or (2) and the following discovery
requests and responses must not be filed until they are used in the
proceeding or the court orders filing: depositions, interrogatories, requests

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

for documents or tangible things or to permit entry onto land, and requests for admission.

(B) *Certificate of Service.* No certificate of service is required when a paper is served by filing it with the court's electronic-filing system. When a paper that is required to be served is served by other means:

(i) if the paper is filed, a certificate of service must be filed with it or within a reasonable time after service, and

(ii) if the paper is not filed, a certificate of service need not be filed unless filing is required by local rule or court order.

\* \* \* \* \*

(2) *Nonelectronic Filing.* A paper not filed electronically is filed by delivering it:

(A) to the clerk; or

(B) to a judge who agrees to accept it for filing, and who must then note the filing date on the paper and promptly send it to the clerk.

(3) *Electronic Filing and Signing.*

(A) *By a Represented Person — Generally Required; Exceptions.* A person represented by an attorney must file electronically, unless nonelectronic filing is allowed by the court for good cause or is allowed or required by local rule.

(B) *By an Unrepresented Person—When Allowed or Required.* A person not represented by an attorney:

(i) may file electronically only if allowed by court order or by local rule; and

(ii) may be required to file electronically only by court order, or by a local rule that includes reasonable exceptions.

(C) *Signing.* An authorized filing made through a person's electronic filing account, together with the person's name on a signature block, constitutes the person's signature.

(D) *Same as a Written Paper.* A paper filed electronically is a written paper for purposes of these rules.

\* \* \* \* \*

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017

## COMMITTEE NOTE

**Subdivision (b).** Rule 5(b) is amended to revise the provisions for electronic service. Provision for electronic service was first made when electronic communication was not as widespread or as fully reliable as it is now. Consent of the person served to receive service by electronic means was required as a safeguard. Those concerns have substantially diminished, but have not disappeared entirely, particularly as to persons proceeding without an attorney.

The amended rule recognizes electronic service through the court's transmission facilities as to any registered user. A court may choose to allow registration only with the court's permission. But a party who registers will be subject to service through the court's facilities unless the court provides otherwise. With the consent of the person served, electronic service also may be made by means that do not utilize the court's facilities. Consent can be limited to service at a prescribed address or in a specified form, and may be limited by other conditions.

Service is complete when a person files the paper with the court's electronic-filing system for transmission to a registered user, or when one person sends it to another person by other electronic means that the other person has consented to in writing. But service is not effective if the person who filed with the court or the person who sent by other agreed-upon electronic means learns that the paper did not reach the person to be served. The rule does not make the court responsible for notifying a person who filed the paper with the court's electronic-filing system that an attempted transmission by the court's system failed. But a filer who learns that the transmission failed is responsible for making effective service.

Because Rule 5(b)(2)(E) now authorizes service through the court's facilities as a uniform national practice, Rule 5(b)(3) is abrogated. It is no longer necessary to rely on local rules to authorize such service.

**Subdivision (d).** Rule 5(d)(1) has provided that any paper after the complaint that is required to be served "must be filed within a reasonable time after service." Because "within" might be read as barring filing before the paper is served, "no later than" is substituted to ensure that it is proper to file a paper before it is served.

Under amended Rule 5(d)(1)(B), a certificate of service is not required when a paper is served by filing it with the court's electronic-filing system. When service is not made by filing with the court's electronic filing system, a certificate of service must be filed with the paper or within a reasonable time after service, and should specify the date as well as the manner of service. For papers that are required to be served but must not be filed until they are used in the proceeding or the court orders filing, the certificate need not be filed until the paper is filed, unless filing is required by local rule or court order.

Amended Rule 5(d)(3) recognizes increased reliance on electronic filing. Most districts have adopted local rules that require electronic filing, and allow reasonable exceptions as required by the former rule. The time has come to seize the advantages of electronic filing by

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                 Page 12

making it generally mandatory in all districts for a person represented by an attorney. But exceptions continue to be available. Nonelectronic filing must be allowed for good cause. And a local rule may allow or require nonelectronic filing for other reasons.

Filings by a person proceeding without an attorney are treated separately. It is not yet possible to rely on an assumption that pro se litigants are generally able to seize the advantages of electronic filing. Encounters with the court's system may prove overwhelming to some. Attempts to work within the system may generate substantial burdens on a pro se party, on other parties, and on the court. Rather than mandate electronic filing, filing by pro se litigants is left for governing by local rules or court order. Efficiently handled electronic filing works to the advantage of all parties and the court. Many courts now allow electronic filing by pro se litigants with the court's permission. Such approaches may expand with growing experience in the courts, along with the greater availability of the systems required for electronic filing and the increasing familiarity of most people with electronic communication. Room is also left for a court to require electronic filing by a pro se litigant by court order or by local rule. Care should be taken to ensure that an order to file electronically does not impede access to the court, and reasonable exceptions must be included in a local rule that requires electronic filing by a pro se litigant. In the beginning, this authority is likely to be exercised only to support special programs, such as one requiring e-filing in collateral proceedings by state prisoners.

An authorized filing through a person's electronic filing account, together with the person's name on a signature block, constitutes the person's signature.

## SUMMARY OF COMMENTS: RULE 5

### In General

Hon. Benjamin C. Mizer, CV-2016-0004-0037: Says simply that the Department of Justice supports these amendments.

Cheryl L. Siler, Esq., Aderant CompuLaw, CV-2016-0004-0058: The proposed revisions are reasonable.

### Rule 5(b)

Pennsylvania Bar Association, CV-0064: The rule should provide for service by electronic means of papers not filed at the time of service, notably disclosures and discovery materials. Service would be by email addressed to attorneys of record at the addresses on the court's electronic filing system. E-service is faster generally, and reduces problems and uncertainty about service.

Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                                     Page 13

*Rule 5(d)(1)*

Andrew D'Agostino, Esq., 0035: It should be made clear that the proof of service of the complaint or other case-initiating document can be filed electronically.

Sergey Vernyuk, Esq., 0049: (1) Lawyers regularly include certificates of service as part of the papers served, both in paper form and e-form. The rule should clarify the status of an anticipatory certificate—should the certificate always be a separate document, prepared after actual service? (2) The bar should be educated on the proposition that a certificate need not be included in a disclosure or discovery paper that is not to be filed. (3) Rule 5(d) will continue to direct that "discovery requests and responses," including "depositions" and "requests for documents [etc.]" not be filed. Does this mean that a Rule 45 subpoena to produce must not be filed as a discovery request to produce documents? (4) The separation of the certificate requirement from its place in the present rule creates an ambiguity. Present Rule 5(d) directs that the certificate be filed when the paper is filed, a reasonable time after service. That means that the certificate is never filed if the paper is never filed, given the direction that disclosures and most discovery papers are to be filed only when the court orders filing or when used in the action. Proposed Rule 5(d)(1)(B) says that the certificate must be filed within a reasonable time after service; on its face it contemplates filing the certificate even though the paper has not been, and may never be, filed.

Michael Rosman, Esq., 0049: As written, Rule 5(d)(1)(B) is ambiguous: the Notice of Electronic Filing constitutes a certificate of service, but must the filer separately file the NEF? It would be better to follow the lead of Appellate Rule 25(d)(1)(B), dispensing with the proof-of-service requirement as to any person served through the court's system.

Federal Magistrate Judges Association, 0094: With paper, the practice has been to file with the court after making service. With e-filing, filing effects service. If the language of the current rule is retained, something should be added to reflect e-filing: "Any paper after the complaint that is required to be served, **but is served by means other than filing on the court's electronic filing system,** must be filed within a reasonable time after service."

*Rule 5(d)(2)*

Sai, 0074: The core message, elaborated over many pages, is direct: The proposed rule impairs the right to appear pro se "by prohibiting pro se litigants from accessing the benefits of CM/ECF on an equal basis with represented litigants." "This inequity in access and delays results in two procedurally different systems * * *." "Before the law sit many gatekeepers. Let this not be one of them."

A pro se litigant who completes whatever training is required for an attorney to become a registered user should be allowed to be a registered user without seeking additional permission, beginning with the right to file a complaint, motion to intervene, or amicus brief. If given access the ability to file a case initiation should prove the filer's capacity. Inappropriate burdens are

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

entailed by requiring a preliminary motion for permission, burdens that are particularly inappropriate if the filer is already a CM/ECF filer in the same court. Indeed the rule, as written, would prohibit e-filing even by a registered attorney user who appears pro se as a party. Still worse, a motion cannot be filed unless the case has already been initiated—a pro se plaintiff must always file a paper complaint. The problems that arise when a pro se litigant is not able to use the court's system effectively can be solved by finding good cause to deny e-filing. But the inevitable small problems can be fixed: "docket clerks routinely screen incoming filings and will correct clear deficiencies or errors."

At the same time, it should be presumed that a pro se litigant has good cause to file on paper, not in the electronic system. The presumption should be irrebuttable for a pro se prisoner, who should always have the option of paper filing.

The advantages of e-filing are detailed at length. It is virtually instantaneous, and makes the most of applicable time limits. A complaint can be perfected up to the very end of a limitations period. After-hours filing is simple. Only e-filing may be feasible for emergency matters, particularly a request for a TRO or a preliminary injunction—the harm may be done before a paper filing can be prepared and filed. A pro se defendant must wait to be served by non-electronic means:" For litigants with disabilities, who travel frequently, or reside overseas, such as me, waiting for and accessing physical mail imposes routinely delays of weeks. This is just to *receive* filings; one must also respond."

E-filing also is important for litigants with disabilities, particularly those with impaired vision. A document scanned into the court file from a paper original is more difficult to use, in some settings much more difficult. E-documents "are more readable on a screen; they can be more readily printed in large print or other adaptive formats; they preserve hyperlinks; and they permit PDF structuring, such as bookmarks for sections or exhibits." "Being required to file on paper hinders *everyone's* access to the litigant's filings * * *."

E-filing also is less expensive, and much less expensive for long filings. Courts often "require multiple duplicates of case initiation documents for service, chambers, etc." These costs are particularly burdensome for i.f.p. litigants.

A registered user of the CM/ECF system can receive the same notices of electronic filing as the parties to a case. That can support tracking for an eventual motion to intervene or an amicus brief. It can give access to arguments that can be cribbed or anticipated and opposed, evidence found by litigants to other cases, or information of "journalistic interest, where immediate notification of developments is critical to presenting timely news to one's audience." (There are other references to citizen journalists and observations that denying access of right to e-filing operates as a prior restraint. The prior restraint observations seem to extend beyond the citizen-journalist concern to the broader themes of burden.) A nonparty pro se can be allowed to file only an initiating document, such as a motion for leave to file; improper filings can be summarily denied or sanctioned.

Nov. 3 Hearing, Sai, pp. 112-124: The argument is clearly made: pro se litigants should be allowed to choose for themselves whether to e-file. There should be no need to ask either for permission or for exemption. This argument is supported by recounting the many advantages Sai has experienced as a pro se litigant when allowed to e-file, and the many disadvantages experienced when not allowed to e-file. (1) Even in courts that allow a pro se litigant to e-file, generally the litigant must first commence the action on paper and then seek leave to e-file. That adds to delay and expense. (2) e-filing is faster and less expensive. Last-minute extensions, for example, can be sought after the clerk's office has closed. A request for a TRO can be filed instantly, as compared to the cost and delay of mail. And filings by other parties are communicated instantly by the Notice of Electronic Filing, as compared to the cost and delay of periodic access to the court file through PACER. Sai is an IFP litigant, and the costs of printing and mailing are inconsistent with the IFP policy. (3) When paper filings are scanned into the court's e-files readability suffers, and it is not possible to include links to exhibits, court decisions, and like e-materials. "The structure of a PDF is harmed." (4) The fears that underlie the "presumption" against pro se e-filing are exaggerated. It should not be presumed that pro se litigants are vexatious. Pro se litigants are not the only ones who occasionally make mistakes in docketing — clerks do it too. Many pro se litigants are fully capable of e-filing; Sai has done it successfully in several cases after going through the chore of getting permission.

*Rule 5(d)(3): Electronic Filing*

Michael Rosman, Esq., 0061: (1) The rule text does not define "user name" or "password." It could be read to require that they be included in the paper that is filed. But the only way to file electronically is by entering the user name and password. It would be better to say: "For all papers filed electronically by attorneys who are registered users of the Court's electronic filing system, the attorney's name on a signature block serves as the attorney's signature." (2) What about papers that are not filed at the time of service—disclosures and discovery materials? Rule 26(g) requires that they be signed. They may be served by electronic means outside the court's system. Some provision should be made. (3) An attorney who files a complaint is not yet an attorney of record, so the filing and name do not satisfy the draft rule text. Why not substitute "attorney registered with the Court's electronic filing system" for "attorney of record"?

Pennsylvania Bar Association, CV-0064: The proposed text on signing should be clarified—the attorney's name on a signature block serves as the attorney's signature if a paper is filed in the court's system. Beyond that, something should be said about the circumstance in which a paper is filed using an attorney's name and password, but a different signature appears on the block.

Heather Dixon, Esq., 0067: The signature provision should be revised to make it clear that the attorney's user name and password are not to be included in the signature block.

New York City Bar Association, 0070: Again, the rule text should be clear that the attorney's user name and password are not to appear on the signature block.

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                    Page 16

Federal Magistrate Judges Association, 0094: The risk that the published proposal will be read to require supplying the filer's user name and password on the signature block can be addressed like this: "For documents filed utilizing the court's electronic filing system, inserting the attorney's name on the signature block and filing the document using the attorney's user name and password will constitute that attorney's signature."

## B. RULE 23

The great majority of the comments and testimony during the public comment period addressed the Rule 23 package. The summary of comments and testimony is included in this agenda book.

The published preliminary draft principally addressed issues related to settlement of class actions. After study, the Advisory Committee decided not to pursue several additional topics. Some of those topics were nonetheless urged during the public comment period. In addition, comments urged certain additional measures that had not been considered during the Advisory Committee's review of the rule. Comments about these topics are included at the end of the summary of comments.

Regarding the proposed amendments included in the preliminary draft, the Advisory Committee received much commentary about the modernization of notice methods and about the handling of class member objections to proposed class-action settlements. These matters are also presented in the summary of comments.

After the conclusion of the public comment period, the Rule 23 Subcommittee met by conference call to review and consider the comments received about the published preliminary draft. Very few changes were made in the rule language, and Committee Note language was clarified and shortened during this review.

Notes from the first of those conference calls are included in this agenda book. The second conference call revolved almost entirely around wording choices for the Committee Note, and the materials below reflect those wording choices.

1   **Rule 23.    Class Actions**
2
3                                    * * * * *
4
5   **(c)    Certification Order; Notice to Class Members; Judgment; Issues Classes;**
6          **Subclasses**
7
8                                    * * * * *
9
10         **(2)    *Notice.***
11
12                                   * * * * *
13
14                 **(B)    *For (b)(3) Classes.*** For any class certified under Rule 23(b)(3)—or upon
15                        ordering notice under Rule 23(e)(1) to a class proposed to be certified for
16                        purposes of settlement under Rule 23(b)(3)—the court must direct to class
17                        members the best notice that is practicable under the circumstances,

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language:

\* \* \* \* \*

(e)   **Settlement, Voluntary Dismissal, or Compromise.** The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

   (1)   *Notice to the Class*

         (A)   *Information That Parties Must Provide to the Court.* The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.

         (B)   *Grounds for a Decision to Give Notice.* The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to:

               (i)     approve the proposal under Rule 23(e)(2); and

               (ii)    certify the class for purposes of judgment on the proposal.

   (2)   *Approval of the Proposal.* If the proposal would bind class members ~~under Rule 23(e)(3)~~, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:~

         (A)   the class representatives and class counsel have adequately represented the class;

         (B)   the proposal was negotiated at arm's length;

         (C)   the relief provided for the class is adequate, taking into account:

               (i)     the costs, risks, and delay of trial and appeal;

Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                      Page 19

59
60
61
62
            **(ii)** the effectiveness of any ~~the~~ proposed method of distributing relief to the class, including the method of processing class-member claims~~, if required~~;

63
64
65
            **(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and

66
67
            **(iv)** any agreement required to be identified under Rule 23(e)(3); and

68
69
70
      **(D)** the proposal treats class members ~~are treated~~ equitably relative to each other.

71   **(3)** *Identification of ~~Side~~ Agreements.* The parties seeking approval must file a
72 statement identifying any agreement made in connection with the proposal.

73
74   **(4)** *New Opportunity to Be Excluded.* If the class action was previously certified
75 under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords
76 a new opportunity to request exclusion to individual class members who had an
77 earlier opportunity to request exclusion but did not do so.

78
79   **(5)** *Class-Member Objections.*

80
81       **(A)** *In General.* Any class member may object to the proposal if it requires
82 court approval under this subdivision (e)~~; the objection may be withdrawn~~
83 ~~only with the court's approval~~. The objection must state whether it applies
84 only to the objector, to a specific subset of the class, or to the entire class,
85 and also state with specificity the grounds for the objection.

86
87       **(B)** *Court Approval Required for Payment In Connection With an Objection ~~to~~*
88 *~~an Objector or Objector's Counsel~~.* Unless approved by the court after a
89 hearing, no payment or other consideration may be provided ~~to an objector~~
90 ~~or objector's counsel~~ in connection with:

91
92          **(i)** forgoing or withdrawing an objection, or

93
94          **(ii)** forgoing, dismissing, or abandoning an appeal from a judgment
95 approving the proposal.

96
97       **(C)** *Procedure for Approval After an Appeal.* If approval under
98 Rule 23(e)(5)(B) has not been obtained before an appeal is docketed in the
99 court of appeals, the procedure of Rule 62.1 applies while the appeal
100 remains pending.
101

81

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                 Page 20

102   **(f)**   **Appeals.**  A court of appeals may permit an appeal from an order granting or denying
103         class-action certification under this rule, but not from an order under Rule 23(e)(1). ~~if a~~
104         ~~petition for to appeal is filed~~  A party must file a petition for permission to appeal with
105         the circuit clerk within 14 days after the order is entered, or within 45 days after the order
106         is entered if any party is the United States, a United States agency, or a United States
107         officer or employee sued for an act or omission occurring in connection with duties
108         performed on the United States' behalf.  An appeal does not stay proceedings in the
109         district court unless the district judge or the court of appeals so orders.
110
111                                          * * * * *

1                                      COMMITTEE NOTE
2
3         Rule 23 is amended mainly to address issues related to settlement, and also to take
4   account of issues that have emerged since the rule was last amended in 2003.
5
6         **Subdivision (c)(2).**  As amended, Rule 23(e)(1) provides that the court must direct notice
7   to the class regarding a proposed class-action settlement only after determining that the prospect
8   of class certification and approval of the proposed settlement justifies giving notice.  This
9   decision has been ~~is sometimes inaccurately~~ called "preliminary approval" of the proposed class
10  certification in Rule 23(b)(3) actions.₁ ~~and~~ [it is common to send notice to the class
11  simultaneously under both Rule 23(e)(1) and Rule 23(c)(2)(B), including a provision for class
12  members to decide by a certain date whether to opt out.  This amendment recognizes the
13  propriety of this combined notice practice.  ~~Requiring repeat notices to the class can be wasteful~~
14  ~~and confusing to class members, and costly as well.~~
15
16        Subdivision (c)(2) is also amended to recognize contemporary methods of giving notice
17  to class members.  Since *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974), interpreted the
18  individual notice requirement for class members in Rule 23(b)(3) class actions, many courts have
19  read the rule to require notice by first class mail in every case.  But technological change since
20  1974 has introduced ~~meant that~~ other means ~~forms~~ of communication that may sometimes
21  provide a ~~be more~~ reliable additional or alternative method for giving notice ~~and important to~~
22  ~~many~~.  Although first class mail may often be the preferred primary method of giving notice,
23  ~~c~~Courts and counsel have begun to employ new technology to make notice more effective ~~, and~~
24  ~~sometimes less costly~~.  Because there is no reason to expect that technological change will cease
25  ~~halt soon~~, when selecting a method or methods of giving notice courts ~~giving notice under this~~
26  ~~rule~~ should consider the capacity and limits of current technology, including class members'
27  likely access to such technology ~~, when selecting a method of giving notice~~.

28        Rule 23(c)(2)(B) is amended to take account of these changes ~~, and to call attention to~~
29  ~~them~~.  The rule continues to call for giving class members "the best notice that is practicable."  It
30  does not specify any particular means as preferred.  Although it may sometimes ~~often~~ be true that
31  electronic methods of notice, for example ~~by~~ email, are the most promising, it is important to

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

32   keep in mind that a significant portion of class members in certain cases may have limited or no
33   access to email or the Internet.
34
35          Instead of preferring any one means of notice, therefore, the amended rule relies on
36   courts and counsel to ~~should~~ focus on the means or combination of means most likely to be
37   effective in the case before the court. ~~The amended rule emphasizes that t~~The court should ~~must~~
38   exercise its discretion to select appropriate means of giving notice. ~~Courts should take account
39   not only of anticipated actual delivery rates, but also of the extent to which members of a
40   particular class are likely to pay attention to messages delivered by different means.~~ In providing
41   the court with sufficient information to enable it to decide whether to give notice to the class of a
42   proposed class-action settlement under Rule 23(e)(1), it would ordinarily ~~may~~ be important to
43   include details ~~a report~~ about the proposed method of giving notice ~~to the class~~ and to provide
44   the court with a copy of each notice the parties propose to use.
45
46          In determining whether the proposed means of giving notice is appropriate, the court
47   should also give careful attention to the content and format of the notice and, if notice is given
48   under both Rule 23(e)(1) and ~~as well as~~ Rule 23(c)(2)(B), any claim form class members must
49   submit to obtain relief. ~~Particularly if the notice is by electronic means, care is necessary
50   regarding access to online resources, the manner of presentation, and any response expected of
51   class members.~~
52
53          Counsel should consider which method or methods of giving notice will be most
54   effective; simply assuming that the "traditional" methods are best may disregard contemporary
55   communication realities. ~~As the rule directs, the notice should be the "best * * *" that is
56   practicable" in the given case.~~ The ultimate goal of giving notice is to enable class members to
57   make informed decisions about whether to opt out or, in instances where a proposed settlement is
58   involved, to object or to make claims. Rule 23(c)(2)(B) directs that the notice be "in plain, easily
59   understood language." Means, format, and content that would be appropriate for class members
60   likely to be sophisticated, for example in a securities fraud class action, might not be appropriate
61   for a class having many ~~made up in significant part of~~ members likely to be less sophisticated.
62   ~~As with the method of notice, the form of notice should be tailored to the class members'
63   anticipated understanding and capabilities.~~ The court and counsel may wish to consider the use
64   of class notice experts or professional claims administrators.
65
66          Attention should focus also on the method of opting out provided in the notice. The
67   proposed method should be as convenient as possible, while protecting against unauthorized opt-
68   out notices. ~~The process of opting out should not be unduly difficult or cumbersome. As with
69   other aspects of the notice process, there is no single method that is suitable for all cases.~~
70
71          **Subdivision (e).** The introductory paragraph of Rule 23(e) is amended to make explicit
72   that its procedural requirements apply in instances in which the court has not certified a class at
73   the time that a proposed settlement is presented to the court. The notice required under Rule
74   23(e)(1) then should also satisfy the notice requirements of amended Rule 23(c)(2)(B) for a class
75   to be certified under Rule 23(b)(3), and trigger the class members' time to request exclusion.

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

76   Information about the opt-out rate could then be available to the court when it considers final
77   approval of the proposed settlement.
78
79          **Subdivision (e)(1).** The decision to give notice of a proposed settlement to the class is an
80   important event. It should be based on a solid record supporting the conclusion that the proposed
81   settlement will likely earn final approval after notice and an opportunity to object. The ~~amended~~
82   ~~rule makes clear that the~~ parties must provide the court with information sufficient to determine
83   ~~enable it to decide~~ whether notice should be sent. At the time they seek notice to the class, the
84   proponents of the settlement should ordinarily provide the court with all available materials they
85   intend to submit to ~~in~~ support ~~of~~ approval under Rule 23(e)(2) and that they intend to make
86   available to class members. ~~That would give the court a full picture and make this information~~
87   ~~available to the members of the class.~~ The amended rule also specifies the standard the court
88   should use in deciding whether to send notice -- that it likely will be able both to approve the
89   settlement proposal under Rule 23(c)(2) and, if it has not previously certified a class, to certify
90   the class for purposes of judgment on the proposal.
91
92          ~~There are many types of class actions and class-action settlements. As a consequence, no~~
93   ~~single list of topics to be addressed in the submission to the court would apply to each case.~~
94   ~~Instead,~~ Tthe subjects to be addressed depend on the specifics of the particular class action and
95   proposed settlement. But some general observations can be made.
96
97          One key element is class certification. If the court has already certified a class, the only
98   information ordinarily necessary ~~in regard to a proposed settlement~~ is whether the proposed
99   settlement ~~proposal~~ calls for any change in the class certified, or of the claims, defenses, or
100  issues regarding which certification was granted. But if a class has not been certified, the parties
101  must ensure that the court has a basis for concluding that it likely will be able, after the final
102  hearing, to certify the class. Although the standards for certification differ for settlement and
103  litigation purposes, the court cannot make the decision regarding the prospects for certification
104  without a suitable basis in the record. The ultimate decision to certify the class for purposes of
105  settlement cannot be made until the hearing on final approval of the proposed settlement. If the
106  settlement is not approved~~and certification for purposes of litigation is later sought~~, the parties'
107  ~~earlier~~ positions ~~submissions in regard~~ing ~~to the proposed~~ certification for settlement should not
108  be considered if certification is later sought for purposes of litigation ~~in deciding on certification~~.
109
110         Regarding the proposed settlement, many ~~a great variety of~~ types of information might
111  appropriately be provided ~~included in the submission~~ to the court. A basic focus is the extent
112  and type of benefits that the settlement will confer on the members of the class. Depending on
113  the nature of the proposed relief, that showing may include details of the contemplated claims
114  process ~~that is contemplated~~ and the anticipated rate of claims by class members. ~~If the notice to~~
115  ~~the class calls for submission of claims before the court decides whether to approve the proposal~~
116  ~~under Rule 23(e)(2), it may be important to provide that the parties will report back to the court~~
117  ~~on the actual claims experience. And~~ Bbecause some funds are frequently left unclaimed, ~~it is~~
118  ~~often important for~~ the settlement agreement ordinarily should ~~to~~ address the distribution ~~use~~ of

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                    Page 23

119  those funds. ~~Many courts have found guidance on this subject in § 3.07 of the American Law~~
120  ~~Institute, Principles of Aggregate Litigation (2010).~~
121
122           ~~It is important for t~~The parties should also ~~to~~ supply the court with information about the
123  likely range of litigated outcomes, and about the risks that might attend full litigation. ~~In that~~
124  ~~connection,~~ ~~I~~information about the extent of discovery completed in the litigation or in parallel
125  actions may often be important. In addition, as suggested by Rule 23(b)(3)(A), the parties should
126  provide information about the existence of other pending or anticipated litigation on behalf of
127  class members involving claims that would be released under the proposal ~~-- including the~~
128  ~~breadth of any such release -- may be important~~.
129
130           The proposed handling of an award of attorney's fees under Rule 23(h) ~~is another topic~~
131  ~~that~~ ordinarily should be addressed in the parties' submission to the court. In some cases, it will
132  be important to relate the amount of an award of attorney's fees to the expected benefits to the
133  class~~, and to take account of the likely claims rate~~. One way to ~~method of~~ addressing this issue is
134  to defer some or all of the award of attorney's fees until the court is advised of the actual claims
135  rate and results.
136
137           Another topic that normally should be considered is any agreement that must be
138  identified under Rule 23(e)(3).
139
140           The parties may supply information to the court on any other topic that they regard as
141  pertinent to the determination whether the proposal is fair, reasonable, and adequate. The court
142  may direct the parties to supply further information about the topics they do address, or to supply
143  information on topics they do not address. The court should ~~It must~~ not direct notice to the class
144  until the parties' submissions show it is likely that the court will be able to approve the proposal
145  after notice to the class and a final approval hearing.
146
147           **Subdivision (e)(2).** The central concern in reviewing a proposed class-action settlement
148  is that it be fair, reasonable, and adequate. ~~This standard emerged from case law implementing~~
149  ~~Rule 23(e)'s requirement of court approval for class-action settlements. It was formally~~
150  ~~recognized in the rule through the 2003 amendments. By then, C~~courts have~~d~~ generated lists of
151  factors to shed light on this ~~central~~ concern. Overall, these factors focus~~ed~~ on comparable
152  considerations, but each circuit has developed its own vocabulary for expressing these concerns.
153  In some circuits, these lists have remained essentially unchanged for thirty or forty years. The
154  goal of this amendment is not to displace any ~~of these~~ factors, but rather to focus the court and
155  the lawyers on the core concerns of procedure and substance that should guide the decision
156  whether to approve the proposal.
157
158           ~~One reason for this amendment is that~~ ~~A~~a lengthy list of factors can take on an
159  independent life, potentially distracting attention from the central concerns that inform the
160  settlement-review process. A circuit's list might include a dozen or more separately articulated
161  factors. Some of those factors—perhaps many—may not be relevant to a particular case or
162  settlement proposal. Those that are relevant may be more or less important to the particular case.

85

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                                        Page 24

163    Yet counsel and courts may feel it necessary to address every ~~single~~ factor on a given circuit's
164    list in every case. The sheer number of factors can distract both the court and the parties from
165    the central concerns that bear on review under Rule 23(e)(2).
166
167            This amendment therefore directs the parties to present the settlement to the court in
168    terms of a shorter list of core concerns, by focusing on the primary procedural considerations and
169    substantive qualities that should always matter to the decision whether to approve the proposal.
170
171            Approval under Rule 23(e)(2) is required only when class members would be bound
172    under Rule 23(c)(3). Accordingly, in addition to evaluating the proposal itself, the court must
173    determine whether it can certify the class under the standards of Rule 23(a) and (b) for purposes
174    of judgment based on the proposal.
175
176            **Paragraphs (A) and (B).** These paragraphs identify matters that might be described as
177    "procedural" concerns, looking to the conduct of the litigation and of the negotiations leading up
178    to the proposed settlement. Attention to these matters is an important foundation for scrutinizing
179    the substance ~~specifics~~ of the proposed settlement. If the court has appointed class counsel or
180    interim class counsel, it will have made an initial evaluation of counsel's capacities and
181    experience. But the focus at this point is on the actual performance of counsel acting on behalf
182    of the class.
183
184            The information submitted under Rule 23(e)(1) may provide a useful starting point in
185    assessing these topics. For example, the nature and amount of discovery in this or other cases, or
186    the actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the
187    class had an adequate information base. The pendency of other litigation about the same general
188    subject on behalf of class members may also be pertinent. The conduct of the negotiations may
189    be important as well. For example, the involvement of a neutral or court-affiliated mediator or
190    facilitator in those negotiations may bear on whether they were conducted in a manner that
191    would protect and further the class interests. ~~In undertaking this analysis, the court may also
192    refer to Rule 23(g)'s criteria for appointment of class counsel; the concern is whether the actual
193    conduct of counsel has been consistent with what Rule 23(g) seeks to ensure.~~ Particular attention
194    might focus on the treatment of any award of attorney's fees, with respect to both the manner of
195    negotiating the fee award and its terms.
196
197            **Paragraphs (C) and (D).** These paragraphs focus on what might be called a
198    "substantive" review of the terms of the proposed settlement. The relief that the settlement is
199    expected to provide to class members is a central concern. Measuring the proposed relief may
200    require evaluation of any ~~the~~ proposed claims process; directing that the parties report back to
201    the court about ~~and a prediction of how many claims will be made; if the notice to the class calls
202    for pre-approval submission of claims,~~ actual claims experience may be important. The contents
203    of any agreement identified under Rule 23(e)(3) may also bear on the adequacy of the proposed
204    relief, particularly regarding the equitable treatment of all members of the class.

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                                     Page 25

205        Another central concern will relate to the cost and risk involved in pursuing a litigated
206  outcome. Often, courts may need to forecast ~~what~~ the likely range of possible classwide
207  recoveries ~~might be~~ and the likelihood of success in obtaining such results. That forecast cannot
208  be done with arithmetic accuracy, but it can provide a benchmark for comparison with the
209  settlement figure.
210
211        If the class has not yet been certified for trial, the court may consider whether
212  certification for litigation would be granted were the settlement not approved.
213
214        Examination of the attorney-fee provisions may also be <u>valuable in</u> ~~important to~~ assessing
215  the fairness of the proposed settlement. Ultimately, any award of attorney's fees must be
216  evaluated under Rule 23(h), and no rigid limits exist for such awards. Nonetheless, the relief
217  actually delivered to the class can be <u>a significant</u> ~~an important~~ factor in determining the
218  appropriate fee award. ~~Provisions for reporting back to the court about actual claims experience,~~
219  ~~and deferring a portion of the fee award until the claims experience is known, may bear on the~~
220  ~~fairness of the overall proposed settlement.~~
221
222        Often it will be important for the court to scrutinize the method of claims processing to
223  ensure that it facilitates filing legitimate claims. A claims processing method should deter or
224  defeat unjustified claims, but ~~unduly demanding claims procedures can impede legitimate~~
225  ~~claims. Particularly if some or all of any funds remaining at the end of the claims process must~~
226  ~~be returned to the defendant,~~ the court <u>should</u> ~~must~~ be alert to whether the claims process is
227  unduly demanding.
228
229        Paragraph (D) calls attention to a concern that may apply to some class action
230  settlements—inequitable treatment of some class members vis-a-vis others. Matters of concern
231  could include whether the apportionment of relief among class members takes appropriate
232  account of differences among their claims, and whether the scope of the release may affect class
233  members in different ways that <u>bear on</u> ~~affect~~ the apportionment of relief.
234
235        **Subdivisions (e)(3) <u>and (e)(4)</u>.** A h<u>H</u>eadings <u>are</u> ~~is~~ added to subdivision<u>s</u> (e)(3) <u>and</u>
236  <u>(e)(4)</u> in accord with style conventions. These<u>is</u> additions <u>are</u> ~~is~~ intended to be stylistic only.

237        ~~**Subdivision (e)(4).** A heading is added to subdivision (e)(4) in accord with style~~
238  ~~conventions. This addition is intended to be stylistic only.~~
239
240        **Subdivision (e)(5).** ~~Objecting class members can play a critical role in the settlement~~
241  ~~approval process under Rule 23(e). Class members have the right under Rule 23(e)(5) to submit~~
242  ~~objections to the proposal.~~ The submissions required by Rule 23(e)(1) may provide information
243  <u>critical</u> ~~important~~ to decisions whether to object or opt out. Objections <u>by class members</u> can
244  provide the court with important information bearing on its determination under Rule 23(e)(2)
245  whether to approve the proposal.
246

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                           Page 26

247        **Subdivision (e)(5)(A).**  The rule is amended to remove the requirement of court approval
248    for every withdrawal of an objection.  An objector should be free to withdraw on concluding that
249    an objection is not justified.  But Rule 23(e)(5)(B)(i) requires court approval of any payment or
250    other consideration in connection with withdrawing the objection.
251
252        The rule is also amended to clarify that objections must provide sufficient specifics to
253    enable the parties to respond to them and the court to evaluate them.  One feature required of
254    objections is specification whether the objection asserts interests of only the objector, or of some
255    subset of the class, or of all class members.  Beyond that, the rule directs that the objection state
256    its grounds "with specificity."  Failure to provide needed specificity may be a basis for rejecting
257    an objection.  Courts should take care, however, to avoid unduly burdening class members who
258    wish to object, and to recognize that a class member who is not represented by counsel may
259    present objections that do not adhere to technical legal standards.
260
261        **Subdivision (e)(5)(B).**  Good-faith objections can assist the court in evaluating a
262    proposal under Rule 23(e)(2).  It is legitimate for an objector to seek payment for providing such
263    assistance under Rule 23(h).  ~~As recognized in the 2003 Committee Note to Rule 23(h):  "In~~
264    ~~some situations, there may be a basis for making an award to other counsel whose work~~
265    ~~produced a beneficial result for the class, such as * * * attorneys who represented objectors to a~~
266    ~~proposed settlement under Rule 23(e)."~~
267
268        But some objectors may be seeking only personal gain, and using objections to obtain
269    benefits for themselves rather than assisting in the settlement-review process.  At least in some
270    instances, it seems that objectors—or their counsel—have sought to <u>obtain consideration for</u>
271    ~~extract tribute to~~ withdraw<u>ing</u> their objections or dismiss<u>ing</u> appeals from judgments approving
272    class settlements.  And class counsel sometimes may feel that avoiding the delay produced by an
273    appeal justifies providing payment or other consideration to these objectors.  <u>Although the</u>
274    <u>payment may advance class interests in a particular case, allowing payment perpetuates a system</u>
275    <u>that can encourage objections advanced for improper purposes.</u>
276
277        The court-approval requirement currently in Rule 23(e)(5) partly addresses this concern.
278    Because the concern only applies when consideration is given in connection with withdrawal of
279    an objection, however, the amendment requires approval under Rule 23(e)(5)(B)(i) only when
280    consideration is involved.  <u>Although such payment is usually made to objectors or their counsel,</u>
281    <u>the rule also requires court approval if a payment in connection with forgoing or withdrawing an</u>
282    <u>objection or appeal is instead to another recipient.</u>  The term "consideration" should be broadly
283    interpreted, particularly when the withdrawal includes some arrangements beneficial to objector
284    counsel.  If the consideration involves a payment to counsel for an objector, the proper procedure
285    is by motion under Rule 23(h) for an award of fees<u>;</u> ~~the court may approve the fee if the~~
286    ~~objection assisted the court in understanding and evaluating the settlement even though the~~
287    ~~settlement was approved as proposed~~.
288
289        Rule 23(e)(5)(B)(ii) applies to consideration in connection with forgoing, dismissing, or
290    abandoning an appeal from a judgment approving the proposal.  Because an appeal by a class-

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

291    action objector may produce much longer delay than an objection before the district court, it is
292    important to extend the court-approval requirement to apply in the appellate context. The district
293    court is best positioned to determine whether to approve such arrangements; hence, the rule
294    requires that the motion seeking approval be made to the district court.
295
296             Until the appeal is docketed by the circuit clerk, the district court may dismiss the appeal
297    on stipulation of the parties or on the appellant's motion. See Fed. R. App. P. 42(a). Thereafter,
298    the court of appeals has authority to decide whether to dismiss the appeal. This rule's
299    requirement of district court approval of any consideration in connection with such dismissal by
300    the court of appeals has no effect on the authority of the court of appeals to decide whether to
301    dismiss over the appeal. It is, instead, a requirement that applies only to providing consideration
302    in connection with forgoing, dismissing, or abandoning an appeal. A party dissatisfied with the
303    district court's order under Rule 23(e)(5)(B) may appeal the order.
304
305             **Subdivision (e)(5)(C).** Because the court of appeals has jurisdiction over an objector's
306    appeal from the time that it is docketed in the court of appeals, the procedure of Rule 62.1
307    applies. That procedure does not apply after the court of appeals' mandate returns the case to the
308    district court.
309
310             **Subdivision (f).** As amended, Rule 23(e)(1) provides that the court must should direct
311    notice to the class regarding a proposed class-action settlement in cases in which class
312    certification has not yet been granted only after determining that the prospect of eventual class
313    certification justifies giving notice. This decision is sometimes inaccurately characterized as
314    "preliminary approval" of the proposed class certification. But this decisionit does not grant or
315    deny class certification, and review under Rule 23(f) would be premature. This amendment
316    makes it clear that an appeal under this rule is not permitted until the district court decides
317    whether to certify the class.
318
319             The rule is also amended to extend the time to file a petition for review of a class-action
320    certification order to 45 days whenever a party is the United States, one of its agencies, or a
321    United States officer or employee sued for an act or omission occurring in connection with duties
322    performed on the United States' behalf. In such a case, the extension applies to a petition for
323    permission to appeal by any party. The extension of time recognizes—as under Rules 4(i) and
324    12(a) and Appellate Rules 4(a)(1)(B) and 40(a)(1)—that the United States has a special need for
325    additional time in regard to these matters. The extension applies whether the officer or employee
326    is sued in an official capacity or an individual capacity; the defense is usually conducted by the
327    United States even though the action asserts claims against the officer or employee in an
328    individual capacity. An action against a former officer or employee of the United States is
329    covered by this provision in the same way as an action against a present officer or employee.
330    Termination of the relationship between the individual defendant and the United States does not
331    reduce the need for additional time.

"Clean" Rule and Note

[In order to facilitate comprehension of the revised proposed Rule and Note language, below is what they would look like if adopted.]

**Rule 23.     Class Actions**

\* \* \* \* \*

(c)    **Certification Order; Notice to Class Members; Judgment; Issues Classes; Subclasses**

\* \* \* \* \*

(2)    *Notice.*

\* \* \* \* \*

(B)    *For (b)(3) Classes.* For any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language:

\* \* \* \* \*

(e)    **Settlement, Voluntary Dismissal, or Compromise.** The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

(1)    *Notice to the Class*

(A)    *Information That Parties Must Provide to the Court.* The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.

(B)    *Grounds for a Decision to Give Notice.* The court must direct notice in a reasonable manner to all class members who would be bound by the

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                                  Page 29

proposal if giving notice is justified by the parties' showing that the court will likely be able to:

    **(i)**    approve the proposal under Rule 23(e)(2); and

    **(ii)**    certify the class for purposes of judgment on the proposal.

**(2)**    *Approval of the Proposal.* If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

    **(A)**    the class representatives and class counsel have adequately represented the class;

    **(B)**    the proposal was negotiated at arm's length;

    **(C)**    the relief provided for the class is adequate, taking into account:

        **(i)**    the costs, risks, and delay of trial and appeal;

        **(ii)**    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        **(iii)**    the terms of any proposed award of attorney's fees, including timing of payment; and

        **(iv)**    any agreement required to be identified under Rule 23(e)(3); and

    **(D)**    the proposal treats class members equitably relative to each other.

**(3)**    *Identification of Agreements.* The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

**(4)**    *New Opportunity to Be Excluded.* If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

**(5)**    *Class-Member Objections.*

    **(A)**    *In General.* Any class member may object to the proposal if it requires court approval under this subdivision (e). The objection must state whether it applies only to the objector, to a specific subset of the class, or

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                                    Page 30

> to the entire class, and also state with specificity the grounds for the
> objection.
>
> **(B)** *Court Approval Required for Payment In Connection With an Objection.*
> Unless approved by the court after a hearing, no payment or other
> consideration may be provided in connection with:
>
> **(i)** forgoing or withdrawing an objection, or
>
> **(ii)** forgoing, dismissing, or abandoning an appeal from a judgment
> approving the proposal.
>
> **(C)** *Procedure for Approval After an Appeal.* If approval under
> Rule 23(e)(5)(B) has not been obtained before an appeal is docketed in the
> court of appeals, the procedure of Rule 62.1 applies while the appeal
> remains pending.

**(f)** **Appeals.** A court of appeals may permit an appeal from an order granting or denying
class-action certification under this rule, but not from an order under Rule 23(e)(1). A
party must file a petition for permission to appeal with the circuit clerk within 14 days
after the order is entered, or within 45 days after the order is entered if any party is the
United States, a United States agency, or a United States officer or employee sued for an
act or omission occurring in connection with duties performed on the United States'
behalf. An appeal does not stay proceedings in the district court unless the district judge
or the court of appeals so orders.

* * * * *

COMMITTEE NOTE

Rule 23 is amended mainly to address issues related to settlement, and also to take
account of issues that have emerged since the rule was last amended in 2003.

**Subdivision (c)(2).** As amended, Rule 23(e)(1) provides that the court must direct notice
to the class regarding a proposed class-action settlement only after determining that the prospect
of class certification and approval of the proposed settlement justifies giving notice. This
decision has been called "preliminary approval" of the proposed class certification in
Rule 23(b)(3) actions. It is common to send notice to the class simultaneously under both
Rule 23(e)(1) and Rule 23(c)(2)(B), including a provision for class members to decide by a
certain date whether to opt out. This amendment recognizes the propriety of this combined
notice practice.

Subdivision (c)(2) is also amended to recognize contemporary methods of giving notice
to class members. Since *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974), interpreted the

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                                          Page 31

individual notice requirement for class members in Rule 23(b)(3) class actions, many courts have read the rule to require notice by first class mail in every case. But technological change since 1974 has introduced other means of communication that may sometimes provide a reliable additional or alternative method for giving notice. Although first class mail may often be the preferred primary method of giving notice, courts and counsel have begun to employ new technology to make notice more effective. Because there is no reason to expect that technological change will cease, when selecting a method or methods of giving notice courts should consider the capacity and limits of current technology, including class members' likely access to such technology.

Rule 23(c)(2)(B) is amended to take account of these changes. The rule continues to call for giving class members "the best notice that is practicable." It does not specify any particular means as preferred. Although it may sometimes be true that electronic methods of notice, for example email, are the most promising, it is important to keep in mind that a significant portion of class members in certain cases may have limited or no access to email or the Internet.

Instead of preferring any one means of notice, therefore, the amended rule relies on courts and counsel to focus on the means or combination of means most likely to be effective in the case before the court. The court should exercise its discretion to select appropriate means of giving notice. In providing the court with sufficient information to enable it to decide whether to give notice to the class of a proposed class-action settlement under Rule 23(e)(1), it would ordinarily be important to include details about the proposed method of giving notice and to provide the court with a copy of each notice the parties propose to use.

In determining whether the proposed means of giving notice is appropriate, the court should also give careful attention to the content and format of the notice and, if notice is given under both Rule 23(e)(1) and Rule 23(c)(2)(B), any claim form class members must submit to obtain relief.

Counsel should consider which method or methods of giving notice will be most effective; simply assuming that the "traditional" methods are best may disregard contemporary communication realities. The ultimate goal of giving notice is to enable class members to make informed decisions about whether to opt out or, in instances where a proposed settlement is involved, to object or to make claims. Rule 23(c)(2)(B) directs that the notice be "in plain, easily understood language." Means, format, and content that would be appropriate for class members likely to be sophisticated, for example in a securities fraud class action, might not be appropriate for a class having many members likely to be less sophisticated. The court and counsel may wish to consider the use of class notice experts or professional claims administrators.

Attention should focus also on the method of opting out provided in the notice. The proposed method should be as convenient as possible, while protecting against unauthorized opt-out notices.

**Subdivision (e).** The introductory paragraph of Rule 23(e) is amended to make explicit that its procedural requirements apply in instances in which the court has not certified a class at the time that a proposed settlement is presented to the court. The notice required under Rule 23(e)(1) then should also satisfy the notice requirements of amended Rule 23(c)(2)(B) for a class to be certified under Rule 23(b)(3), and trigger the class members' time to request exclusion. Information about the opt-out rate could then be available to the court when it considers final approval of the proposed settlement.

**Subdivision (e)(1).** The decision to give notice of a proposed settlement to the class is an important event. It should be based on a solid record supporting the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object. The parties must provide the court with information sufficient to determine whether notice should be sent. At the time they seek notice to the class, the proponents of the settlement should ordinarily provide the court with all available materials they intend to submit to support approval under Rule 23(e)(2) and that they intend to make available to class members. The amended rule also specifies the standard the court should use in deciding whether to send notice—that it likely will be able both to approve the settlement proposal under Rule 23(e)(2) and, if it has not previously certified a class, to certify the class for purposes of judgment on the proposal.

The subjects to be addressed depend on the specifics of the particular class action and proposed settlement. But some general observations can be made.

One key element is class certification. If the court has already certified a class, the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted. But if a class has not been certified, the parties must ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to certify the class. Although the standards for certification differ for settlement and litigation purposes, the court cannot make the decision regarding the prospects for certification without a suitable basis in the record. The ultimate decision to certify the class for purposes of settlement cannot be made until the hearing on final approval of the proposed settlement. If the settlement is not approved, the parties' positions regarding certification for settlement should not be considered if certification is later sought for purposes of litigation.

Regarding the proposed settlement, many types of information might appropriately be provided to the court. A basic focus is the extent and type of benefits that the settlement will confer on the members of the class. Depending on the nature of the proposed relief, that showing may include details of the contemplated claims process and the anticipated rate of claims by class members. Because some funds are frequently left unclaimed, the settlement agreement ordinarily should address the distribution of those funds.

The parties should also supply the court with information about the likely range of litigated outcomes, and about the risks that might attend full litigation. Information about the extent of discovery completed in the litigation or in parallel actions may often be important. In

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                Page 33

addition, as suggested by Rule 23(b)(3)(A), the parties should provide information about the existence of other pending or anticipated litigation on behalf of class members involving claims that would be released under the proposal.

The proposed handling of an award of attorney's fees under Rule 23(h) ordinarily should be addressed in the parties' submission to the court. In some cases, it will be important to relate the amount of an award of attorney's fees to the expected benefits to the class. One way to address this issue is to defer some or all of the award of attorney's fees until the court is advised of the actual claims rate and results.

Another topic that normally should be considered is any agreement that must be identified under Rule 23(e)(3).

The parties may supply information to the court on any other topic that they regard as pertinent to the determination whether the proposal is fair, reasonable, and adequate. The court may direct the parties to supply further information about the topics they do address, or to supply information on topics they do not address. The court should not direct notice to the class until the parties' submissions show it is likely that the court will be able to approve the proposal after notice to the class and a final approval hearing.

**Subdivision (e)(2).** The central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate. Courts have generated lists of factors to shed light on this concern. Overall, these factors focus on comparable considerations, but each circuit has developed its own vocabulary for expressing these concerns. In some circuits, these lists have remained essentially unchanged for thirty or forty years. The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.

A lengthy list of factors can take on an independent life, potentially distracting attention from the central concerns that inform the settlement-review process. A circuit's list might include a dozen or more separately articulated factors. Some of those factors—perhaps many—may not be relevant to a particular case or settlement proposal. Those that are relevant may be more or less important to the particular case. Yet counsel and courts may feel it necessary to address every factor on a given circuit's list in every case. The sheer number of factors can distract both the court and the parties from the central concerns that bear on review under Rule 23(e)(2).

This amendment therefore directs the parties to present the settlement to the court in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal.

Approval under Rule 23(e)(2) is required only when class members would be bound under Rule 23(c)(3). Accordingly, in addition to evaluating the proposal itself, the court must

Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules

determine whether it can certify the class under the standards of Rule 23(a) and (b) for purposes of judgment based on the proposal.

**Paragraphs (A) and (B).** These paragraphs identify matters that might be described as "procedural" concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement. Attention to these matters is an important foundation for scrutinizing the substance of the proposed settlement. If the court has appointed class counsel or interim class counsel, it will have made an initial evaluation of counsel's capacities and experience. But the focus at this point is on the actual performance of counsel acting on behalf of the class.

The information submitted under Rule 23(e)(1) may provide a useful starting point in assessing these topics. For example, the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base. The pendency of other litigation about the same general subject on behalf of class members may also be pertinent. The conduct of the negotiations may be important as well. For example, the involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests. Particular attention might focus on the treatment of any award of attorney's fees, with respect to both the manner of negotiating the fee award and its terms.

**Paragraphs (C) and (D).** These paragraphs focus on what might be called a "substantive" review of the terms of the proposed settlement. The relief that the settlement is expected to provide to class members is a central concern. Measuring the proposed relief may require evaluation of any proposed claims process; directing that the parties report back to the court about actual claims experience may be important. The contents of any agreement identified under Rule 23(e)(3) may also bear on the adequacy of the proposed relief, particularly regarding the equitable treatment of all members of the class.

Another central concern will relate to the cost and risk involved in pursuing a litigated outcome. Often, courts may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results. That forecast cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure.

If the class has not yet been certified for trial, the court may consider whether certification for litigation would be granted were the settlement not approved.

Examination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement. Ultimately, any award of attorney's fees must be evaluated under Rule 23(h), and no rigid limits exist for such awards. Nonetheless, the relief actually delivered to the class can be a significant factor in determining the appropriate fee award.

Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims. A claims processing method should deter or

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding.

Paragraph (D) calls attention to a concern that may apply to some class action settlements—inequitable treatment of some class members vis-a-vis others. Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief.

**Subdivisions (e)(3) and (e)(4).** Headings are added to subdivisions (e)(3) and (e)(4) in accord with style conventions. These additions are intended to be stylistic only.

**Subdivision (e)(5).** The submissions required by Rule 23(e)(1) may provide information critical to decisions whether to object or opt out. Objections by class members can provide the court with important information bearing on its determination under Rule 23(e)(2) whether to approve the proposal.

**Subdivision (e)(5)(A).** The rule is amended to remove the requirement of court approval for every withdrawal of an objection. An objector should be free to withdraw on concluding that an objection is not justified. But Rule 23(e)(5)(B)(i) requires court approval of any payment or other consideration in connection with withdrawing the objection.

The rule is also amended to clarify that objections must provide sufficient specifics to enable the parties to respond to them and the court to evaluate them. One feature required of objections is specification whether the objection asserts interests of only the objector, or of some subset of the class, or of all class members. Beyond that, the rule directs that the objection state its grounds "with specificity." Failure to provide needed specificity may be a basis for rejecting an objection. Courts should take care, however, to avoid unduly burdening class members who wish to object, and to recognize that a class member who is not represented by counsel may present objections that do not adhere to technical legal standards.

**Subdivision (e)(5)(B).** Good-faith objections can assist the court in evaluating a proposal under Rule 23(e)(2). It is legitimate for an objector to seek payment for providing such assistance under Rule 23(h).

But some objectors may be seeking only personal gain, and using objections to obtain benefits for themselves rather than assisting in the settlement-review process. At least in some instances, it seems that objectors—or their counsel—have sought to obtain consideration for withdrawing their objections or dismissing appeals from judgments approving class settlements. And class counsel sometimes may feel that avoiding the delay produced by an appeal justifies providing payment or other consideration to these objectors. Although the payment may advance class interests in a particular case, allowing payment perpetuates a system that can encourage objections advanced for improper purposes.

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                                          Page 36

The court-approval requirement currently in Rule 23(e)(5) partly addresses this concern. Because the concern only applies when consideration is given in connection with withdrawal of an objection, however, the amendment requires approval under Rule 23(e)(5)(B)(i) only when consideration is involved. Although such payment is usually made to objectors or their counsel, the rule also requires court approval if a payment in connection with forgoing or withdrawing an objection or appeal is instead to another recipient. The term "consideration" should be broadly interpreted, particularly when the withdrawal includes some arrangements beneficial to objector counsel. If the consideration involves a payment to counsel for an objector, the proper procedure is by motion under Rule 23(h) for an award of fees.

Rule 23(e)(5)(B)(ii) applies to consideration in connection with forgoing, dismissing, or abandoning an appeal from a judgment approving the proposal. Because an appeal by a class-action objector may produce much longer delay than an objection before the district court, it is important to extend the court-approval requirement to apply in the appellate context. The district court is best positioned to determine whether to approve such arrangements; hence, the rule requires that the motion seeking approval be made to the district court.

Until the appeal is docketed by the circuit clerk, the district court may dismiss the appeal on stipulation of the parties or on the appellant's motion. See Fed. R. App. P. 42(a). Thereafter, the court of appeals has authority to decide whether to dismiss the appeal. This rule's requirement of district court approval of any consideration in connection with such dismissal by the court of appeals has no effect on the authority of the court of appeals to decide whether to dismiss the appeal. It is, instead, a requirement that applies only to providing consideration in connection with forgoing, dismissing, or abandoning an appeal.

**Subdivision (e)(5)(C).** Because the court of appeals has jurisdiction over an objector's appeal from the time that it is docketed in the court of appeals, the procedure of Rule 62.1 applies. That procedure does not apply after the court of appeals' mandate returns the case to the district court.

**Subdivision (f).** As amended, Rule 23(e)(1) provides that the court must direct notice to the class regarding a proposed class-action settlement only after determining that the prospect of eventual class certification justifies giving notice. But this decision does not grant or deny class certification, and review under Rule 23(f) would be premature. This amendment makes it clear that an appeal under this rule is not permitted until the district court decides whether to certify the class.

The rule is also amended to extend the time to file a petition for review of a class-action certification order to 45 days whenever a party is the United States, one of its agencies, or a United States officer or employee sued for an act or omission occurring in connection with duties performed on the United States' behalf. In such a case, the extension applies to a petition for permission to appeal by any party. The extension recognizes—as under Rules 4(i) and 12(a) and Appellate Rules 4(a)(1)(B) and 40(a)(1)—that the United States has a special need for additional time in regard to these matters. It applies whether the officer or employee is sued in an official

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

capacity or an individual capacity. An action against a former officer or employee of the United States is covered by this provision in the same way as an action against a present officer or employee. Termination of the relationship between the individual defendant and the United States does not reduce the need for additional time.

## Gap Report

At several points, the rule language was revised to shorten it or to shift to active voice. In Rule 23(c)(2)(B), the amendment proposal was revised to state that individual notice in Rule 23(b)(3) class actions be sent by "one or more of the following" before inviting use of United States mail, electronic means, or other appropriate means. In Rule 23(e)(2), the phrase "under Rule 23(c)(3)," originally proposed to be added, was removed from the proposed amendment in light of concerns that it might prove misleading in practice. The language of Rule 23(e)(2)(C)(ii) was adjusted to better parallel that of the following subsections. Rule 23(e)(5)(B) was modified to require court approval of any payments or other consideration provided in connection with forgoing, withdrawing or abandoning an objection to a class-action settlement or an appeal from rejection of such an objection. The Committee Note was revised to take account of these modifications in the rule language, to respond to some concerns raised during the public comment period, and to shorten the Note.

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                 Page 38

```
                    SUMMARY OF COMMENTS
                      Rule 23 Package
                        2016-17

Commentary on the following issues is presented:

Overall assessment
Rule 23(c)
Rule 23(e)(1) -- "frontloading"
Rule 23(e)(1) -- grounds for decision to give notice
Rule 23(e)(2) -- standards for approval
Rule 23(e)(5)(A) -- objector disclosure and specificity
Rule 23(e)(5)(B) and (C) -- court approval of payment to
    objectors or objector counsel
Rule 23(f) -- forbidding appeal from notice of settlement
    proposal
Rule 23(f) -- additional time for appeal in government cases
Ascertainability
Pick off
Other issues raised
```

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                                      Page 39

Overall assessment

### Washington D.C. hearing

Jeffrey Holmstrand (DRI) (with written testimony): The amendment package is, generally speaking, addressing areas of concern.

Mark Chalos (Tenn. Trial Lawyers Ass'n): Overall, the organization supports the proposed amendments. The "road show" was particularly helpful to the bar in developing an appreciation of these issues. Deferring consideration of ascertainability and pick-off is sensible.

John Beisner (Skadden Arps): The proposed amendments are "directionally correct." They find the right spot as a general matter. But some clarification or reorientation in the Committee Note would be desirable. He will submit written comments.

Stuart Rossman (Nat'l Consumer Law Ctr. & Nat. Ass'n of Consumer Advocates) (with written testimony): His organization has put out three editions of Standards and Guidelines for Litigation and Settling Consumer Class Actions. The third edition was published at 299 F.R.D. 160 (2014). It may be a resource for the Committee's work.

Brent Johnson (Committee to Support Antitrust Laws) (with written testimony): COSAL generally supports the majority of the proposed amendments. They either codify or clarify existing case law.

### Phoenix hearing

Jocelyn Larkin (The Impact Fund) (testimony and CV-2016-0004-0063): The Subcommittee's outreach efforts were very valuable, and enabled many to be involved in the process. We are extremely enthusiastic about this package of proposals.

Annika Martin: The Committee's "listening tour" provided a great opportunity to be heard. We are enthusiastic about these efforts.

Paul Bland (Public Justice): I echo the other comments about the process used. The outreach was desirable, and there is consensus in favor of most of the provisions in the amendment package.

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                                      Page 40

Written comments

Laurence Pulgram and 37 other members of the Council, the
Federal Practice Task Force, and other leaders of the ABA Section
of Litigation (CV-2016-0004-0057): Since the 2003 amendments to
Rule 23 went into effect, we have found that the rule generally
has worked well. Nonetheless, the changes proposed in this
package will improve class action practice even though they are
modest.

Public Citizen Litigation Group (CV-2016-0004-081): We are
pleased that the amendments proposed take a moderate, consensus-
based approach and generally avoid changes that would disrupt
existing practices. In particular, we are pleased that the
proposed approach to objectors is similar to the one we proposed
in 2015.

Prof. Suzette Malveaux (CV-2016-0004-082): Prof. Malveaux
attaches a copy of a draft of an article entitled "The Modern
Class Action Rule: Its Civil Rights Roots and Relevance Today."
The draft article is mainly about Rule 23(b)(2), but makes some
mention of pick-off.

Tennessee Trial Lawyers Ass'n (CV-2016-0004-083): The
Committee's hearing, along with the meetings the Committee had
with various stakeholders nationwide, fostered a shared sense of
purpose and a feeling of participation that have led to a strong
process. The decision to abstain from proposing changes that are
yet unripe for implementation is particularly appreciated.
Ascertainability and pick-off fit in that category.

Public Justice (CV-2016-0004-089): "Public Justice believes
that class actions are one of the most powerful tools for victims
of corporate and governmental misconduct to seek and achieve
justice." It strongly supports the vast majority of the proposed
amendments, subject to a few qualifications. We believe that the
proposals are useful and appropriate and should be adopted
subject to the changes we suggest.

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                                     Page 41

Rule 23(c)

                        Washington D.C. hearing

     John Beisner (Skadden Arps):  The Committee Note on p. 219
should be strengthened about the settling parties advising the
court about the planned method of giving notice.  The last
sentence in the full paragraph on p. 219 should be strengthened
to make it mandatory that the parties provide the court with
their plan.  For one thing, that will ensure that there is a
plan.  It has happened in the past that the parties do not start
thinking about that until later.  It should be up front.
Regarding the form of notice, the Committee Note has it about
right.  The problem is to get the parties and the court to focus
on the particulars of the case and what will likely work with the
class.  This is somewhat like advertizing.  The parties should
dig into the issue up front, and the court should attend to it
then also.  For the court to do this analysis, it will often be
necessary to submit an expert report.  Marketing experts can look
at the demographic makeup of the class and explain how to give
notice and why a given method is calculated or likely to work.
It is important to go beyond generalities.

     Alan Morrison (George Washington Univ. Law School) (with
written testimony CV-2026-0004-0042):  The words "under Rule
23(b)(3)" should be deleted from line 12 on p. 211 of the draft.
The "best notice practicable" should be sent to class members in
(b)(1) and (b)(2) cases as well.

     Stuart Rossman (Nat'l Consumer Law Ctr. & Nat. Ass'n of
Consumer Advocates) (with written testimony):  Class actions are
critical to effective relief for the clients represented by his
groups.  For many of these people -- those who are elderly or
poor, for example -- the Internet access that may be commonplace
for middle class Americans does not exist.  The Census Bureau,
the FTC, and other governmental agencies recognize that relying
solely on electronic means to reach such people is not effective.
So it is critical that the court focus closely on the manner in
which notice will be given to ensure that it is suitable to the
class sought to be represented.  For consumer class actions,
often a summary notice that is relatively brief is better than a
detailed and full description.  And it can show how to get more
information.  The disappointing reality is that the average
American reads at about the fifth grade level.  Beyond that, we
are a multilingual society, so often giving notice in more than
one language is critical.

     Brian Wolfman (Georgetown Law School) (testimony and
prepared statement):  The requirement of individualized notice in
(b)(3) cases should be relaxed in cases involving small value
claims.  For example, if the claims are for less than $100

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

individual notice should be unnecessary, or handled on a
randomized rather than universal basis. I proposed this in a
2006 article in the NYU Law Review. But don't weaken the means
of individual (or other) notice. Banner ads simply do not
provide individualized notice. Indeed, it is hard to imagine a
case in which electronic notice is best. Instead, it would be
best to recognize that individualized notice is unwarranted in
small-claim cases. Todd Hilsee is right that electronic means
are less effective. But with claims of $1000, in one case he
handled, the payout went to 94% of class members. So the current
rule can be made to work. The amendment is not needed, and could
be read in a harmful way. The current rule does not say U.S.
mail, and there is no empirical basis for saying that banner ads
work. Perhaps some form of electronic notice would supplement
other methods. For example, consider a product uniquely tied to
the use of email, or the members of a professional organization
that ordinarily communicates by email. Judges should not be
given too much discretion in approving the means of notice.

    Hassan Zavareei (testimony and prepared statement): I
disagree with Wolfman. I have experienced the benefits of
electronic notice. Most organizations communicate with their
members this way. This change to the rule does no harm and some
good.

Phoenix hearing

    Jennie Lee Anderson: We support the allowance of mixed
notice. This amendment is practical and provides needed
flexibility. The right way to design a notice program is to
focus on the demographics of the class. For example, if it's
made up of young professionals the means for giving notice might
be quite different than for elderly low income class members. It
is true that U.S. mail may often be the best way, but not always.
Social media can be very useful. Even banner ads may be a
valuable way to augment notice in some cases. True, banner ads
would not be sufficient alone. One way to support effective
notice programs might be to link the attorney fee award to the
claims rate. Particularly if there were a reversion provision,
that could be important to provide an incentive. Technology can
sometimes help in achieving that result. But no matter how good
the program is, it won't reach 100% distribution; there will
always be some checks that are not negotiated.

    Jocelyn Larkin (The Impact Fund) (testimony & CV-2016-0004-
0063): We favor the expansion of means for notice. The
selection of a notice method must take account of demographics.
We particularly endorse the language in the draft Note
recognizing that many still do not have access to a computer or
the Internet. We think that the Note should highlight the need
to ensure that electronic class notices are digitally accessible.

Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                    Page 43

And important work should be done on  readability of notices.
The Committee Note should be strengthened to stress readability,
and stress it in terms that take account of the educational
attainment of the class members.  For example, graphics can be
very helpful.  But there is no reason to favor paper over
electronic methods of giving notice.  We think that the Note
should be strengthened in four ways:  (1) the judge should be
presented with the various forms of notice formatted exactly as
the notice will appear either in print or electronically; (2)
counsel should be required to make an affirmative showing that
the notice is in fact readable to the vast majority of class
members; (3) the Note should encourage the use of good design and
infographics and, for electronic methods, hyperlinks to
definitions or other clarifying materia; (4) electronic notice
should be carefully vetted to ensure compliance with the
obligation to ensure digital accessibility for people with
disabilities.  We also think that the FJC should update its Model
Class Action notices.  They should be build from the bottom up
using suggestions and feedback from ordinary people rather than
"dumbing down" dense legalese.

     Annika Martin:  The amendment takes the right approach.
There is a need for flexibility, and the court should focus on
what is right for the particular case.  But the draft does not go
far enough.  It is preoccupied with the means of notice.  That is
important, but more effort should be made to address the content
of the notice.  Regarding the form of notice, it may often be
that banner ads are unreliable, but getting into the weeds at
this level of detail in a rule would not be justified.  It is
better to draft broadly, emphasizing the goal -- best practicable
notice -- and avoiding embracing or denouncing specific means.

     Todd Hilsee:  He is a class action notice expert.  He has
already submitted material to the Committee, and will provide
more material later.  The basic point, however, is that there is
no need for this proposed amendment, and that it will send the
wrong signal.  There should continue to be a preference for
notice by U.S. mail.  Although no means of communicating is
certain to get the attention of all recipients, mail is most
likely.  78% of mail is received or scanned.  Electronic
communications are often screened out by a spam filter or similar
device.  Yet there is a race to the bottom in class action
notice; unscrupulous plaintiff counsel will seek the cheapest
provider who can supply an affidavit claiming to be effective,
and defendants will embrace this because it will save them money
by minimizing claims.  "This rule will foster reverse auctions."
The Remington case is an example.  Deadly consequences could flow
from failure to solve the problem with these rifles, but only a
small number of class members responded to a notice program that
offered significant relief and provided a basis for cutting off
their rights to sue in the event that serious injury or death

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

resulted from malfunction of the product. In effect, this
proposal will be read as urging that courts forgo regular mail in
giving notice. There should be a categorical preference for
mailed notice.

Paul Bland (Public Justice): We challenged the secrecy in
the Remington case, but the problems there do not show that the
proposal here is unwise. We support the proposed amendment.
There will be settings where electronic notice is best. One
example is a case involving a defective app on iPhones. Another
involved a cable company; using electronic means got more
responses than would have been true with U.S. mail.
Communications methods are changing at great speed. Don't
presume we can guess now what will be prevalent means of
communication in five or ten years. The risk of a reverse
auction is overstated. Reversion provisions are rare; judges are
alert to their risks. And plaintiff counsel know that judges are
also alert to making sure that the notice methods will really
work. Cy pres provisions can sometimes mitigate. But the
reality is that the plaintiff lawyers are trying to get the money
to the class members, and the judges are scrutinizing their
efforts.

              Dallas/Fort Worth (telephonic) hearing

Ariana Tadler (Milberg): I support the proposed amendment.
It helpfully clarifies that notice can be provided by various and
multiple means. In today's world, mail and print are not the go-
to media for communicating. In class actions, the pertinent
question is what method will provide the best notice practicable.
There is a "dizzying array" of options for doing so in this
digital age. One thing is abundantly clear -- one size does not
fit all for this purpose. Some assert that this proposed
amendment somehow prefers electronic notice, but it really does
not do that. The Committee was right to take something of a
"minimalist" approach in its Note. Trying to foresee future
developments in electronic communications and offer a hierarchy
of what is preferred would be an impossible task. Other comments
assume that the amendment would somehow endorse using "banner
ads" as the only means of giving notice. But that attitude fails
to take account of modern realities. Unlike U.S. mail,
electronic means can facilitate multiple efforts at giving
notice, and also provide specific feedback on how successful the
notice effort has been. Any effective notice effort must now
begin by considering the best ways to reach the target audience.
My family illustrates the dramatic ways in which communications
habits have changed and are changing. My grandmother, born in
1916, has never used a computer. My mother, born in 1943, got
her first computer in 2008, but uses no social media. My
husband, born in 1966, is mainly a Facebook user, and "does not
open postal mail." My two sons, though they are only three years

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

apart in age, have dramatically different habits. The older one, born in 1997, relies primarily on Facebook and social media. He has "tens of thousands of unread emails," and checks his postal mail perhaps once a month. The younger son, born in 2000, has a Facebook account that is dormant, and presently relies mainly on Instagram and Snapchat, relying also on news feeds through these sources. He rarely and reluctantly uses email, and will use texts for his family. Therefore, for both the court and counsel, the task of designing an effective notice program must be tailored to the case. And multiple means may be the best choice. She therefore endorses the submission of AAJ on this topic. She also thinks that adding "one or more of the following" to the last sentence in the preliminary draft could be an improvement. She was thinking of recommending that the draft be revised to say "and/or" between U.S. mail and electronic means, but recognizes that trying to do so might be inconsistent with the style of the rules.

     Steven Weisbrot (Angeion Group) (testimony and CV-2016-0004-0062): I am a partner and Executive Vice President of Notice & Strategy at Angeion, which is a national class action notice and claims administration company. I support the proposed amendment to the notice provision, for it is rooted in common sense and progressive logic that mirrors the current media landscape, and remains flexible enough to accommodate the changes in technology that are currently happening and will inevitably continue to occur for years into the future. Each settlement has its own unique media fingerprint, which is what should guide the preferred dissemination of notice, including individual notice. This individual tailoring of notice programs is critical, given the breakneck speed with which advertising is changing. A "one size fits all" solution that ignores modern communication realities will not work; it is essential to maintain the level of flexibility that the proposed amendment provides. But it is also critical to recognize that the amendment will be counter-productive without more rigorous judicial analysis of any proposed notice plan during the preliminary approval process. We think that no one factor (even "reach") should be given primacy in that assessment. I recently met with representatives of the FJC and suggested a comprehensive approach to fashioning a robust class notice program at the preliminary approval stage of class litigation. the media environment has changed vastly since *Mullane* was decided in 1950, and in class actions it is often true that defendants are in regular contact with class members via email. Indeed, "U.S. mail is becoming less customary in our society." For example, in a recent Telephone Consumer Protection Act settlement, we found a significantly higher claim filing rate amongst those noticed by email compared to those noticed by traditional U.S. mail. For those noticed by email, it was relatively simple to link to the claims filing webpage and finalize a claim, as compared with the extra steps required to

Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules

complete a claim via the U.S. mail notice program.  But the key point is that notice programs should be evaluated one by one, using the following criteria:  (1) how does the defendant typically communicate with class members; (2) what are the class member demographics; (3) what are the class members' psychographics; (4) what is the amount of the overall settlement in relation to the cost of the notice; and (5) what are the age and media habits of class members?  In view of these current realities, adding the phrase "one or more of the following" to the rule-amendment proposal would be a good change.  It reflects the value of repeated efforts to give notice, sometimes by multiple methods.

Written Comments

Todd Hilsee (16-CV-E & supplemented by CV-2016-0004-080):
The Committee Note on p. 219 is wrong in stating that electronic means of giving notice can be "more reliable"  There should be a presumption in favor of first class mail.  The current rule allows all forms of individual notice, and does not need to be changed.  The change wrongly equates electronic forms of notice with first class mail.  In particular, banner ads are not effective.  Various industry sources and governmental entities (e.g., the FTC) show that the rate of opening email ranges from a low of 7% to a high of less than 25%.  The FTC study (attached) shows that physical mailings outstrip email, and far outstrip other forms of notice such as internet banners.  According to a booklet published by another claims administrator (attached): "Email notices tend to generate a lower claims rate than direct-mail notice."  According to Google, only 44% of banners typically included in "impression" statistics are actually viewable, and for more than half of banner impressions half of the banner is not on the screen for a human to see for more than one second. (Google report attached.)  New revelations show that millions of internet banner "impressions" purchased for very low prices are seen not by human beings but by robots or are outright fakes.  A Bloomberg report states:

    The most startling finding:  Only 20 percent of the campaign's "ad impressions" -- ads that appear on a computer or smartphone screen -- were even seen by actual people. . . . As an advertiser we were paying for eyeballs and thought that we were buying views.  But in the digital world, you're just paying for the ad to be served, and there's no guarantee who will see it, or whether a human will see it at all. . . . Increasingly, digital ad viewers aren't human.

Some claims administrators have sworn to courts that extremely low claims rates are not normal.  Hilsee concludes:

    Numerous notice professionals tell me they have assessed

108

false promises that unscrupulous and untrained vendors have
been pitching. But credible notice professionals may speak
out only at their own peril. They have been told outright
that major firms will not work with them if they publicly
oppose notice plans. They face pressure to dial-back
effective notice proposals to compete with falsely-effective
inexpensive from affiants who are untrained in mass
communications. Thus, despite the rule requiring "best
practicable" notice, courts are too often presented with the
least notice a vendor is willing to sign off on if awarded
the contract to disseminate notice and administer the case.
We should not compound the problems by making this
unnecessary and counter-productive rule change.

   Laurence Pulgram and 37 other members of the Council, the
Federal Practice Task Force, and other leaders of the ABA Section
of Litigation (CV-2016-0004-0057): We appreciate and applaud the
efforts to update notice practices and to recognize that the
ability to give individual notice by mail may not always be
available, and that, even when it is, notice to certain class
members may be better effectuated by email or other means. We
also believe that the Note does an excellent job recognizing that
different methods of individual notice may be better able to
reach different audiences, and that the specific targeted
audience must be considered in each case. We think, however,
that a modest change could beneficially be made to Rule
23(c)(2)(B) as follows:

   The notice may be by one or more of United States mail,
   electronic means, or other appropriate means . . .

This change would communicate more clearly that multiple methods
of notice may be appropriate to better ensure reaching different
subsets of the class. Using multiple methods of notice is
commonly done today, and would enhance the likelihood of reaching
the same constituents.

   Katherine Kinsela (CV-2016-0004-0060): Based on my 24 years
experience with class notice, I oppose the proposed changes
regarding class notice. The changes are harmful because they (1)
remove any clear standard for notice regardless of class injury;
(2) equate all forms of media with individual notice; (3)
evidence no understanding of the effectiveness of different forms
of class communication; and (4) fail to address the most
significant issue -- should all class actions be held to the same
notice standard? Moreover, the changes are unnecessary, since
courts have for years approved notice in hundreds of cases using
media other than U.S. mail. The language of the proposal is
vague and sweeps too broadly; "electronic means" can conflate
email with electronic display advertising. Making this change
"will likely open the floodgates to any and all notice methods."

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

There cannot be individual notice through mass media. Due to the amendment, the "best notice practicable" may evolve into "cheapest notice possible," and usher in banner ads rather than individual mailed notice even in cases involving substantial recoveries and easy methods of identifying class members. Already, settling parties often demand the cheapest notice possible, and they sometimes enshrine an arbitrary notice budget in the settlement agreement. So-called "experts" with little or no media training routinely submit affidavits stating that a notice program meets due process standards even though a review by trained and experienced experts indicates that it does not. There has been a sea change in what is considered satisfactory reach for a notice program. Where formerly 85% or 90% reach was an ordinary goal, more recently the goal has slipped to 70% and there is a "race to the bottom." Email can work as a notice method if the email list is based on a transactional relationship between the sender and the recipient, but that is not true of all email lists. Even with such a list, there is no reliable way to update the list and deliverability rates are low compared to U.S. mail. Moreover, the average American receives 88 emails a day but only about a dozen pieces of U.S. mail per week. The best solution would be to calibrate notice efforts with class injury. "A class action alleging false advertising regarding the organic content of a food product that settles for $5 million is wholly different from cases alleging serious money damages." In cases involving serious money damages, the Note should make clear that in most cases with mailing data the preferred notice should be by U.S. mail. The new proposed sentence to Rule 23(c)(2)(B) should be replaced with the following:

> When class members are partially or wholly unidentifiable, or the individual or aggregate class injuries are not significant, notice may include media or other appropriate means.

Moreover, the Note should specify that notice experts should be used in most cases. Although the Note now refers also to "professional claims administrators," that is not the same thing as a class notice expert. Judges should require that testifying notice experts possess the following traits: (1) recognition by courts of expert status; (2) credentials that meet the standards of *Daubert* and *Kumho*; (3) training or in-depth experience in media planning; (4) thorough knowledge of Rule 23; (4) the ability to translate complicated legal issues into accurate plain language; (5) the ability to create effective print, Internet, radio, and television notices consistent with best advertising practices; (6) an understanding of direct notice deliverability issues; and (7) the ability to combine direct notice reach, when known, with media reach to ascertain overall unduplicated reach to class members. These requirements should be included in written guidelines and disseminated by the FJC for judicial

110

education purposes.  Otherwise the "watering down" of notice
efforts will continue to occur.  "In the 24 years I have designed
and implemented notice programs, I have never heard a comment or
seen a formal objection that a case had 'too much notice,' or
that the notice was 'too expensive.'  There is no ground swell of
consumers clamoring for less access to their legal rights to keep
costs down."

     Pennsylvania Bar Association (CV-2016-0004-0064):  The
amendment is designed to adopt a more pragmatic approach to class
notice in light of modern technological advances.  By using the
broad phrase "electronic means," the amendment would give the
court discretion to use the best practicable notice in each case.
There may, however, be a concern that recipients would be
unwilling to open or click on a message from an unknown sender.
In light of this concern, the Note should be revised to say that
all emailed notices should provide an option for a class member
who is unsure whether to click the link to go instead to the
assigned court's webpage, or to call the district court clerk
directly, for more information.  Using class counsel's website or
phone number seems more problematical because a government
website would seem more secure.

     American Association for Justice (CV-2016-0004-0066):  AAJ
supports this proposed amendment.  It would continue the
requirement that the court direct the best notice that is
practicable under the circumstances, but remind courts that
first-class mail is not the only option.  The Committee properly
recognizes that the vast technological changes in the past three
decades mean that U.S. mail is not the best choice in all cases.
AAJ recommends that the Note be revised to suggest that "mixed
notice" or "a mix of different types of notice" be suggested.  In
some cases the use of multiple types of notice would be the most
effective way of notifying class members.  Nowadays a number of
cases involve contact information that would make mixed notice
not only feasible but also the most cost-effective method of
notice.  For instance, many companies collect email addresses as
well as mailing addresses for their customers.  AAJ also
recommends acknowledging that electronic notice can take forms
other than email.  The statement that "email is the most
promising" may not always be correct.  Younger consumers, in
particular, may interact with the marketplace through other
electronic means.  Referring to "email" implies a limited ability
to keep up with the evolution of technology.  There is no mention
of other electronic platforms, such as Facebook Twitter, and
Instagram, or other smart phone applications or notification
options.  For example, consider a case against a ride-share
company such as Uber in which notifying class members using the
application might be the best choice.

Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                        Page 50

Joe Juenger & Donna-lyn Braun (Signal Interactive Media) (CV-2016-0004-078): We believe that amending the rule is not necessary. We advocate the use of digital media where suitable, but believe the current language of the rule adequately authorizes such efforts. Courts are already approving settlements that rely on electronic notice. Changing the rule might be urged to make electronic means the preferred or predominant means even though not justified. Existing Rule 23(c) is adequate and therefore should not be amended. Instead, the Note should be revised to say that electronic means are allowable where required to achieve the most effective notice.

Public Citizen Litigation Group (CV-2016-0004-081): In light of the concerns raised by Todd Hilsee and Katherine Kinsella, it seems prudent to proceed cautiously. We suggest that the Committee refrain from any suggestion that courts dispense with mailed notice in cases where it is practicable. At a minimum, the Note should emphasize that courts should generally continue to use mailed notice when it is feasible and that other means of notice should supplement rather than displace it. Whether there should be any change to the rule is a difficult question. The best practices in this area surely deserve further study. If the amendment goes forward, we urge that the Note say that the objective is not to encourage courts to rush to adopt electronic or other alternatives means of notice that are not demonstrated to be superior to mail.

Richard Simmons (Analytics) (CV-2016-0004-084): I have over 26 years of experience in designing and implementing class notification and claims programs. I can report that the use of digital notice, where appropriate, is common practice. Digital notice provides fundamentally different opportunities and challenges than traditional mailed notices. Existing practices, rules, and guidance that have been used to evaluate whether or not a notice program provides the "best practicable" notice are still necessary, but they are no longer sufficient to address the complexities of digital media. To address evolving methods of providing notice, the rules and Note should be modified to recommend that courts take account not only of the likelihood that members of the class will receive a message but also the extent to which they are likely to act in response to messages delivered by different means. The 2016 FTC orders to class action claims administrators about forms of notice is, to my knowledge, the first independent analysis of the effectiveness of alternative forms of class notice. When designing notice programs, a key question beyond initial "reach" is that the program actually prompt responses. It is possible to design a program that has great reach but actually minimizes the likelihood of claims being submitted. Digital notice is fundamentally different from traditional mailed notice because it can be targeted, calibrated, limited or expanded and because it

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

can provide data regarding how recipients interact with the notice materials. Unfortunately, some in this business do not fully exploit the information-gathering characteristics of digital notice by gathering and reporting data on how many of the notices were actually opened, how many links were clicked, etc. Another strategy is to exploit those digital capacities to design a notice program that is actually more effective. Unfortunately, market forces in class action practice often seem to favor the lowest cost provider, while overlooking the critical questions of real effectiveness of the notice. Active management of a notice campaign, for example, often generates additional costs. In light of these realities, my view is that the amendments and Note are necessary, but no longer sufficient to deal with the advent of digital notice campaigns.

    Public Justice (CV-2016-0004-089): We endorse the proposed amendment because it wisely permits courts to adopt the best notice practices available for different types of cases. Methods of communication are evolving, and are very likely to continue to do so. In many instances, first class mail will remain the best practicable form of notice. But in a case in which the defendant communicates with class members by electronic means, as in privacy litigation relating to some apps or electronic product or service, first class mail may not be the best approach. We therefore applaud the Note at p. 219, which says that "courts giving notice under this rule should consider current technology, including class members' likely access to such technology, when selecting a method of giving notice." We believe the proposed amendment will help judges do their job.

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Rule 23(e)(1)(A) -- "frontloading"

### Washington D.C. hearing

Alan Morrison (George Washington Univ. Law School) (testimony & CV-2016-0004-0040): This provision will aid the court and aid unnamed class members. It is very important that the rule require full details to be submitted well in advance of the deadline for objecting or opting out. In the NFL concussion litigation, the proponents of the settlement filed about 1,000 pages of material after that deadline for action by class members (e.g., opting out or objecting) had passed. And the specifics about the attorney fee application should be included. That should be submitted at least 21 days before objections and opting out must be done. But it need not be filed with the settlement notice. The filing need not be in detail comparable to the final fee request, but at a minimum it should state the maximum amount of the proposed fee award. In addition, it is important to bring in others at the point the court is considering approving the giving of notice to get additional views on the quality of the settlement proposal. Later the parties' and court's views may harden if a massive notice effort has already occurred before objections are heard. At least in some cases it is not difficult to identify additional people to notify. If there is an MDL proceeding on the same general set of issues, that provides a ready list of those who could be notified rather easily -- the attorneys for the litigants involved in the MDL. Some potential problems can be eased at this point. For example, simplifying the claim form may produce substantial benefits but not be easy to do later.

### Phoenix hearing

Jocelyn Larkin (The Impact Fund) (testimony & CV-2016-0004-0063): One concern might be about disclosure of the details of side agreements, particularly "blow up" provisions that permit the settling defendant to withdraw from the settlement if more than a certain number of class members have opted out. If that is not intended by the statement that the parties must submit all the things they intend to rely upon when seeking approval under Rule 23(e)(2), it should be clarified that "identifying" these agreements under Rule 23(e)(3) does not require such disclosures. One way to do that would be to revise the sentence in the Note on p. 221 of the pamphlet to read: "That would give the court a full picture and make non-confidential ~~this~~ information available to the members of the class." [It might be noted that the Note accompanying the 2003 amendment to Rule 23(e) said the following with regard to the requirement that other agreements be identified: "A direction to disclose a summary or copy of an agreement may raise concerns of confidentiality. Some agreements may include information that merits protection against general disclosure."]

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                                          Page 53

Written comments

   Public Justice (CV-2016-0004-089):  We believe that the
frontloading requirement is a positive change that would assist
both judges and class members.  We particularly applaud the Note
at 221: "The decision to give notice . . . should be based on a
solid record supporting the conclusion that the proposed
settlement will likely earn final approval after notice and an
opportunity to object."

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                    Page 54

Rule 23(e)(1)(B) -- grounds for decision to give notice

Washington D.C. hearing

John Beisner (Skadden Arps): The Committee Note on p. 222
should be strengthened. At present it says that if the proposal
to certify for purposes of settlement is not approved, "the
parties' earlier submissions in regard to the proposed
certification should not be considered in deciding on
certification." The possibility of such use of submissions
supporting the settlement will make defendants very nervous. A
way should be found to avoid this deterrent to settlement.

Alan Morrison (George Washington Univ. Law School)
(testimony & CV-2016-0004-0040): Even though the draft wisely
avoids the term "preliminary approval" because that makes the
task of objectors too difficult, it should be revised because the
standards for approving notice sound too much like a decision
that the settlement will be approved and the class certified.
His preferred locution would be something like "a sufficient
possibility the proposal will warrant approval." In addition,
the inclusion of "under Rule 23(c)(3)" on p. 213 at line 45 is
unnecessary and possibly confusing. Readers may think that the
phrase applies only to classes under (b)(3), which is not
correct. In addition, subparagraphs (i) and (ii) should be
reversed if they are retained. They are not necessary, but the
point of reversing them is to recognize that class certification
logically precedes settlement approval.

Phoenix hearing

James Weatherholtz: He is concerned about Note language
about the standard for directing notice to the class and for
approving a proposed settlement after notice to the class. One
concern focuses on p. 222 of the published draft, where the Note
says "The decision to certify the class for purposes of
settlement cannot be made until the hearing on final approval of
the proposed settlement." That seems too strong. Does that mean
the court may not take any action based on the expectation that
the settlement will be approved? How about enjoining collateral
litigation by class members? The decision to send notice should
be recognized as a final judgment for some purposes (such as
supporting an injunction against collateral litigation by class
members). But that could be seen as inconsistent with the
proposed change to Rule 23(f) regarding immediate review of
decisions under Rule 23(e)(1), and might foster efforts to obtain
immediate review under Rule 23(f). Another concern is that,
later in the Note on p. 222 it is said that the court should
concern itself with the claims rate. That should not be made
dispositive, for people may have many reasons for declining to
submit claims. Some may simply oppose the idea of class actions.

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                    Page 55

That should not prevent approval of a settlement. Finally, the
sentence citing § 3.07 of the ALI Principles on p. 223 should be
removed because it seems tacitly to endorse the cy pres doctrine.
The prior sentence of the draft ("And because some funds are
frequently left unclaimed, it is often important for the
settlement agreement to address the use of those funds.") is not
problematic. But the parties should be free simply agree to
disposition of those funds; the court should not be involved in
reviewing or rejecting that agreement.

### Dallas/Fort Worth (telephonic) hearing

Michael Pennington (DRI) (testimony and written submission):
The Committee Note, p. 222, contains the following statement "The
decision to certify the class for purposes of settlement cannot
be made until the hearing on final approval of the proposed
settlement." This "sweeping prohibition" is too broad. It might
interfere with necessary actions like enjoining suit by class
members who have not opted out. Moreover, it could be read to
mean that class counsel is not really representing the class
until the final approval of the settlement and certification for
that purpose. It might also have implications for judicial
restrictions on communications between class counsel and class
members during the time the proposed settlement is under
consideration. It is difficult to determine why certification
for settlement purposes before the final settlement approval
hearing can never be appropriate. DRI recommends softening the
statement to take account of the possibility of settlement-only
certification on proper evidence before the final hearing.

Timothy Pratt (Boston Scientific): Unlike all the other
witnesses, he is a client. Boston Scientific is a party to a
large amount and range of litigation. Pratt is Executive Vice
President. Pratt is also involved with Lawyers for Civil Justice
and the Federation of Corporate Counsel. He wishes to rebut the
narrative put forward by others -- that defendants always want to
draw things out. To the contrary, his experience is that he
wants to get to the merits and get the matter resolved so his
company can move on. We commend the changes in terms of general
direction regarding settlement processing and review. But there
is one change that should be made. In the Note, at p. 223, there
is a reference to the ALI Principles of Aggregate Litigation
§ 3.07. That appears to endorse, or perhaps to create, a right
to rely on cy pres in class actions in federal court. The
Committee considered whether to adopt a rule provision addressing
cy pres, and wisely decided to back away from that idea. But
this comment in the Note "back into" the same problem. This
should be left to party agreement, and not burdened with the
restrictions that the ALI found desirable. Beyond that, the Note
says that reversion of funds to the defendant should not be
allowed, and mentions deterrence as a reason for that. That's

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                Page 56

not proper, and those statements should be removed or modified.

Written comments

Laurence Pulgram and 37 other members of the Council, the
Federal Practice Task Force, and other leaders of the ABA Section
of Litigation (CV-2016-0004-0057):  Our concerns relate to two
issues:

(1)  Disapproval of the term "preliminary approval."  We are
troubled by statements in the Note seemingly disavowing the
use of the term "preliminary approval."  The amendment
instead calls the decision under Rule 23(e)(1) a "decision
to give notice."  But "preliminary approval" is the existing
term and practice for the juncture at which the court first
reviews a proposal for settlement.  The term "preliminary
approval" means simply that the court has determined that
the proposed settlement is deserving of the expense and
effort of class notice.  Most forms of order submitted to
the court are called "Preliminary Approval Orders."  Class
action practitioners understand that when the court orders
notice it is not substantively approving either class
certification (assuming that has not already happened) or
the terms of the settlement.  We recommend that the title
reflect existing practice by using the title "Preliminary
Approval -- the Decision to Give Notice" or simply
"Preliminary Approval."  As an alternative, perhaps it could
instead be labelled "Preliminary Review."  If that were
done, Rule 23(e)(2) could be renamed "Final Approval of the
Proposal."  We understand that the Committee is concerned
about making it appear that the decision to give notice
means that approval of the proposal is inevitable.  But the
explicit findings the amendment required before notice can
be authorized may increase, rather than decrease, the risk
of settled expectations that the court will approve the
settlement.  Requiring that the judge specifically *find* that
(1) the court will "likely" approve the proposal, and (2)
the court will "likely" certify the class for purposes of
settlement may make approval seem even more likely than
under the rule's current language.  The proposed phrasing
could deter objectors from objecting because they would
assume under that standard that certification and settlement
approval is a "done deal."  Compare the experience we have
had with litigating before a judge who has made findings
about likelihood of success in regard to a preliminary
injunction -- a very difficult task.  Our proposed solution
would be to make clear that the preliminary findings are of
a "prima facie" nature, either by using that term or using
words to the effect that the court has found preliminarily,
based on the materials submitted, that the class may
ultimately be certified for settlement purposes and that the

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

proposed settlement appears worthy of approval.

(2) Reference to attorney's fees arrangement as part of the
preliminary approval decision.  The draft says that the
court should order notice unless the parties show that it
will likely be able to "approve the proposal under
Rule 23(e)(2)."  That provision, in turn, includes (iii) --
"the terms of any proposed award of attorney's fees,
including timing of payment."  We understand that under
existing law, and in common practice, the decision on
attorney's fees is not made until final approval.  The
separation between the attorney's fees question and the
approval of the settlement on the merits therefore should
make it clear that the preliminary approval does not extend
to the attorney's fees aspect.  One solution would be to
revise proposed 23(e)(1)(B)(i) as follows:

> (i)   approve the proposal under Rule 23(e)(2) except
>       (C)(iii); and

Relabelling this decision "preliminary approval" or
"preliminary review" would assist in making this
distinction.

Pennsylvania Bar Association (CV-2016-0004-0064):  We
support adoption of this provision.  The information involved
would be useful to avoid problems in the case later on.

Gary Mason & Hassan Zavareei (CV-2016-0004-0065):  We
believe that the Note on 23(e)(1) improperly over-emphasizes the
importance of claims rates.  This emphasis is not consistent with
current law to the extent it pulls out the claims rate as the
most important factor in determining fees.  A myriad of other
factors routinely are considered.  Indeed, numerous courts have
held that claims rates are *not* a determinative factor.  We
propose revising the Note as follows:

> The proposed handling of an award of attorney's fees
> under Rule 23(h) is another topic that ordinarily should be
> addressed in the parties' submission to the court.  In some
> cases it may be appropriate to consider ~~will be important to
> relate~~ the amount of an award of attorney's fees to the
> expected benefits to the class, and to take account of the
> likely claims rate.  However, the settlement's fairness may
> also be judged by the opportunity created for class members.
> ~~One method of addressing this issue is to defer some or all
> of the award of attorney's fees until the court is advised
> of the actual claims rate and results.~~ (p. 223)

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                    Page 58

New York City Bar (CV-2016-0005-070): The Committee Note suggests twice that the court review claims rates in assessing settlements. We agree that such review is generally appropriate, but believe the Note should be edited to make it clear that such review is not always appropriate. We agree that is generally a good idea to assess the likely claims rates in class settlements, and to treat that information as a data point in determining whether a settlement delivers meaningful relief. Tying "actual claims experience" to fees incentivizes the parties to implement automatic distribution of settlement proceeds where possible, to implement a robust notice program to reach class members, if automatic distribution is not possible, and to crete a simple, easy-to-understand claim form. But in some cases the claims rate is difficult to determine in part because the number of class members -- the denominator -- is difficult to determine with precision. We recommend modifying the note on p. 223 as follows:

> It may ~~In some cases, it will~~ be important <u>for the court to consider</u> ~~to relate~~ the amount of an award of attorney's fees <u>in relation</u> to the expected benefits to the class<u>,</u> and,<u>when it is feasible and cost-effective to measure the claims rate,</u> to take account of the likely claims rate. One method of addressing this issue is to defer some or all of the award of attorney's fees until the court is advised of the actual claims rate and results.

Similarly, we recommend the following changes to the Note on p. 227:

> Provisions for reporting back to the court about actual claims experience, <u>where it is feasible and cost-effective to,</u> and deferring a portion of the fee award until the claims experience is known, may bear on the fairness of the overall proposed settlement.

Defense Research Institute (CV-2016-0004-072): There are a number of references in the Note to the claims rate. Although some courts do take that into account in determining an appropriate attorney's fee award, we do not think it is an appropriate consideration in evaluating the fairness of the settlement itself. The Note should be revised to make it clear that this factor does not bear on the fairness of the settlement. To be sure, a claims process should be based on the need for information from class members to process claims. It should never be used simply to diminish payouts. But when a court determines that such a process is justified under a given settlement and finds that the notice proposed is satisfactory, the actual response should not have any bearing on the fairness of the settlement. What matters is the relief offered, not how often it is claimed. Class members may decide not to make claims for a variety of reasons. The object of such settlements is not

120

to deter defendants from certain conduct; they have not admitted
any wrongdoing.  A settlement can be fair, reasonable, and
adequate, and class members may nonetheless decide, for some
reason, not to pursue relief.  In addition, on p. 222 the Note
says that the court cannot certify the class for purposes of
settlement until the final hearing.  That sweeping prohibition
could inhibit the court from taking needed actions, such as
enjoining litigation about the same claims by class members.  It
might also weaken efforts to regulate communications with the
class if it meant that class counsel are not yet the lawyers for
the class.  DRI recommends softening that statement.  On p. 223,
the Note also refers to the ALI Principles of Aggregate
Litigation.  That reference introduces a substantive matter that
offers a windfall to a nonlitigant in place of relief for a
litigant.

     Nelson Mullins Riley & Scarborough LLP (CV-2016-0004-073):
The citation to the ALI Principles of Aggregate Litigation on p.
223 of the Note should be removed.  Contrary to the implication
of the draft Note, judicial citation to § 3.07 of that
publication does not evidence a broad approval of cy pres
provisions in class action settlement agreements.  Instead, it
urges a broadening or redefinition of the law, and does not
presume merely to restate the law as it stood at the time of
publication in 2010.  The Note's reference to cy pres is also
unnecessary and premature.  Private agreements regarding the
disbursement of unclaimed funds to non-litigants who have
suffered no harm are not necessary for the approval of proposed
settlement agreements.

     Aaron D. Van Oort (CV-2016-0004-075):  Using the standard
"likely to be able to" approve the settlement and (where needed)
class certification is a sound addition to the rule because it
will help prevent one of the most harmful scenarios in class
action practice -- rejection of settlement only after notice is
sent and class members have submitted claims.  Guarding against
this risk is important, and the rule change is a good step in
that direction.  The factors identified in the proposed rule are
sound, but I am concerned that the rule does not address the
concept of proportionality -- the question of how much review is
enough in a given case.  The Note likewise does not address this
concept.  Many class action settlements involve low value claims
or defendants in financial distress, or both.  Courts should be
given flexibility to adapt the burden of review to match the
complexity and value of the case.  I propose adding the following
to the paragraph at pp. 223-24 of the Note:

          The parties may supply information to the court on any
     other topic that they regard as pertinent to the
     determination whether the proposal is fair, reasonable, and
     adequate.  The court may direct the parties to supply

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

further information about the topics they do address, or to supply information on topics they do not address.  In determining the amount and detail of information it requires the parties to submit at the notice stage under Rule 23(e)(1) and the approval stage under Rule 23(e)(2), the court should consider whether the burden of generating and submitting the information is proportional to the value of the claims, the amount of the settlement, and other factors informing the scope of review.  The court ~~It~~ must not direct notice to the class until the parties' submissions show it is likely that the court will be able to approve the proposal after notice to the class and a final approval hearing.

Public Citizen Litigation Group (CV-2016-0004-081):  We strongly support the approach of replacing the prevailing non-rule-based concept of "preliminary settlement approval" and "conditional certification" of settlement classes with a rule requiring that the court give early consideration to whether the parties have made a sufficient showing to justify giving notice. We are worried, however, about the use of the word "if" in the amendment to (e)(1) because that might imply that sometimes courts can approve settlements without giving notice.  Although this misunderstanding may seem unlikely, we urge the Committee to make the rule clear to avoid any risk of misinterpretation.  In addition, the "likely to be approved" standard seems likely to revive the disfavored "preliminary approval" idea sometimes in vogue.  We favor the use instead of "reasonable likelihood" of approval.  Accordingly, we would replace the proposed new language in (e)(1)(B) with the following:

The court shall direct such notice if it finds that consideration of the proposal is justified by the parties' showing that there is a reasonable likelihood that the court will be able to (i) certify the class for purpose of judgment on the proposal, if the class has not previously eeg certified; and (ii) approve the proposal under Rule 23(e)(2).

This proposal is similar to the one submitted by Prof. Alan Morrison, and we would also support the proposal he made in his Oct. 10, 2016, comments at pp. 6-7.

Diane Webb (Legal Aid at Work) (CV-2016-0004-086):  We are program that was founded more than 100 years ago to provide legal aid to low-wage workers.  We rely on charitable gifts, foundation grants, money from the California State Bar Legal Services Trust Fund, and cy pres distributions.  These sources of funding have been drying up.  The State Bar trust fund, for example, has had reduced funds for a long time due to low interest rates. Currently, we rely on cy pres funds to support our Workers'

Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                 Page 61

Rights Clnic activities, including expanded services in rural
areas of California.  To save money, we rely on "virtual clinics"
using video-call technology.  In 2016, our Workers' Rights Clinic
served more than 1200 clients.  We wish to emphasize that cy pres
funding is essential to our organization's mission and its
continued sustainability.  We believe that  including a reference
to the availability and appropriateness of cy pres in the Notes
to the Rule 23 amendments will provide valuable guidance to
litigants and the courts alike.

     Washington Legal Foundation (CV-2016-0004-087):  WLF
believes that any proposed reference to cy pres awards should be
eliminated.  Cy pres is a highly controversial mechanism used to
justify class actions even though the remotely situated class
members cannot feasibly be identified or when identifying them
would be more expensive than any potential recovery would
warrant.  With increasing frequency, cy pres has been utilized in
federal class actions to award unclaimed funds to one or another
charities supposedly relevant in some way to the issues presented
in the case.  Although the Committee prudently withdrew the idea
of a rule provision addressing use of cy pres, the Note at pp.
222-23 still contains a reference to cy pres and also cites the
ALI Aggregate Litigation Principles on this subject.  WLF
believes there is no basis to enshrine cy pres in the rules.
More often than not, the primary function of cy pres is to ensure
that a settlement fund is large enough to guarantee substantial
attorney's fees or to make the bringing of the class action
economically feasible.  And cy pres distributions can contribute
to a significant potential conflict of interest between class
counsel and class members, because class counsel has no incentive
to work hard to get the recoveries to class members as a way to
justify reference to the overall class "recovery" as a basis for
a large attorney's fee.  There are serious Article III
implications of unrestrained use of cy pres, and these "awards"
are akin to punitive damages, which generally are permitted only
where the courts have legislative authorization for them.
Instead of citing cy pres approvingly, the rule amendments should
clarify that Rule 23 provides no basis whatsoever for cy pres
awards.

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                                    Page 62

Rule 23(e)(2) -- standards for approval

Washington D.C. hearing

John Beisner (Skadden Arps): The Note fails to address what
the court should do if it concludes that the proposed settlement
should not be approved. This could apply either at the stage of
deciding whether to give notice or at the final settlement-
approval stage. It would be very helpful to have a discussion of
what to do at that point. There could be some tension with the
line of cases saying that the court may not rewrite the parties'
agreement "for" them. So the Note should warn against being too
specific about what changes would be likely to earn the court's
approval. But at the moment this is a void in the Note. In
addition, regarding the Note on p. 227, it is critical that the
reference to the "relief actually delivered" specify that payment
of a significant part or all of the attorney fee award ordinarily
should await a report to the court about the results of the
payout effort. If the lawyers are paid in full and it turns out
that only 5% of the settlement funds have actually been claimed,
it may be too late to do anything about it.

Brent Johnson (Committee to Support Antitrust Laws) (with
written testimony): COSAL is concerned that proposed
23(e)(2)(C)(ii) could be used to support something like an
ascertainability obstacle to class certification. The use of the
word "effectiveness" as a criterion there might prompt some
courts to conclude that a class action is not proper unless a
heightened ascertainability standard is met. Ascertainability
has split the circuits, and should not be insinuated here.
Instead, the rule should say that "best methods" for distribution
are the court's focus at this point.

Phoenix hearing

Thomas Sobol: I represent plaintiffs in pharmaceutical
pricing and other health cases. It is good that the amendment
addresses the distribution of relief. Responsible class counsel
make efforts to ensure that money actually gets to class members.
Judges also take an active role in doing so. One example was a
case in Boston where Judge William Young would not authorize
payment of our counsel fees until we improved the effectiveness
of our payout. The first effort drew only 10,000 claims, and we
were able to develop a list of 250,000 class members and improve
the claims rate. Nevertheless, Rule 23(e)(2)(C)(ii) is phrased
in a way that creates ambiguity. One interpretation is that it
sets an absolute standard of distribution effectiveness. There
is a risk it would be interpreted to say that, for all cases,
there is an absolute standard of distribution effectiveness, and
that the court should reject the proposal if it does not satisfy
that absolute standard. On the other hand, it might only call

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

for focusing on the comparative effectiveness of reasonably selected alternative methods of affording relief. The first interpretation would work mischief. That risk could be avoided by revising the factor:

> (ii) the effectiveness of the proposed method of distributing relief to the class as compared to other, reasonably available methods of distribution under the circumstances, including the method of processing class-member claims, if any.

Jocelyn Larkin (The Impact Fund) (testimony & CV-2016-0004-0063): Factor (D) is very important; I am frequently asked whether different segments of the class can be treated differently. But it would be better to phrase (iv) in active voice -- "the proposal treats class members equitably relative to the value of their claims." Also, it might be good to add something like "relative to the value of their claims."

Paul Bland (Public Justice): I agree with Sobol that there is a risk the proposed rule language could be misinterpreted. But the solution probably is to make changes in the Note, not the rule, to clarify what is meant.

Dallas/Ft. Worth (telephonic) hearing

Michael Pennington (DRI) (testimony and CV-2016-0004-088): There are a number of references in the Committee Note suggesting that the court should focus on the anticipated or actual claim rate as an appropriate measure of whether the settlement itself is reasonable. Claims rates will always be lower than 100%. And class members may have a variety of reasons for not making claims, including being philosophically opposed to class actions, not feeling that they have a claim against the defendant, or not thinking that the payoff is worth the effort. Although the court might properly take an interest in whether the claiming process was fair or, instead, too burdensome, that determination can be made well before the claims process is engaged. The approval of the settlement should not depend on how many class members choose to avail themselves of the benefits offered. Treating a low claims rate as a "red flag" of problems with the settlement is using 20/20 hindsight. The settlement should be judged in terms of its provisions, and that judgment is not dependent on the subsequent developments.

Prof. Judith Resnik (Yale Law School) (testimony & CV-2016-0004-092): The amendments make a desirable effort to improve the settlement process, but more needs to be done. The key improvement is more explicit recognition of the court's responsibility for assuring that relief is really delivered to class members. I believe these changes are consistent with the

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                              Page 64

proposals already made and could be added without the need for
republication and a further public comment period.  Already the
Note to (e)(1) and (e)(2) addresses the importance of judicial
scrutiny of the proposed means for giving notice and making
claims.  The preliminary draft also suggests that reporting back
to the court on the actual claims experience is desirable, and
that the amount or timing of attorney fee payments to class
counsel depend in part on the success of the claims program in
delivering relief to class members.  At present, the lack of
court involvement in the phase after the settlement has been
approved has resulted in a paucity of information on the public
record about the actual success of the class action in delivering
relief to the class.  The rules should recognize that courts have
responsibilities as "fiduciaries" of the class to ensure that
class members receive the intended relief.  Courts have done that
in the context of structural injunctions, but not other cases.
Learning about the intended methods of inviting and processing
class member claims (as the current draft suggests) is desirable,
but it is not enough.  The rule should create a presumption that
the parties file a statement about actual claims experience.
Presently the Note only says that it may be important to provide
that the parties do that.  Courts should be directed to require
that settlement agreements provide for regular reporting back to
the court about distribution decisions, and also that, if
conflicts about distribution across sets of claimants emerge,
there is a method to return to court.  Periodic reports to the
court should be required, with regard to both structural relief
and dollars distributed.  It would also be desirable to impose
sliding-scale fee awards for class counsel keyed to the success
of the settlement in delivering actual relief to class members.
That would build in an incentive for class counsel to make
distribution a priority.

     Theodore Frank (Competitive Enterprise Institute) (testimony
and CV-2016-0004-0085):  These changes are not explicit enough to
achieve the desired result of ensuring that attorney fee awards
are proportional to the benefits actually delivered to class
members.  In the 2003 amendments, the Committee Note to
Rule 23(h) clearly stated that the benefits to class members
should be a major factor in determining the amount of the fee
award.  But the reality is that the courts have too often
disregarded this idea.  Even after the adoption of CAFA, with its
focus on coupon settlements, counsel still manage to camouflage
coupons behind some other title, such as "vouchers," and justify
over-large attorney fee awards by invoking the alleged total
value of the coupons available to class members.  The courts of
appeals have split on whether courts are required to pierce these
showings and make certain that the attorney fee awards do not
exceed the benefits actually delivered to the class.  The Seventh
Circuit has been a leader in insisting that district courts make
certain of proportionality.  But if this amendment is adopted,

126

that may not only fail to bring the other courts into line, but prompt the courts that heeded the Committee's advice in 2003 to back off their requirement of proportionality. Under these circumstances, the right course would be to revise the amendment and adopt the Seventh Circuit's view. To achieve this result, the Rule 23(e)(2)(C)(iii) proposal should be revised as follows:

> (iii)  the terms of any proposed aware of attorney's fees, including timing of payments, and, if class members are being required to compromise their claims, the ratio of (a) attorney's fees to (b) the amount of relief actually delivered to class members; and

In addition, the settlement approval provisions should explicitly prohibit clear sailing and reversion provisions in class action settlements. Claims administrators can very accurately forecast the take-up rate, and defendants rest assured that they will not face large actual pay-outs. Indeed, they can even buy insurance against the risk of over-high pay-outs.

Written comments

Lawyers for Civil Justice (CV-2016-0004-0039): The Committee should abandon this provision because unifying the standards is unlikely to provide genuine uniformity and it may instead cause increased litigation. Because the amendment only allows courts to "consider" these criteria, it is not likely to produce genuine uniformity. One criterion that has been useful -- the number and strength of objections of class members -- is not on the Committee's list. Because there is no catch-all provision, it is possible that important factors will be overlooked. But any catch-all provision must be limited. The limit could be to make it clear that any additional factor must go to whether the settlement is "fair, reasonable, and adequate." The current reality is that courts need flexibility. "Although there is clearly variation among the circuits, there is no indication that differences in settlement approval criteria are responsible for the rejection of settlements that should have been approved or the approval of settlements that should have been rejected." Moreover, some criteria are not adequately explained. For example, the timing of the payment of attorney fee awards is mentioned but not explained. Counsel sometimes press for a "quick pay" provision to ward off objectors. Is that what is meant? Defendants are unlikely to consent to such a provision absent a guarantee of repayment in the event of appellate reversal. Similarly, the "method of processing class-member claims, if required" is vague an ambiguous. This is a new requirement. Does it mean that arrangements in which a third-party processes claims are inherently more fair? Also, the new header for Rule 23(e)(3) -- "identification of side agreements" -- is likely to raise questions due to the use of the word "side."

127

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                                                    Page 66

For example, if the parties agree to pursue settlement approval
in a jurisdiction where the law is clear on how that is to be
done, is that a "side" agreement subject to disclosure?  The word
"side" should be deleted.


     Gregory Joseph (CV-2016-0004-0040):  The phrase "proposed to
be certified for purposes of settlement" raises a question --
proposed to be settled where?  Currently, if the parties want to
settle a case originally filed in federal court in a state court
instead, they can dismiss the federal action because it is
uncertified and refile in state court.  Is this change intended
to prevent that result?  That seems unwarranted, and is not
hinted at in the Committee Note.  Does the amendment change that
if the federal court decides for some reason not to approve the
proposal for settlement?  Again, it does not seem that the
federal court has a reason to prevent the parties from seeking
approval in another court.

     Laurence Pulgram and 37 other members of the Council, the
Federal Practice Task Force, and other leaders of the ABA Section
of Litigation (CV-2016-0004-0057):  Our comments focus on three
matters:

     (1) The adequacy of relief to the class:  We believe the
     first factor in the rule text should be moved up to (C),
     rather than included in subpart (i).  Although the
     likelihood of success is mentioned in the Note, we believe
     it is often a dominant consideration, and one that should be
     balanced against the costs, risks and delay of further
     proceedings.  If the plaintiffs' claims are strong, the
     court should expect that fact to be reflected in the relief
     to the class.  But sometimes plaintiffs' claims are weak, or
     the defenses are strong also, and sometimes the law is
     uncertain.  The point should be that the likelihood of
     success factor will support a settlement that otherwise
     might not be viewed as adequate, but is reasonable in light
     of the circumstances.  Moreover, the costs of trial and
     appeal are not the only matters to be taken into account;
     the prospect of motions to dismiss or for summary judgment,
     and discovery costs, should be considered also.  Thus, we
     would favor revising (C) and (i) as follows:

          (C)  the relief provided to the class is adequate,
               taking into account the likelihood of success and
               the following:

               (i)  the costs, risks, and delay of further
                    proceedings, including trial and appeal;

     (2)  Timing of notice under (e)(1):  Under (e)(2), the court

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                                       Page 67

may approve the proposal only "after a hearing." Some
practitioners believe there is an ambiguity regarding
whether notice must be given under (e)(1) before a hearing
to approve the settlement under (e)(2) is scheduled. To
clarify this matter, we propose that (e)(2) be revised,
perhaps in one of the following ways:

> *Alternative 1*
>
> If the proposal would bind class members under Rule
> 23(c)(3), the court may approve it only after <u>notice
> and</u> a hearing . . .
>
> *Alternative 2*
>
> If the proposal would bind class members under
> Rule 23(c)(3), the court may approve it only after
> <u>directing notice as provided in Rule 23(e)(1),</u> a
> hearing . . .

(3) Reference in Note to extent of discovery as a factor
bearing on approval of the proposal: More than once, the
Note speaks of informing the court about the nature and
amount of discovery in this and other cases, suggested that
it is an important consideration in approval of the
proposal. Although the extent of discovery could be
relevant, we believe the Note should balance this discussion
with language suggesting that early settlements before
discovery has commenced should not be discouraged. The 2015
amendments emphasized the importance of proportionality in
discovery, but some lawyers nevertheless take the position
that they cannot approach settlement until a requisite
amount of discovery is taken. Others will negotiate an
early settlement but insist upon "confirmatory discovery"
after the terms of settlement have been reached. As
currently written, the Note might be seen to encourage
wasteful discovery. Particularly in cases involving mergers
and acquisitions, this would be an undesirable thing.

<u>Pennsylvania Bar Association (CV-2016-0004-0064)</u>: We
support this amendment, but think it is important to state that
the factors are not exclusive. Some of the factors seem
redundant. For example, adequacy of representation has already
been addressed under Rule 23(a)(4). Although the amendment
reflects an effort to clarify the factors already used by courts,
by focusing on some and not mentioning others it may be
interpreted to confine courts' discretion. To avoid that result,
it would be desirable to say in the rule that the list is not
exclusive.

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                 Page 68

Gary Mason & Hassan Zavareei (CV-2016-0004-0065): We
believe that the Note on 23(e)(2) improperly over-emphasizes the
importance of claims rates. This emphasis is not consistent with
current law to the extent it pulls out the claims rate as the
most important factor in determining fees. A myriad of other
factors routinely are considered. Indeed, numerous courts have
held that claims rates are *not* a determinative factor. We
propose revising the Note as follows:

> Examination of the attorney-fee provisions may also be
> important to assessing the fairness of the proposed
> settlement. Ultimately, any award of attorney's fees must
> be evaluated under Rule 23(h), and no rigid limits exist for
> such awards. The number of claims submitted may not be a
> significant factor in cases where the award of attorney's
> fees is based on lodestar or is determined based on the full
> benefits made available by the settlement. Nevertheless,
> the relief actually delivered to the class may ~~can~~ be an
> important factor in determining the appropriate fee award.
> In some cases, the ~~Provisions for reporting back to the~~
> ~~court about~~ actual claims experience~~, and deferring a~~
> ~~portion of the fee award until the claims experience is~~
> ~~known,~~ may bear on the fairness of the overall proposed
> settlement. (p. 227)

American Association for Justice (CV-2016-0004-0066): AAJ
applauds and supports the effort to streamline the information
courts consider when determining whether to approve a proposed
class-action settlement. The addition of the word "only"
regarding the existing criteria (fair, reasonable, and adequate)
is more emphatic. The rewrite of the rule focuses the courts and
litigants properly on the core concerns regarding settlement and
move away from focusing on other lists of circuit-specific
factors, which may be irrelevant to particular cases and may have
remained unchanged in certain circuits for over 30 years. AAJ is
concerned, however, about the two references to attorney's fees
(on pp. 223 and 227) may complicate the review process and
confuse courts and litigants with regard to settlement review.
The suggestion that the reference to "claims rate" and the
suggestion of deferring fee awards could be misconstrued by
courts to have broad application. We offer the following views:

> (1) Although the proposed attorney's fee award is a factor
> that bears on sending notice to the class, the reference to
> this factor on p. 223 seems unduly to stress this issue.
> Emphasizing this one factor, and not others, could be
> interpreted in limiting the courts' flexibility. Deferral
> of some or all attorney's fees seems to us out of place in
> regard to giving notice (the focus on p. 223). Even in
> regard to application of the 23(e)(2) approval factors, the
> emphasis seems unwarranted to us because it likely matters

130

in a minority of settlements. Focusing on claims rates may overlook important deterrence and other benefits provided by the settlement. AAJ thinks that the paragraph on p. 223 so that only the first sentence remains:

> The proposed handling of an award of attorney's fees under Rule 23(h) is another topic that ordinarily should be addressed in the parties' submission to the court.

Alternatively, if a reference to "claims rate" remains in the Note, we think that the Note on p. 223 should be rewritten as follows:

> The proposed handling of an award of attorney's fees under Rule 23(h) is another topic that ordinarily should be addressed in the parties submission to the court. In a small number of ~~some~~ cases, it may ~~will~~ be appropriate ~~important~~ to evaluate the expected benefits to the class or to take into account the likely claims rate ~~relate the amount of an award of attorney's fees~~ when considering the settlement and the award of attorney's fees. In such cases, other consideration may predominant, such as the difficult of the work, the quality of the representation and the results obtained, deterrence of violations of the law, and appropriate use of unclaimed funds, such as cy pres awards. Further, it may be appropriate to allow for inclusion of fees for significant additional work class counsel performs after notice is disseminated. ~~to the expected benefits to the class, and to take account of the likely claims rate. One method of addressing this issue is to defer some or all of the award of attorney's fees until the court is advised of the actual claims rate and results.~~

(2) The topic of attorney's fees comes up again in the Note on p. 227. The first two sentences of the second full paragraph on that page are accurate. But AAJ is concerned about the further discussion of "the relief actually delivered to the class" and possible deferral of fees until the claim experience is reported. This seems to reinforce the minority of cases where the settlement is a "claims made" settlement as opposed to a common fund. By referring to this special consideration, without providing other equally important factors, the Note could be interpreted as making claims rate experience both a general and exclusive concern. But some cases have low claims rates are only one factor in assessing the overall value of the case. Even if there is a low claims rate, the case may have considerable deterrent value. Other factors come into play, including

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017

whether the underlying statute has an attorney's fee provision that indicates that the legislature has determined that a fully compensatory fee should be paid somewhat without regard to compensation in the individual case. But AAJ recognizes also that listing all these factors might overburden the Note. If the Committee deems it necessary to retain reference to claims experience, it favors revising the paragraph on p. 227 as follows:

> Examination of the attorney-fee provisions may also be important to assessing the fairness of the proposed settlement. Ultimately, any award of attorney's fees must be evaluated under Rule 23(h), and no rigid limits exist for such awards. Nonetheless, <u>evaluation of</u> the relief actually delivered to the class can be an important factor in determining the appropriate fee award. <u>In these cases,</u> ~~Provisions for reporting back to the court about~~ actual claims experience <u>is not an exclusive factor and other relevant factors, including, but not limited to, deterrent effect, legislative intent, and alternative use of the unclaimed funds,~~ and deferring a portion of the fee award until the claims experience is known,~~</u> may bear on the fairness of the overall proposed settlement.

(3) AAJ is also concerned about factor (D) regarding equitable treatment of class members relative to each other. If that provision remains, it is important that courts not interpret "equitable" to be the same as "equal." Careened law does not require that a class action settlement benefit all class members equally. For example, if there are statute of limitations problems that affect the claims of some class members but not others, that would justify different treatment. To avoid misunderstanding, AAJ strongly urges revision of the Note on pp. 227-28 as follows:

> Paragraph (D) calls attention to a concern that may apply to some class action settlements -- inequitable treatment of some class members vis-a-vis others. <u>Equitable treatment does not mean that all class members benefit equally from the settlement, but rather that the settlement be objectively fair to all members.</u> Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that affect the apportionment of relief.

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Yvonne McKenzie (Pepper Hamilton) (CV-2016-0004-0069): We have two comments that focus on Rule 23(e)(2):

(1) We agree with the following statement in the Note on p. 226: "The relief that the settlement is expected to provide to class members is a central concern. Measuring the proposed relief may require evaluation of the proposed claims process and a prediction of how many claims will be made . . . ." But we are concerned that the rule does not address a related concern that courts may not take adequate measures to define the class or otherwise to ensure that uninjured class members do not recover. This concern is particularly significant in the growing number of consumer class actions that are being brought based on technical violations of state and federal statutes with no concrete injury common to all class members. In Spokeo v. Robins, 136 S.Ct. 1540 (2016), the Supreme Court has held that a bare procedural violation does not satisfy Article III. The rule should be clarified to state that the class representative must show that all class members have Article III standing. One way to do this would be to amend Rule 23(a)(3) to clarify that typicality means that all class members have an injury similar to the one alleged by the class representative. Chief Justice Roberts recognized the importance of this issue in his concurring opinion in Tyson Foods v. Bouaphakeo, 136 S.Ct. 1036, 1051 (2016): "I am not convinced that the District Court will be able to devise a means of distributing the award only to injured class members."

(2) The second comment is related to the first. Proposed Rule 23(e)(2)(C)(ii) addresses in part the concern with compensating uninjured parties by requiring the court to take account of "the effectiveness of the proposed method of distributing relief to the class, including the method of processing class-member claims, if required." The Note adds that the "claims processing method should deter or defeat unjustified claims, but unduly demanding claims procedures can impede legitimate claims." We believe that this concern is better addressed at the class-certification stage. To illustrate, consider the recent Ninth Circuit decision in Briseno v. ConAgra Foods, 844 F.3d 1121 (9th Cir. 2017), where the court affirmed class certification in a case involving an allegedly misleading label claim that cooking oil was "all natural," even though many class members would likely be unable to recall what brand of cooking oil they purchased, much less whether the label claimed to be all natural. But the Ninth Circuit decision simply kicked the issue whether these class members could satisfy Article III down the road, an impractical result that could be avoided by a rigorous analysis at the class-certification stage.

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                 Page 72

Since it is not resolved at the certification stage, things
are kicked down the line until the settlement stage.  But
the proposed Note to (e)(1) and (e)(2) do little to address
this problem.  Instead, they only call for attention to the
method of processing class member claims and concern about
the "claims rate."  This comes close to endorsing diversion
of the defendant's money to uninjured cy pres recipients.
That is a mistake.  Cy pres simultaneously facilitates the
flaws and in modern class actions and creates the illusion
of class compensation.

New York City Bar (CV-2016-0005-070):  We are generally in
favor of this proposal and believe it is helpful to lay out a
specific framework for evaluating whether to approve a class
settlement.  The articulation of these criteria should minimize
distinctions among the circuits, which we support.  We do propose
some edits, however:

(1)  On p. 224, the Note says that the purpose of the
amendment is "not to displace any of [the circuits']
factors."  We fear that this may cause confusion.  Instead,
we suggest that the Note read as follows:

The goal of this amendment is not to displace any of
~~these factors, but rather to focus the court and the~~
~~lawyers on the core concerns of procedure and substance~~
~~that should guide the decision whether to approve the~~
~~proposal~~ the case law developed by the circuits because
that case law remains relevant to determining whether a
settlement meets the criteria for approval detailed in
Rule 23(e)(2) itself.  Because those same central
concerns are embodied in the factors listed in
Rule 23(e)(2), the amendment directs the parties to
principally address the fairness, reasonableness and
adequacy of the settlement to the court in terms that
encompass the shorter list of core concerns, when all
of those factors are appropriate.

(2)  We are concerned that the amendment may be taken to
direct consideration of all the factors even in cases in
which they are not apposite.  We think that the rule
language on p. 213 at line 47-48 should be revised as
follows:

only after finding that it is fair, reasonable, and
adequate after considering factors including, where
appropriate, whether:

(3)  We offer the following comments on two of the factors
in 23(e)(2):

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

23(e)(2)(C)(ii) focuses on "the effectiveness of the proposed method of distributing relief to the class, including the method of processing class-member claims, if required." This type of factor has not regularly been addressed by the courts of appeals, and we are concerned that the district courts could apply it inconsistently. The Note should say that this factor does not require a specific method or absolute standard for distribution. Moreover, with regard to non-monetary relief, we worry that this standard might restrict creativity in tailoring relief before the method has been used. At a minimum, the Note should indicate that this factor may be inapposite for non-monetary settlements.

23(e)(2)(D) calls for the court to focus on whether "class members are treated equitably relative to each other." The Note should make clear that "equitable" is not the same as "equal," and that subclassing may often lead to different relief for different subclasses.

(4) We believe that another factor should be added -- "the nature of the class members' and objectors' reaction." We think this factor is not included in the proposed list, and that it is important. We say the focus should be on "the nature" of the reaction because otherwise there may be a risk courts will simply engage in nose-counting. A qualitative analysis of the class members' reaction is more important than a quantitative one.

Aaron D. Van Oort (CV-2016-0004-075): The provision in Rule 23(e)(2)(D) regarding equitable treatment of class members vis-a-vis each other is an important instruction for courts and lawyers. My concern is that the Note does not explain this important concept, and recognize that settlements must smooth out differences between class members in order to achieve speed, simplicity, efficiency, and finality. In a way, this point focuses on the differences between common and individual questions, particularly pertinent in this day of increased use of Rule 23(c)(4). "Because of the limitations imposed by the Rules Enabling Act, nearly all litigation classes are issue classes under Rule 23(c)(4), whether they are designated such or not." This is not to open a debate on a topic the Committee has put aside, but designed to make the point that when they settle parties can compromise on some of those individual questions even though courts might be unable to resolve them via litigation. Courts should therefore recognize as common for purposes of settlement issues that -- if litigated fully -- would be individual. I would therefore add to the Note paragraph on pp. 227-28 as follows:

135

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                Page 74

Paragraph (D) calls attention to a concern that may
apply to some class action settlements -- inequitable
treatment of some class members vis-a-vis others. Matters
of concern could include whether the apportionment of relief
among class members takes appropriate account of differences
among their claims, and whether the scope of the release may
affect class members in different ways that affect the
apportionment of relief. In applying Rule 23(c)(2)(D),
courts may give due regard to the parties' ability to
compromise and simplify the treatment of claims to achieve
speed, simplicity, efficiency, and finality.

Public Citizen Litigation Group (CV-2016-0004-081): We
generally support these changes. But we also support the
suggestions of COSAL and Thomas Sobol that the criterion
concerning the distribution of relief should be clarified.
Rather than suggesting that all settlements must meet some
absolute standard of efficacy of distribution of the settlement's
benefits, the rule should recognize that the question is one of
available alternatives. We suggest that proposed (e)(2)(C)(ii)
be revised as follows:

**(ii)** the effectiveness of the proposed method of
distributing relief to the class, including the method
of processing class-member claims, if required, is
reasonable in relation to other practicable methods of
distribution under the circumstances;

Public Justice (CV-2016-0004-089): We have concerns about
the focus of proposed Rule 23(e)(2)(C)(ii). In the first place,
the rule seems to assume that class actions generally include
claims systems. In our experience there are a great many class
actions where every member of the class is sent a check, or
receives a credit or otherwise automatically gets relief. That
reality should not be overlooked. Second, particularly when the
defendant has dragged out the case, the settling class
representatives and class counsel may encounter great difficulty
in locating many class members. When that happens, the right
solution is a cy pres use of the remaining funds that addresses
the grievance raised by the suit. We know that the Note to
Rule 23(e)(1) makes a brief reference to this possibility at pp.
222-23. We urge the Committee to expand on this point. In cases
we have handled involving illegal debt collection practices,
residual funds were properly committed to support organizations
that protect the rights of debtors in the same geographic area as
the class members. The inclusion of that possibility is and
should be a factor in support of approval of the settlement.

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Rule 23(e)(5)(A) -- objector disclosure and specificity

Washington D.C. hearing

Mark Chalos (Tenn. Trial Lawyers Ass'n): District courts
routinely allow discovery about prior objections by objectors
before them. It would be desirable to include a requirement that
all objectors disclose how many times in the past they have
objected. This listing should include case name, the court in
which the case was pending, the docket number of all other cases
in which the objector has submitted objections.

Alan Morrison (George Washington Univ. Law School)
(testimony & CV-2016-00004-0040): This provision is not
objectionable. But it is worth noting that sometimes settlement
proponents go too far in policing the objections process. For
example, in the NFL concussion case the parties required that all
objections be personally signed by all the objectors and not just
their lawyers even though they had pending cases in the MDL
proceeding. That violates 28 U.S.C. § 1654 and was burdensome to
lawyers who had more than one or two clients. On occasion it
resulted in lawyers being unable to file objections on behalf of
all of their clients.

Phoenix hearing

Thomas Sobol: The amendment does not go far enough. Keep
in mind what is required of the class representative and class
counsel. The representative must demonstrate typicality and
adequacy. Class counsel must satisfy Rule 23(g). These
requirements are essential to ensure that the court does not
improvidently authorize somebody inappropriate to take actions
that impair the legal rights of others. Yet objectors can put at
risk the rights of the other class members by simply objecting.
If they are doing so only on their own behalf, that should be
their right, but if they assert that their objections are
submitted on behalf of others, or perhaps the entire class, the
court should consider insisting that they satisfy the same
requirements that the class representative and class counsel must
satisfy. The court should not consider the objection until this
scrutiny of the objector and objector counsel is completed. The
court has inherent power to do this, but the power should be made
explicit. The following could be added at the end of proposed
(e)(5)(A):

    If an objection applies to a specific subset of the class or
    to the entire class, the court may require the class member
    filing such an objection to make a factual showing
    sufficient to permit the court to find (i) that the class
    member is a member of the affected class or a subset of the
    class; (ii) that the class member will fairly and adequately

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

represent the interests of the class; and/or (iii) that the counsel for each class member is qualified to fairly and adequately represent the interests of the class. Absent such a finding, a court may overrule the objection without considering it further.

Annika Martin:  The required disclosures for objectors are a good idea, but they should be augmented.  In addition, objectors should be required to disclose whether they have previously objected to a proposed settlement and, if so, to provide specifics about when those prior objections were made and the outcome.  This might facilitate additional discovery about the objector.  This might also call for some information about objector counsel's prior objections.

Dallas/Ft. Worth (telephonic) hearing

Michael Pennington (DRI) (testimony and CV-2016-0004-088: Proposed (e)(5)(A) says that the objector should specify whether the objection is offered only on behalf of the objector, on behalf of a specific subset of the class, or on behalf of the entire class.  This provision invites class members to assert objections on behalf of other people.  But those objectors have not been appointed to represent the class (as the class representative has been so appointed -- at least conditionally -- in connection with the proposed settlement).  Moreover, this provision may create confusion about how much real opposition there is to the settlement.  We have seen instances in which objectors have purported to "opt out" an entire state's population from a class action.  But they have not been authorized to take any such action.  There is no empirical need to have objectors instruct a district court how to interpret their various objections, and adding this invitation would only complicate an already-complicated settlement review process.

Theodore Frank (Competitive Enterprise Institute) (testimony and CV-2016-0004-0085):  These standards for objector submissions are going to produce harmful results.  The change to the rule is unnecessary because district courts already effectively manage such submissions.  Adopting more formal requirements will only encourage arguments that objections should be rejected for failure to adhere to the favored form.  Presently, the courts of appeals direct district judges to provide a reasoned response to all non-frivolous objections.  But suggesting that some such objections can be rejected out of hand for being in the wrong form invites district courts not to address the merits of the objections.  I agree with Mr. Isaacson that -- though there may be some unjustified objections -- there is no significant problem of frivolous, bad-faith objectors.  There is a much more important problem of class counsel collaborating in faux settlements that benefit them but not the class, and allow the

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

defendant off cheaply.  The goal of the amendment is to give
class counsel a stick to use against the rare bad-faith objector,
but what will happen is that the stick will be used against good-
faith objectors.  But if the Committee insists on proceeding with
this rule change, it should ensure that class notice includes
advising class members of these requirements.  At the end of
proposed (e)(5)(A) the following should be added:

> The notice to the class must notify class members of the
> requirements contained in this paragraph.  An objector's
> failure to satisfy technical standards is not a basis for
> dismissal of an objection.  An objector does not waive an
> objection nor any rights to proceed on appeal for failure to
> meet the requirements of this paragraph.

                          Written comments

     Alex Owens (CV-2016-0004-0036):  The changes regarding
serial objectors are wise.  Professional objectors are the vast
majority of class action objectors, and they tend to behave
unethically.  These attorneys generally have retainer agreements
that limit the client to receiving no more than $5,000.  There
should be guidance concerning the disclosure of such retainer
agreements in that they effectively provide a contingency fee
that often approaches 95%.  There should be clearer standards not
just regarding the details of the objection but also the manner
in which the objector came to object and the bona fides of the
objection.  An additional subsection setting out a standard for
when objectors or their counsel engage in sanctionable behavior
would also help ensure that the objectors that object are not
engaged in extortionate activity.  Judges may often be unaware of
this sort of activity.

     Defense Research Institute (CV-2016-0004-072):  The rule
invites class members to object on behalf of others.  That is not
justified and should be changed.  DRI agrees that the grounds of
the objection should be stated with specificity, but sees no
reason affirmatively to invite class members to raise objections
"on behalf" of others.  The court certainly can determine whether
the objection has ramifications with regard to other class
members without this invitation to class members to volunteer
objections for others.  This invitation could lead to side
disputes and needless litigation.

     Public Citizen Litigation Group (CV-2016-0004-081):  We
agree with the requirement that objections be stated
specifically.  In our experience, courts routinely disregard
objections that are not stated specifically.  But we think that
the language should be modified to add the word "reasonable"
between "with" and "specificity."  This addition would provide
support in the rule for the comment in the Note that pro se

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

objectors should not be held to "technical legal standards." In addition, we find the rule requirement that the objection specify whether it is on behalf only of the individual class member confusing. What does it mean for an objection to "apply to" all or part of the class is unclear. Because the court can only approve the settlement as presented to it, any valid objection in some sense "applies to" the entire class because it will, if accepted, be a ground to refusal approval of the settlement. We would therefore delete that language. This would result in (e)(5)(A) reading:

> Any class member may object to the proposal if it requires approval under this subdivision (e). The objection must state its grounds with reasonable specificity.

Tennessee Trial Lawyers Ass'n (CV-2016-0004-083): We believe that Rule 23(e)(5)(A) regarding the objector's submission should be amplified with the following sentence:

> Objector and Objector's counsel, if any, must list by case name, court, and docket number all other cases in which she or he filed an objection.

This information should be discoverable in any event, but getting to that point takes considerable motion practice. This addition would streamline that process.

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017

Rule 23(e)(5)(B) and (C) -- court approval of payment to
    objectors or objector counsel

                    Washington D.C. hearing

    Jeffrey Holmstrand (DRI) (with written testimony):  DRI
completely agrees with the idea that bad faith objectors should
be deterred.  But it is not certain that this proposal will
accomplish that objective.  Courts seem presently to be able to
tell the "good" from the "bad" objectors.  But many objectors
tend to blend some "good" and some "bad" features.

    Mark Chalos (Tenn. Trial Lawyers Ass'n):  The draft should
be improved to cover a possible loophole.  Sometimes these deals
involve payment to a recipient other than the objector or
objector counsel.  For example, the payment may be to an
organization with which the objector is associated.  The rule
should forbid any payment "directly or indirectly" to the
objector.  In addition, there is a risk of payments that escape
the court-approval requirement.  There should be a requirement
that, whenever an objector withdraws and objection, the objector
must file with the court a certification saying that there has
been no payment made in connection with the withdrawal of the
objection.

    Alan Morrison (George Washington Univ. Law School)
(testimony & CV-2016-00004-0040):  He strongly supports adding
the court-approval requirement.  Indeed, he would apply the
court-approval requirement of Rule 23(e) to all settlements
whether or not the court has ruled on class certification, or
whether the settlement purported to bind
others in the class (as was the general rule before the 2003
amendments).  Regarding the Note on p. 229 about the possibility
class counsel will believe that paying off objectors to avoid
delay is worth the price, it might be added that defendants may
also succumb to this sort of pressure.  In at least one case, he
understands that a defendant paid off an objector after an appeal
was filed.  Defendants may, at least subconsciously, agree to a
larger attorney fee for class counsel in anticipation that some
of it will be used to pay off objectors.

    Stuart Rossman (Nat'l Consumer Law Ctr. & Nat. Ass'n of
Consumer Advocates) (with written testimony):  He strongly
supports this effort to prevent bad faith objectors from
profiting.  But it is important also to ensure that if objectors
are paid the payment should come either from the defendant or
from class counsel.  If the objection results in a substantial
increase in the settlement amount, however, that increase should
not become a bonus for class counsel, and it could produce funds
that would cover the payment to the objector who produced the
increase.

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                              Page 80

Brian Wolfman (Georgetown Law School) (testimony and
prepared statement): I have represented objectors in about 30
national class-action settlements. I support this proposed rule.
Indeed, in 1999, I proposed a very similar rule to this
Committee. But the rule has a gap -- it says nothing about the
standards for approving such a payment. I think that a court
should approve a payment to an objector different from the payout
via the settlement only in the rarest circumstances. In effect,
proposed 23(e)(2)(D) -- regarding equitable treatment among class
members -- essentially says that. The solution is an addition to
proposed 23(e)(5)(B):

> The court may not approve a payment or a transfer of other
> consideration to an objector or objector's counsel unless it
> finds that (1) the objector's circumstances relative to
> other class members clearly justify treatment different from
> the treatment accorded to other class members under the
> proposal; and (2) the objector lacked a realistic
> opportunity to prosecute a separate action.

In addition, the Committee Note at p. 229 says that class counsel
may conclude that a payoff to an objector is justified in order
to get relief to the class. That is true, but may be taken to be
a justification a court could adopt to support approval of a
payment to an objector. This should never be a justification for
a payoff. I propose that the Note be augmented by adding: "That
is not a proper reason for providing payment or other
consideration to these objectors. Rule 23(e)(5)(B)(ii) seeks to
eliminate any incentive for providing such payment or
consideration in the first place."

                          Phoenix hearing

Jennie Lee Anderson: We applaud this proposal. The bad
faith objector problem affects both sides of the "v." The right
of class members to object is important and should be protected.
But the activities of these people have no bearing on that. This
amendment should improve the situation, although it may not, by
itself, be a complete solution. It will be important to monitor
what happens. There may later be a need to involve the appellate
rules also.

Jocelyn Larkin (The Impact Fund): The draft might be
improved by providing examples to illustrate the grounds for
approving a payment to an objector.

Annika Martin: It is good to require court approval for
payments to drop an objection, or desist from making one. But
there is a risk that this proposal has a loophole. Counsel may
simply create a nonprofit organization that can be the recipient
of the payment, thereby sidestepping the rule as presently

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                          Page 81

written.  Revising proposed (e)(5)(B) to add this possibility
would be a good idea.  Alternatively, it might be sufficient to
achieve a similar result by removing words from the rule
proposal:

> Unless approved by the court after a hearing, no payment or
> other consideration may be provided ~~to an objector or
> objector's counsel~~ in connection with:
>
> (i)   forgoing or withdrawing an objection or
>
> (ii)  forgoing, dismissing, or abandoning an appeal from a
>       judgment approving the proposal;

                    Dallas/Ft. Worth (telephonic) hearing

    Eric Alan Isaacson (testimony and CV-2016-0004-0076):  I
have 26 years' experience with the plaintiff class action bar.  I
have never seen a payment offered to an objector for a groundless
objection.  To the contrary, when objectors are offered money
that is a sign that their objections are justified.  Class
counsel use payoffs to avoid appellate review that would likely
lead to reversal of the approval of the settlement.  There simply
is no groundless objector problem.  But there is a problem with
payoffs that curtail appellate review.  Consider a school teacher
who has at best a $1,000 claim and objects to an inadequate
settlement.  Suppose she is offered $25,000 to drop the objection
or an appeal.  It is very difficult for average people to turn
down such a payment, particularly in a time when so many people
have trouble making ends meet.  The requirement of court approval
is not a solution to this problem, particularly because the
proposed amendment does not state a standard for whether to
approve the payment.  One judge might think that paying objectors
for dropping frivolous objections is bad, while another might
think it makes perfect sense as a way to expedite completion of
the settlement claims process.  A better idea would be to provide
explicitly in the rule for paying objector counsel.  As things
now stand, what frequently happens is that objectors become the
target of harassment from class counsel.  Suddenly they are
subpoenaed to provide testimony about their lives as part of an
effort to discredit them.  That will become a bigger problem due
to the removal of the current requirement (added in 2003) for
court approval of objections without payment to objectors.

    Theodore Frank (Competitive Enterprise Institute) (testimony
and CV-2016-0004-0085):  Proposed (B) and (C) should be deleted
because they will only increase extortionate payments to bad-
faith objectors.  By requiring that payoffs be disclosed to the
court and approved, it will encourage other entrepreneurial
attorneys catch on.  "Newcomers to the objector blackmail market
will see that they too can file a boilerplate objection with

Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                                    Page 82

conclusory allegations and be paid to go away."  Moreover, class
counsel can use this process to protect their bad settlements
from appellate review.  What should be done is to build in the
right incentives by stating explicitly in the rule that objectors
can recover an attorney's fee award for providing a benefit to
the class.  (B) should be rewritten as follows:

> The court may approve an objector's request for an award of
> reasonable attorney's fees and nontaxable costs after a
> hearing and on a finding that the objection realized a
> material benefit for the class.  An objector may not receive
> payment or consideration in connection with ~~Unless approved
> by the court after a hearing, no payment or other
> consideration may be provided to an objector or objector's
> counsel in connection with~~:

>> (i) forgoing or withdrawing an objection, or

>> (ii) forgoing, dismissing, or abandoning an appeal from
>> a judgment approving the proposal.

If the Committee proceeds with (B) and (C) as currently
formulated, it should add an enforcement mechanism.  The remedial
concept of disgorgement should be invoked along the following
lines in a new (D):

> (D) _Enforcement._  Any party or class members may initiate
>     an action to enforce paragraph (B) and (C) by filing a
>     motion for disgorgement of any consideration received
>     by an objector in connection with forgoing or
>     dismissing an objection or appeal.

                          Written comments

     Gregory Joseph (CV-2016-0004-0040):  Is it possible that
this court-approval requirement will merely make it more
expensive to buy off the objector?  In addition, it is not clear
how the limitation on payment for "forgoing" an objection is to
be enforced.  How will the court become aware of this event that
leaves no blemish in the court's docket?

     Hassan Zavereei (CV-2016-0004-0048):  I am concerned that
this rule will not actually deter bad faith objectors, who are
unethical and unlikely to abide by its provisions.  Class counsel
sometimes feel they must give in to objectors in order to get
relief to the class.  The court approval requirement would
effectively remove the decision whether to do so from class
counsel's toolbox, for they would be unwilling to subject
themselves to the public embarrassment of being on the record as
having paid a professional objector.  I am also concerned that
the narrowness of retained district-court jurisdiction after an

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

appeal has been docketed may mean that changes to the Appellate Rules are also needed. Requiring approval by the district court is contrary to traditional notions of appellate jurisdiction. To avoid these jurisdictional difficulties, a better approach would be to add something along the following lines to Rule 23(e):

> *Request for Finding that Objection Was Filed in Bad Faith.* At the request of any party to consider whether an objection has been filed in bad faith, the court may consider all surrounding facts and circumstances -- including whether the objector complied with Rule 23(e)(5)(A), whether the objector complied with all noticed requirements for the submission of an objection, whether grounds for the objection have legal support, conduct by the objector or objector's counsel in the instant case, and previous findings that the objector or objector's counsel has pursued an objection in bad faith -- and, if it deems it appropriate, make a finding that an objection was brought in bad faith.

Pennsylvania Bar Association (CV-2016-0004-0064): This amendment is a good start in addressing frivolous or meritless objections, which can impact the settlement of a class action. We recommend adoption.

New York City Bar (CV-2016-0005-070): We agree with the decision to require court approval before payment to objectors or objector counsel. But we do not believe that it should always require a hearing to obtain that approval. Accordingly, we think that the rule language at lines 90-94 on p. 216 should be revised as follows:

> Unless approved by the court after a hearing or, if the Court deems it appropriate, based solely on written submission on notice to all interested parties, no payment or other consideration may be provided to an objector or objector's counsel in connection with:

Public Citizen Litigation Group (CV-2016-0004-081): The proposed amendment requiring court approval is along the lines we proposed in 2015. We do think two modifications would improve it. First, we think that the words "to an objector or objector's counsel" should be removed from the rule to deal with the risk that some might direct payment to third parties affiliated with the objector or lawyer. Second, we are concerned about the absence of any standard for approving payments. Courts may conclude that paying off objectors is justified to finalize the settlement without regard to the validity of their objections. We think that the Note should make it clear that this sort of reason does not justify approval. We think that the standard should be whether the payment would be approved as fair and

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                            Page 84

reasonable from the standpoint of the class as a whole, which
would incorporate the standard in (D) about treating class
members equitably relative to each other. We propose that the
following be added to (e)(5)(B):

> The court may approve such payment or consideration only
> upon finding that it is fair and reasonable from the
> standpoint of the class as a whole, taking into
> considerations the factors set forth in Rule 23(e)(2).

_Tennessee Trial Lawyers Ass'n (CV-2016-0004-083)_: We urge
that the proposed rule be revised to close a potential loophole
for clever objectors and lawyers to set up entities to receive
the payment. We suggest that the phrase "directly or indirectly"
be added before "to an objector or objector's counsel." We know
of objectors who have demanded that payments be made to a non-
profit or "think tank" by which the objector is employed. We
think also that a sentence should be added to the rule requiring
that any objector who withdraws an objection or appeal without
compensation file a notice with the court so stating. An
explicit certification requirement would give the courts a method
to enforce the rule.

_Public Justice (CV-2016-0004-089)_: We endorse the proposal
to require court approval for payment to an objector or objector
counsel. We believe this provision will help deter so-called
"professional objectors" from holding up an otherwise valid class
action settlement.

_Richard Kerger (CV-2016-0004-090) (letter initially sent to_
_Chief Judge Guy Cole of the Sixth Circuit)_: I understand that a
rule proposal has been made to deal with the problem of
professional objectors, and write to report on an experience I
have encountered in an MDL proceedings in which I was involved.
After four an a half years of hard-fought litigation, both the
direct purchaser and the indirect purchaser classes in these
cases reached settlements. The indirect purchaser settlement, on
which I was working, was attacked by several objectors including
a particular pro se objector. For a year or more, this objector
ignored directives from the district judge and also repeatedly
accused the judge and the Sixth Circuit of conspiring with
counsel to approve the settlement. The settlement was for more
than $151 million, but the objector asserted (without an iota of
evidence) that it was fraudulent and done solely to line the
pockets of lawyers. Even though the district judge eventually
imposed an appeal bond requirement, this objector appealed
without paying the bond. Eventually the appeal was dismissed.
The objector's conduct delayed the settlement and caused the
class to lose money because one of the defendants was not
obligated to make its $43.5 million deposit into escrow until all
appeals had been resolved and the settlement upheld. Finally,

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

the district judge imposed a financial sanction on the objector. We tried to take his deposition, but he objected to the timing and then failed to appear. At this point, the district judge found him in contempt and had him arrested in Michigan at a motel and transported to the courthouse in Ohio by two marshalls. This man has been found to be a professional and serial objector and a vexatious litigator. In the past, he has received at least $67,000 in payments for his objections. "The concern is that the history of this case is an advertisement for him as to why class counsel should cave in to professional objectors and pay them the relatively nominal amount they want to just 'go away'." Besides the current amendment proposal, other ideas occur to me: (1) insist that there be some proportionality between the amount of the class members' claim and the overall settlement; (2) amending Rule 23 to shorten the time by which a notice of appeal from denial of an objection must be filed; (3) making appellate review of objections discretionary, as is true under Rule 23(f) for class-certification orders; and (4) some sort of deterrent to prevent frivolous objections and appeals. "No objector with a minuscule claims, such as what [this objector] has in this case or others in which he has filed objections, should be allowed to go undeterred to prevent hard-fought class action settlements to proceed to finality. Without some degree of risk imposed on serial objectors, they will continue to obstruct the judicial process and our orderly system will remain broken."

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                 Page 86

Rule 23(f) -- forbidding appeal from notice of settlement
     proposal

                          Washington D.C. hearing

     Jeffrey Holmstrand (DRI) (with written testimony):  This
proposal makes sense.  Indeed, it seems implicit, but it makes
sense to make it explicit.

                          Written comments

     Frederick Longer (CV-2016-0004-0038):  This change is very
welcome.  Rule 23(f) appeals can be very disruptive, but appeals
from the sending of notice exacerbate this potential disruption.
That notice occurs when the court and the parties clearly
contemplate further proceedings that may significantly affect
what the appellate court may see if the proposal is approved.
Codifying the result reached by the Third Circuit in the NFL case
relieves other litigants and judges of the need to worry about
this point.

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Rule 23(f) -- additional time for appeal in government cases

### Washington D.C. hearing

Jeffrey Holmstrand (DRI) (with written testimony): This proposal does not go far enough. The class certification decision is, by far, the most important in the case. There should be an appeal as of right. Although 23(f) was a good idea, the reality has been that the rate of taking appeals has fallen. Most circuits seem to think that appeals should be allowed only when there is an open legal question to be answered. The rule should take the view of the ALI Aggregate Litigation project, and ensure appellate review of right in all cases.

### Dallas/Ft. Worth (telephonic) hearing

Michael Pennington (DRI) (testimony and written submission): We have no problem with extending the time for seeking review in cases in which the United States is a party. But we think it should be recognized that the 14-day time limit in the current rule is too short for many others. There is often no way to know when a class certification decision will be rendered. It happens on occasion that counsel simply cannot free up the time to focus on that issue when the court's decision is made. What if counsel is in trial, for example? Certainly counsel should put the matter on the front burner, but there are limits to being able to do that. We are not advocating an extension to 45 days for all cases, but extending to 21 or 28 days would relieve a serious pressure point without creating significant risks of delay. It could also provide courts of appeal with better fashioned presentations; as things now stand, the submissions they receive are of necessity often the product of rushed work.

### Written comments

Benjamin Mizer (U.S. Dep't of Justice) (CV-2016-0004-0037 and 0041): The Department strongly supports the amendment to Rule 23(f), which it initially proposed, to extend the time for seeking appellate review of a class-certification decision in cases in which the U.S. is a party. Any appeal by the U.S. government must be authorized by the Solicitor General, which depends on a deliberative process that typically requires substantial time. Multiple agencies and offices within the government might have different interests implicated in a specific case. Those interests are sometimes in tension, particularly in cases involving class actions. The current 14-day period for seeking review is particularly challenging because the court of appeals is expressly precluded from granting an extension of time, and it is not clear whether a district court might have the authority to extend the deadline. And unlike a notice of appeal, a petition under Rule 23(f) is not a mere

149

placeholder.  Instead, it is a substantive filing that must set
forth arguments for reversing the class certification decision.
Like the decision to seek review, the petition must be drafted by
DOJ attorneys and authorized by the Solicitor General.  Allowing
additional time for the government is consistent with various
provisions of the Appellate Rules.  For example, Appellate Rule
4(a)(1)(B) provides 60 days (rather than the usual 30) for filing
a notice of appeal in a case in which the government is a party.
Similarly, Appellate Rule en banc(a)(1) provides that a petition for
rehearing or rehearing *en banc* in a civil case may be filed
within 45 days (instead of 14 days) when the government is a
party.  The extension to 45 days in Rule 23(f) is a reasonable
resolution of the timing problem for the government.  Though it
extends the current 14-day period, it is short of the full 60
days permitted to file a notice of appeal.

        Lawyers for Civil Justice (CV-2016-0004-0039):  There should
be a right to interlocutory review of every certification
decision.  Rule 23(f) has not achieved its goal of increased
uniformity of district court practice regarding class
certification.  Actually, the number of grants of petitions for
review is modest -- about 5.2 grants per Circuit per year.  And
even where there is a grant, there is an opinion in only a
fraction of the cases, a total of 47 opinions during a seven-year
period studied in a 2008 report.  On average, that works out to
less than one opinion per Circuit per year.  The problem is that
the rule now says that the decision whether to allow an appeal is
in the "sole discretion of the court of appeals."  And the courts
of appeals have developed criteria that are so flexible that they
provide little guidance beyond "unfettered" decision-making.
There is a simple remedy -- providing appeal as of right from
decisions whether to certify a class.

        Cheryl Siler (Aderant CompuLaw Court Rules Department) (CV-
2016-0004-0058):  The extension of the period for filing a
petition for review in cases in which the United States or its
officer is a party is sensible.  this amendment would bring
Rule 23 in line with other rules setting deadlines for appeal.

        Pennsylvania Bar Association (CV-2016-0004-0064):  We
support this amendment.  It affords all parties the extended
period to seek review in cases in which the U.S. government is a
party.

        Defense Research Institute (CV-2016-0004-072):  DRI has no
problem with the extension of time for cases in which the
government is a party.  But in other cases as well, 14 days is
really not enough time.  That deadline is so short that it
hinders the best advocacy and thus impairs the presentation to
the court of appeals.  Both sides of the "v" would appreciate
have a bit more time.  Without that needed time, the lawyers best

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

situated to work on the petition may be unavailable due to other
professional commitments (in trial, for example) when the ruling
on class certification is made.  A 28 day period would be much
fairer, and more in keeping with what lawyers are accustomed to
have for such complicated matters.

151

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                 Page 90

Ascertainability

                    Washington D.C. hearing

    Jeffrey Holmstrand (DRI) (with written testimony):  This
should be addressed in the rule.  There is an open circuit split.
DRI proposes that Rule 23(a)(1) be amended as follows:

    (1) ~~the class is so numerous that joinder of all members is
    impossible~~ the members of the class are objectively
    identifiable by reliable and feasible means without
    individual testimony from putative class members and without
    substantial administrative burden, and as so identified are
    sufficiently numerous that joinder of all class members is
    impracticable;

This is an issue of fundamental fairness.  The proposal may be a
bit beyond what any court has required so far, but perhaps that's
because it's more succinct.  But doing this would require a
separate amendment package or republication because it is not
included in the current package.

                 Dallas/Ft. Worth (telephonic) hearing

    Peter Martin (State Farm Mutual Ins.):  The Committee should
amend the rule to ensure that class definitions provide an
administratively feasible way to identify every class member.
The Third Circuit has been in front of this issue, and its lead
should be followed.  This is a matter of fundamental fairness;
the defendant is entitled to know who is on the other side.

                      Written comments

    Frederick Longer (CV-2016-0004-0038):  As a lawyer who has
directly confronted the Third Circuit's evolving doctrine of
ascertainability, I believe that the restraint demonstrated by
the Committee in refraining from putting out a proposed rule
provision is wise.  "I commend the Committee's decision to await
further developments in the lower courts, rather than attempt to
draft a cure that may create more problems than it solves."

    Lawyers for Civil Justice (CV-2016-0004-0039):  The
Committee should add an explicit ascertainability requirement to
the rule.  Courts will almost certainly continue to find an
implicit requirement, but it makes sense to add it explicitly to
the rule.  The way to do that is to add a Rule 23(a)(5) as
follows:

    (5) the members of the class are objectively identifiable by
    reliable and feasible means without individual testimony
    from putative class members and without substantial

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

administrative burden.

Alternatively, Rule 23(b)(3) could be amended as follows:

> (3) the court finds that questions of law or fact common to class members, <u>including but not limited to the type and scope of injury,</u> predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

<u>Laurence Pulgram and 37 other members of the Council, the Federal Practice Task Force, and other leaders of the ABA Section of Litigation (CV-2016-0004-0057)</u>:  We believe that the Committee's decision to defer any action on ascertainability was a wise choice.

<u>Michael Ruttinger (Tucker Ellis) (CV-2016-0004-0068)</u>:  In the wake of the Supreme Court's denial of certiorari in cases addressing ascertainability, it is disappointing that the Committee has declined to propose draft language to provide guidance on these issues.  A distinct split now exists among the circuits.  The First, Second, Third, Fourth, and Eleventh Circuits require courts to consider whether there is an administratively feasible way to distribute relief.  But the Sixth, Seventh, and Eighth use a less rigorous standard.  The unsettled state of the law leads to inconsistent results.

<u>Defense Research Institute (CV-2016-0004-072)</u>:  DRI urges the Committee to move forward on ascertainability.  Recent decisions in the Sixth, Seventh, and Ninth Circuits have created a clear need for addressing this issue by rejecting the view of the Second, Third, Fourth, and Eleventh Circuits.  It may be that the Supreme Court will one day resolve the dispute in terms of the present rule.  DRI believes that the Committee should pretermit the need for such a ruling by adopting an express and robust ascertainability.  The need for such guidance in the rule is clear.  Class actions that bog down in efforts to determine class membership are as inefficient as those that bog down in making individual determinations of liability.  The Sixth and Seventh Circuits' views really result from the absence of language in the rule itself.  One way would be to adopt the method DRI proposed to the Committee in September, 2015, by amending Rule 23(a)(1) as follows:

> ~~the class is so numerous that joinder of all members is impracticable~~ <u>the members of the class are objectively identifiable by reliable and feasible means without individual testimony from putative class members and without substantial administrative burden, and as so identified are sufficient numerous that joinder of all class members is</u>

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

impractical;

Among many benefits of this approach, it would indirectly reduce the need to resort to cy pres remedies.

Washington Legal Foundation (CV-2016-0004-087): Nothing in the rule now explicitly requires that class members be ascertainable. Such a requirement would not only protect defendants by ensuring that all people who will be bound by the judgment are clearly identifiable, but it would also safeguard the rights of absent class members to receive fair notice. WLF believes that an unascertainable class is no class at all. Adding the requirement to the rule would bring it into conformity with the widespread practice of many federal courts. Forcing defendants to guess how many people will claim, for example, to have purchased a product, cannot comport with due process or the purpose of Rule 23. Class certification surely cannot require a defendant to forfeit its right to litigate substantive defenses to the claims. As the ALI Aggregate Litigation project recognized, there is no point in aggregate litigation if the same issues will have to be revisited in other proceedings. See ALI § 2.02 comment (e).

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                                   Page 93

Pick off

                              Washington D.C. hearing

    Mark Chalos (Tenn. Trial Lawyers Ass'n):  He is not aware of
pick-off problems arising since the Supreme Court's Campbell-
Ewald decision.

    Stuart Rossman (Nat'l Consumer Law Ctr. & Nat. Ass'n of
Consumer Advocates) (with written testimony, supplemented by CV-
2016-0004-079):  There have been a number of cases since the
Supreme Court's Campbell-Ewald decision, but no major problems.
The courts are handling this just fine by themselves.  Even
before the Supreme Court's decision, the courts were handling the
matter without difficultly.

                              Written Comments

    Laurence Pulgram and 37 other members of the Council, the
Federal Practice Task Force, and other leaders of the ABA Section
of Litigation (CV-2016-0004-0057):  We believe that the
Committee's decision to defer any action on pick off was a wise
choice.

    Michael Ruttinger (Tucker Ellis) (CV-2016-0004-0068):  The
Supreme Court's decision in Campbell-Ewald Co. v. Gomez, 136
S.Ct. 663 (2016), left open the possibility that a defendant
could moot a class action by consenting to the entry of judgment
against it and depositing money in escrow with the court.  This
open question has generated confusion with the lower courts.
Although the Ninth Circuit rejected a tender of payment in Chen
v. Allstate, 819 F.3d 1136, 1145 (9th Cir. 2016), district courts
have demonstrated a greater degree of uncertainty.  This
uncertainty poses a real risk of a continued split among the
lower courts and, consequently, forum shopping.  Should a
consensus not emerge, the Committee should consider amending the
rule.

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                                     Page 94

Other issues raised

Washington D.C. hearing

John Parker Sweeney (DRI): He would focus his comments on
no injury classes. The Supreme Court's decision in Spokeo
confirmed the basic Article III principle that one must suffer a
concrete harm to file a suit. But American businesses face class
actions on behalf of large numbers of people who have not
suffered any injury. Nonetheless, the lawyers who file these
cases seek to recover the statutory minimum for every member of
the class, leading to such enormous exposure that businesses have
no choice but to settle. In effect, this results in punishing
companies for technical violations that really did no harm to
anyone. Prof. Joanna Shepard of Vanderbilt recently did a study
showing that during the period 2005 through 2015 there were some
454 "no injury" class actions resulting in total settlement
payments of $4 billion. The sensible solution would be a rule
requiring that classes be defined in a way that limits the class
in (b)(3) cases to those who have suffered an actual injury.
Surveys show that Americans broadly regard that sort of
requirement as appropriate in class actions. But this idea is
not in the current amendment package, and the current package
should not be held up to add this idea.

Stuart Rossman (Nat'l Consumer Law Ctr. & Nat. Ass'n of
Consumer Advocates) (with written testimony): Another problem
that has arisen in cases involving consumer issues is that on
occasion courts will entertain defense motions to strike class
action allegations based only on the complaint. It would be
desirable for the rule to say somewhere that certification
decisions should not be based solely on the complaint. But that
issue is not one that should hold up this amendment package. The
Supreme Court has made it clear that these decisions should not
be based only on the pleadings. Sufficient time for needed
discovery must be allowed. That is also consistent with the 2003
amendments to Rule 23(c), removing that prior provision that the
decision be made "as soon as practicable after commencement of an
action." In addition, his groups agree that citation in the Note
to ALI § 3.07 is a good and productive way of dealing with the
contentious cy pres issue.

Mary Massaron (President of Lawyers for Civil Justice): The
reference to § 3.07 of the ALI Principles of Aggregate Litigation
should be removed. LCJ has sought an outright ban in the rule on
use of cy pres. But this citation to the ALI section essentially
puts the rule's imprimatur on the practice. This is a
substantive change that raises Rules Enabling Act issues.
Courts do cite the ALI treatment, so there is no need to do so
here in the Note. In addition, LCJ favors revising Rule 23(a)(3)
so that typicality requires the court to focus on the "type and

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

scope" of injury sustained by class members and ensure that all within the class have the same type and scope of alleged injury as the named plaintiff.  More generally, cy pres should be banned; although a residue after distribution to the class might justify a second distribution, if the class members who make claims have been fully compensated making other uses of the money is essentially punitive and beyond the authority of the procedure rules.

   <u>Brian Wolfman (Georgetown Law School) (testimony and prepared statement)</u>:  The reference in the Note to the ALI treatment of cy pres is not an endorsement and should be retained.

                          Phoenix hearing

   <u>Thomas Sobol</u>:  Some who have made proposals for amendment to Rule 23 are seeking to curtail the legitimate authority of federal judges.  Rule 23 is a tool for increasing that power in appropriate cases.  Attacks on that power should be rejected unless supported by a clear and convincing showing of need for change.

   <u>Michael Nelson (testimony & CV-2016-9994-077)</u>:  The time has come to recognize that Rule 23(f) is not working.  Some circuits almost never allow interlocutory review of district court orders granting class certification.  Something stronger than the unbridled discretion built into the current rule should be adopted.  For example, courts may insist that the petition show that failure to review at this point will be the "death knell" of the case.  How does one do that for a defendant?  Yet interlocutory review is very valuable.  What would we do, for example, without the Third Circuit decision in Hydrogen Peroxide?  So the rule should be revised to say that the court of appeals "should," or perhaps "must" grant the request for review.  True, there are not any statistics about cases in which review was denied, and the court later reversed certification after entry of final judgment.  But that's because there is always a settlement.  If the verb is not a strong as "must," however, it is not certain what standard should be employed to guide the courts in making this decision.

   <u>Scott Smith</u>:  There should be an absolute right to appeal under Rule 23(f).  Indeed, this should be classified as a final judgment, although there should not be a requirement to appeal immediately if the defendant does not want to do so.  In addition, Rule 23 should be amended to solve the problem created by Shady Grove, and provide that a federal court may not certify a class if the state law on which the claims are based forbids class treatment of such claims.  This is the point made by Justice Ginsburg in Shady Grove (in dissent).  A number of states

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

have statutes like the New York statute involved in that case and
the deserve respect.

### Dallas/Ft. Worth (telephonic) hearing

Timothy Pratt (Boston Scientific): There should be an
automatic right to appeal. Certification is a pivotal decision
in a case. From the defendant's perspective, it "turns a
snowstorm into an avalanche." Delaying review of that decision
until final judgment on the merits builds in more delay than
allowing immediate review at that point. It also provides
plaintiffs with a powerful settlement weapon. And this could be
added to the rule without the need for republication because it
has been brought up throughout the process. Many speakers have
endorsed this addition to the rule in public fora. There would
be no need to re-publish.

Gerald Maatman (Seyfarth Shaw): The Committee Note to the
2003 amendments to Rule 23(c)(1)(A) recognized that a trial plan
is a valuable item to consider in making a class certification
decision. Experience since then has made this proposition
indisputable because it sheds light on whether the case is
manageable for purposes of class-wide adjudication. A simple
change to Rule 23 requiring the presentation of a viable trial
plan in connection with any motion for class certification would
therefore be very beneficial. This is the approach adopted by
the California Supreme Court in Duran v. U.S. Bank Nat. Ass'n, 59
Cal. 4th 1, 27 (2014), which dealt with statistical proof. This
requirement should be applied to all class actions, not only
those dealing with statistical proof. Deferring serious
consideration of these issues until the eve of trial can produce
a considerable waste of resources. In light of the central
importance of certification decisions, Rule 23(f) should be
amended to guarantee appellate review of all decisions certifying
classes. In addition, Rule 23 should be amended to address the
proper application of proportionality to pre-certification
discovery. It is true that the certification decision looms as
the most important one in many cases (for which reason I favor
amending Rule 23(f) to enable an immediate appeal of class-
certification orders), but that does not necessarily mean that
expansive discovery is per se proportional. Finally, it would be
desirable for a rule amendment to address the standards for
certification for purposes of settlement. The Rule 23
Subcommittee initially considered that possibility, but did not
proceed with a proposed amendment. Manageability should not
matter to settlement certification, even in a case involving the
laws of multiple states, and the rule should say so.

Prof. Judith Resnik (Yale Law School) (testimony and CV-
2016-0004-092): Amending Rule 23(f) to guarantee immediate
appellate review of all class-certification orders would not be

desirable. There are a lot of routes to appeal in addition to
23(f), such as mandamus. Opening more routes leads to delay for
plaintiffs and burden for the courts.

    Peter Martin (State Farm Mut. Ins. Co.): I favor amending
Rule 23(f) to guarantee an immediate appeal. The rule has not
fulfilled its promise. The rate of grants of review has fallen.
In 2007, it was around 40%, but now it is about 20%. As the
Fifth Circuit pointed out in Castano, class certification tends
to draw claims to the action. Consistency in class-certification
rulings is a paramount concern, and making appellate review
available as a matter of course is a way to assure consistency.
In addition, the Committee should amend the rule to eliminate the
possibility of a no injury class action. That violates Article
III. In addition, the rule should be amended to make it clear
that certification under Rule 23(c)(4) is allowed only when
common issues predominate in the case as a whole. That is the
position that the Fifth Circuit took in Castano, but since then
other courts have moved away from that.

    Patrick Paul (Snell & Wilmer): Rule 23(f) should be amended
to guarantee a right to appellate review of any order granting or
denying class certification. If the class is certified, the
settlement pressure becomes extreme. If certification is denied,
similar pressures apply to the plaintiff, who almost certainly
cannot support litigation on the merits in an individual action.

                          Written comments

    Lawyers for Civil Justice (CV-2016-0004-0039): LCJ favors
rule changes to deal with the problem of no injury class actions.
Prof. Shepherd's study of such cases shows that some $4 billion
was paid to settle such cases during the period 2005-15, but that
only about 9% of this huge amount went to class members. An
average of 37.9% went to class counsel. A simple solution would
be amend Rule 23(a)(3) as follows:

    (3) the claims or defenses, and type and scope of injury of
    the representative parties are typical of the claims, or
    defenses, and type and scope of injury of the class . . .

The Committee should also remove the reference to § 3.07 of the
ALI Aggregate Litigation Project from the Committee Note. This
is an implicit endorsement of cy pres, which the Committee has
chosen not to add to the rule. If the Committee is going to do
anything about cy pres, it should be to clarify that Rule 23
provides no basis for such arrangements.

    Laurence Pulgram and 37 other members of the Council, the
Federal Practice Task Force, and other leaders of the ABA Section
of Litigation (CV-2016-0004-0057): We believe that the

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Committee's decision to defer any action on cy pres was a wise choice.

Michael Ruttinger (Tucker Ellis) (CV-2016-0004-0068): The Committee should monitor the issue of the no-injury class action. Many hoped that the Supreme Court's decision in Spokeo, Inc. v. Robins, 136 S.Ct. 1540 (2016), would clarify the issues, but the decision did not do so. Should the current confusion about what is a "concrete and particularized" injury continue or deepen, the Committee should consider an amendment to address the question. A bright-line rule is necessary to guide lower courts, particularly as data breach litigation has grown in importance. Those data breach cases tend to be filed so shortly after notice of a data breach that there will rarely be sufficient time for consumers to suffer actual harm. Allowing data breach plaintiffs to claim "concrete and particularized" damages before any real harm has occurred is inconsistent with much long-standing precedent, but the Spokeo decision provides little guidance for how to handle these cases.

Defense Research Institute (CV-2016-0004-072): Rule 23(f) should provide an automatic right to review of all class-certification decisions at the request of any party. The conundrum facing plaintiffs and defendants due to the absence of appeal of right was recognized by the Note to the 23(f) amendment that is now in force. The actual operation of the current rule shows that it is not up to the task. The circuits are uneven in their exercise of their discretion in deciding when to entertain appeals. In recent years, fewer than 25% of the petitions for review have been granted. Rule 23 should also prohibit class certification in federal court for claims that are based on statutes that expressly prohibit class treatment. The Supreme Court's Shady Grove decision created a paradoxical, unintended, and unjustifiable policy result. The problem results from the Court's reading of the rule as mandating class certification when ever the rule's provisions are satisfied, and without regard to the limitations of underlying law. A good solution would be to reword Rule 23 so that it clearly vests discretion in the district court to grant or deny certification. DRI recommends, however, that the following new Rule 23(a)(5) be added:

> (5) the action is not brought under a state statute that
>     (i) confers a substantive right; and (ii) prohibits
>     class action treatment or classwide recoveries.

DRI also urges the Committee to address "no injury" classes. Today plaintiffs who admit they have suffered no harm regularly sue businesses, and act on behalf of large classes made up of similarly uninjured people. DRI recommends that Rule 23(b)(3) be amended to solve this problem:

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                    Page 99

    (3)  the court finds that <u>each class representative and each
        proposed class member suffered actual injury of the
        same type; that the existence, type and extent of each
        class member's injury, as well as the amount of
        monetary relief due each class members, can be
        accurately determined for each class member on the
        basis of classwide proof, without depriving the
        defendant of the ability to prove any fact or defense
        that defendant would be entitled to prove as to any
        class member if that class member's claims were
        adjudicated in an individual trial; that</u> questions of
        law or fact common to class members predominate over
        any questions affecting only individual members, and
        that a class action is superior to other available
        methods for fairly and efficiently adjudicating the
        controversy.  The matters pertinent to ~~these~~ findings
        <u>of predominance and superiority</u> include:

The Supreme Court's Spokeo decision has not reduced the need for
this amendment.

    <u>Nelson Mullins Riley & Scarborough LLP (CV-2016-0004-073)</u>:
We support amending Rule 23(f) to provide appellate review as of
right.  The certification decision is the tipping point in
litigation.  Given its centrality, immediate review should be
available.  Instead, the current rule has permitted divergent
approaches across circuits on when or whether to allow review.

    <u>Washington Legal Foundation (CV-2016-0004-087)</u>:  Rule 23
should be amended to prevent plaintiffs who are denied class
certification from an end run around Rule 23(f) by dismissing the
individual plaintiff's suit and appealing from that dismissal.
The Supreme Court has granted certiorari on that issue in
Microsoft v. Baker, but if it does not resolve the issue this
inequitable possibility should be foreclosed by rule amendment.

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                                   Page 100

```
                     Rule 23 Subcommittee
               Advisory Committee on Civil Rules
                        Conference Call
                         March 1, 2017
```

On March 1, 2017, the Rule 23 Subcommittee held a conference call. Participating were Judge Robert Dow (Chair, Rule 23 Subcommittee), Judge John Bates (Chair, Advisory Committee), Elizabeth Cabraser, Dean Robert Klonoff, John Barkett, Prof. Edward Cooper (Reporter, Advisory Committee), Prof. Richard Marcus (Reporter, Rule 23 Subcommittee), and Lauren Gailey (Rules Law Clerk).

The purpose of the call was to review ideas emerging from the public comment period about modifying the preliminary draft published in August, 2016. Before the call, Prof. Marcus circulated a marked up version of the preliminary draft, including draft changes to parts of the rule and Note, and footnotes explaining some draft changes and raising issues about other things that might be changed. There were 33 footnotes in this document.

Based on a review of the redraft, Judge Dow circulated an email in advance of the call identifying a number of footnotes that seemed to present "consent" issues that could be adopted without the need for discussion by the Subcommittee. In addition, he identified six topical areas for discussion and a number of "miscellaneous" footnotes that seemed to warrant discussion but not to fit within the six topical categories.

At the beginning of the call, the question was posed whether any on the call wanted to discuss the "consent" items. There was no interest in discussing any of those, so they would be considered consented to.

Discussion then turned to Judge Dow's six categories:

                    (1) Notice methods

The proposed amendment do Rule 23(c)(2)(B) regarding individual notice in Rule 23(b)(3) class actions had received considerable attention during the public comment period. Concerns were expressed that it might be taken to authorize online methods of notice that would not really be effective. Others said that the amendment was not necessary because courts have already begun using methods of notice other than first class mail. But strong support for amending the rule had also been expressed, on the ground that it is necessary to recognize that methods of communication are changing and that it is important for the rule to take note of that major development.

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                          Page 101

The first proposed change was to the rule amendment itself -
- adding a phrase to the new sentence at the end of the rule
provision:

> The notice may be by <u>one or more of the following:</u> United
> States mail, electronic means, or other appropriate means.

This addition was initially suggested by Judge Jesse Fuhrman
(S.D.N.Y.) a new member of the Standing Committee who attended
the hearing in Phoenix on the amendment package.  Several others
who commented supported this change, and supported the idea of
"mixed notice" or using multiple methods.  Using some electronic
methods, for example, could be augmented by also using other
electronic means.

The consensus was to add the above words to the rule-
amendment proposal, and discussion shifted to modifications to
the Note that addresses this rule change.  One change is to
soften the draft Note language saying that forms other than first
class mail are "more reliable" ways of giving notice.  Instead,
the Note can say:

> But technological change since 1974 has <u>introduced</u> ~~meant
> that~~ other forms of communication <u>that</u> may <u>sometimes provide
> a be more</u> reliable <u>additional or alternative method for
> giving notice</u> ~~and important to many~~.  <u>Although it may often
> be that first class mail is the preferred primary method of
> giving notice, c</u>~~C~~ourts and counsel have begun to employ new
> technology to make notice more effective~~, and sometimes less
> costly~~.

This change was approved, except that the published phrase "and
sometimes less costly" seemed unnecessary and might best be
removed due to sensitivity about excessive concern with the cost
of notice undermining its effectiveness.  (That phrase is
therefore overstricken in the quotation above.)

Attention shifted to the reference in the redraft of the
Note to the "likely reading ability of the class" and "arcane"
legal terminology. It was noted that Rule 23(c)(2)(B) already
directs that notice "clearly and concisely state in plain, easily
understood language" a variety of things listed in the rule.  We
are only clarifying the methods of giving notice that satisfies
that rule provision.  Restoring that language to the version of
the rule included in the package may be helpful.  It would also
be useful to include in the Note a reminder of what the rule has
said since 2003, adding attention to the likely capacities of the
class in understanding and using the form of notice recommended
to the court.  This clarifications may improve practice.  Prof.
Marcus is to try to revise the Note language on this point.

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Attention shifted to draft language concerning the need to attend more closely to the array of choices presented in the current environment than in the past, when first class mail was probably conceived as the default method. The draft language was:

> This amendment recognizes that courts may need to attend more closely than in the past to the method or methods of giving notice; simply assuming that the "traditional" methods are best may disregard contemporary communication realities.

It was objected that this seemed to criticize courts for what they had done in the past, which should not be the goal. Indeed, as recognized elsewhere in the Note, the courts had already begun to use alternative means of notice without a change to the rule. The focus, instead, should be on the lawyers, and their obligation to advise the court about what is most effective for this class in today's media world. Perhaps a reference to the Comment on Rule 1.1 of the ABA Ethics Code regarding competence including familiarity with technological change would be in order. Again, Prof. Marcus is to try to devise superior substitute language, and perhaps to relocate some of the added language.

A caution was raised: This is a very long Note. We are mainly talking about adding more to it. We should be cautious about doing that unless really needed. A reaction was that, though it is generally worthwhile to say relevant things in the Note it is also important to be aware of how long the Note can get. Although there is a question about whether most lawyers attend to what's in the Note, it can be a "treasure trove."

There was some discussion of ways in which a longer Note may be helpful to the profession. There is also the temptation to say things in the Note about subjects related to the rule change but not precisely about it. For example, the content of the notice to the class is not really the focus of the rule change we have been discussing, which is the method of giving notice, but it is fairly closely related to that subject, and may actually be pertinent to the form of notice. So saying something about it can be useful.

In this instance, the goal is to link the method to the message. One need not go as far as Marshall McLuhan ("The medium is the message.") to say that there is a link between the medium and the message.

### (2) Rule 23(e)(1) concerns

The second set of issues focused on comments submitted by the ABA about the way in which the decision to send notice to the class is handled. The ABA submission urged that the term "preliminary approval" should not be disapproved because it has been in use for a long time and is widely recognized. Others, however, urged that the standard for sending notice should be softened because it would result in a de facto signal of approval even though the term "preliminary approval" was not used.

The discussion focused on the terminology used in the beginning of the Note regarding the decision to send notice. As published, the Note said that the decision to send notice "is sometimes inaccurately called 'preliminary approval.'" Is it really necessary to say this is inaccurate? One view was that this seems needlessly tendentious. Another view was that it would be useful to foster what should be a learning process for the bar about what this decision is. Another idea was to cite the ALI Aggregate Litigation principles on this subject; they oppose use of the term "preliminary approval."

The consensus was that Professor Marcus should try to reword that portion of the Note to avoid calling the current practice "inaccurate" but also convey the idea that the decision is a tentative one, and does not signify that approval is a done deal.

Discussion shifted to what has been called the Prandini issue -- the idea that the negotiation of the substance of the proposed settlement and the negotiation of the attorney fees should be done separately. The ABA submission urged that proposed 23(e)(1)(B)(i) be amended to exclude attention at the 23(e)(1) stage to Rule 23(e)(2)(C)(iii) (the terms of any attorney fee award), in recognition of this practice.

The reaction to this idea was that the court should focus on attorney fees at the time it is deciding whether it is likely to approve the overall deal and that notice is therefore warranted. Whether or not that topic is the subject of combined or separate negotiation, it is an important part of the overall package that will be sent to the class if notice goes out. Objectors often focus on attorney's fees, so the court should too. Indeed, Rule 23(h) directs that the class receive notice of the attorney fee application, so that would ordinarily be included with the other notices required by Rules 23(c)(2) and (e)(1). The consensus was not to exclude that from (e)(1).

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                              Page 104

### (3)  Citing ALI § 3.07

Several comments raised questions about the sentence in the Note citing § 3.07 of the ALI Aggregate Litigation Principles. One possibility would be to cite cases that rely on that section rather than the section itself, but citing cases is generally not desirable in a Note because they may be superseded by other cases.

The question, then, was whether citing § 3.07 really added much.  Courts seem to have found that section on their own; indeed, §3.07 may be the section of the Principles that is most frequently cited by courts.  The consensus was to remove the sentence citing § 3.07.

Discussion shifted to the previous sentence.  In the current Note, it is as follows:

> And because some funds are frequently left unclaimed, it is often important for the settlement agreement to address the use of those funds.

For one thing, the word "use" seems unduly vague.  In its place, "disposition" was suggested.  Attention then focused on the word "often."  Actually, this is a dynamic area but that qualifier seems not useful.  There almost always are going to be funds left over, and we should not be saying this is only "often" a concern. It is virtually always a concern.  If it is necessary to re-notice the class then regarding their disposition, that is hardly a positive.  So that word should probably come out.  But the idea is important, and it is important that this issue be included before notice is directed to the class.

### (4)  Claims rate
### (5)  Relative success of distribution

These two topics were combined for discussion.  The starting point was that proposed 23(e)(2)(C)(ii) tells the court to take account of "the effectiveness of the proposed method of distributing relief to the class, including the method of processing class-member claims, if required" when assessing the adequacy of the relief provided by the settlement.  The concern was that this might become "an absolute."  One suggestion was that the rule itself be revised to add the words "as compared to other, reasonably available methods of distribution under the circumstances" after "to the class."

The consensus was that adding this language to the rule itself was not justified.  It should be clear that the rule does not require perfection.  Indeed, that is why the Note emphasizes making provision for disposition of the residue.  What the Note

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                      Page 105

says is that the parties should demonstrate to the court that
they have employed a method of delivering relief to the class
that is likely to deliver relief to the class.  It does not say
the method must result in 100% success on that score.  But being
attentive to being effective is worth emphasizing.

        Instead of changing the rule, attention to the Note's
treatment of the claims rate question seemed the right way to
approach these concerns.  The first point at which claims rate
appears was in the Note about (e)(1):

        If the notice to the class calls for submission of claims
        before the court decides whether to approve the proposal
        under Rule 23(e)(2), it may be important to provide that the
        parties will report back to the court on the actual claims
        experience.

This passage drew the observation that this is not how things
usually happen.  To the contrary, given the contingencies
involved, it would be very unusual for the claims process to be
completed before the approval decision under Rule 23(e)(2)
occurs.  Defendants will not be willing to fund the settlement
until final approval has occurred.  Indeed, they usually are not
willing to fund the settlement until all objections and appeals
are completely resolved.  That's one of the reasons bad faith
objectors can exert such pressure.

        The reality, then, is that distribution usually does not
occur until final approval has happened and all appeals are over.
Then the question is whether or when the court learns about the
results of that distribution effort.  One witness urged that the
courts should have a "fiduciary" obligation to follow up and
ensure full distribution of relief.  That requirement is not in
this package.

        The contemporary reality was described as regularly
involving "continuing jurisdiction" for the district court during
the administration of the claims process, something that might
take quite a period of time.  And reporting back about its
success would normally be a feature of that continuing
supervision.  But that all had to come considerably later, and
the Note material quoted above is about the Rule 26(e)(1)
decision to send notice to the class.  That's a premature
discussion and the consensus was to delete the discussion at that
point.  That shortens the Note a little bit.

        Another point at which "claims rate" appears in the 23(e)(1)
Note is in regard to the proposed attorney's fees.  That also
seems premature at the point the decision to give notice must be
made, and can be removed from the Note:

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017 <span style="float:right">Page 106</span>

> In some cases, it will be important to relate the amount of
> an award of attorney's fees to the expected benefits to the
> class~~, and to take account of the likely claims rate~~.

The court can have some justified expectation about the benefits
to the class when the 23(e)(1) decision to give notice must be
made, and it should consider the effectiveness of the method
selected to give notice and, if necessary, to make claims.  But
beyond that it cannot sensibly forecast a likely claims rate.  We
do not want to make it seem necessary that the parties present
expert evidence making such a forecast to support giving notice
to the class.

Attention shifted to the reference to claims rate in the
Note on final approval under Rule 23(e)(2).  As published, that
said:

> Measuring the proposed relief may require evaluation of the
> proposed claims process and a prediction of how many claims
> will be made; if the notice to the class calls for pre-
> approval submission of claims, actual claims experience may
> be important.

An initial reaction was that this seems a balanced treatment
of the situation.  But the idea of focusing on "a prediction of
how many claims will be made" might be troublesome.  In a sense,
that gets at the usual reality that the payout to the class
happens only after final approval and exhaustion of all appeals.
So a forecast might make sense.  But asking for one in the Note
is likely to do more harm than good.  Trying to make such a
forecast is extremely difficult, could cost a lot, and might
readily be wrong instead of right.

As noted earlier, district courts usually retain
jurisdiction over the administration of the settlement.  That
commonly involves reporting back to the court on the results of
that distribution effort.  It may lead to a revised distribution
effort.  That does not lead to a "retroactive disapproval" of the
settlement because of a low claims rate.  How could one undo the
settlement -- by making all the class members who had received
relief pay it back and resuming the litigation?

A different concern is that the claims process itself might
be set up in a way that obviously will deter or defeat claims.
That is illusory relief to the class.  But the Note does admonish
the court to evaluate the proposed claims process; that seems to
cover the point in terms of what the court can do at that point.

168

168168

168168

168168

168168

168168

168168

168168

168168

168168

168168

168168

168168

168168

168

168

168

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017

Page 107

Attention turned to a bracketed proposal to add language
about distribution to the Note:

> Because 100% success in distribution can very rarely be
> achieved, the court should not insist on a distribution
> method that promises such success; the court's focus should
> instead be on whether the method proposed is justified in
> light of other reasonably available methods.

This Note language might ensure that courts do not treat
perfection in distribution as a requirement or an expected
result. The reality is that "it never happens that everyone
cashes the check." There is always some money left over. That's
why some provision in the settlement agreement for disposition of
the residue is important. But saying "100% success in
distribution can very rarely be achieved" is not useful.

The question was raised whether this addition really would
be useful. As published for comment, the Note says that the
court should scrutinize the method of claims processing to ensure
that it facilitates filing legitimate claims. This does not seem
to add usefully to that admonition already in the Note. This
addition should be dropped.

### (6) Objector issues

An initial question was whether proposed (e)(1)(A) should
direct that objectors state whether they were objecting about
their own assertedly unique problems, on behalf of a subset of
the class, or on behalf of all class members. Objections to this
provision have been that it (a) invites objections on behalf of
others, and (b) should require that the objector satisfy
something like Rule 23(a)(4) (on adequacy of representation) to
represent anyone else.

The consensus was that these arguments do not present
persuasive reasons for changing the amendment package. The rule
already says that class members may object. It does not cabin
what objections they make, and courts must consider those
objections. It may well be that courts would look askance at
objections by a class member who really had nothing at stake in
regard to the matter raised by the objection. But if the
objection is a cogent one, the court should consider it whether
or not the objector has a direct stake in the resolution of the
objection.

A second objection was that the rule does not state a
standard for approving payment to an objector or objector
counsel. It was noted that the Subcommittee discussed how to
articulate such a standard in a useful way and did not find a
good way to do so. The resolution of this objection to the text

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

of the rule was that this is a place to "let judges be judges."

A related question arose, however, in regard to the comment in the Note that "class counsel sometimes may feel that avoiding the delay produced by an appeal justifies providing payment or other consideration to these objectors." As pointed out during the public comment period, that statement might make it seem that this is a satisfactory reason to approve a payoff for such objectors. The redraft sought to prevent that interpretation and offered two ways of doing so. The consensus was to add the following to the Note after the material quoted above:

> Although the payment may advance class interests in a particular case, allowing payments perpetuates a system that can encourage objections advanced for improper purposes.

A third question that arose during the public comment period was whether there was a major loophole in the amendment proposal because bad faith objectors or objector counsel might arrange that payments be made to organization with which they are affiliated, and contend that court approval is not required when they do that.

In response to this third problem, a change to proposed 23(e)(5)(B) deleted the words "to an objector or objector's counsel," and that phrase was eliminated from the tag line as well and replaced with the phrase "in connection with an objection." That would make the approval requirement apply no matter who was to get the payment so long as it was in connection with an objection.

Attention shifted to the Note material and there was consensus approval for addition of the following to the Note:

> Although such payment is often made to objectors or their counsel, the rule also requires court approval if the payment is instead to an organization or other recipient, so long as it is made in connection with forgoing or withdrawing an objection or appeal.

A question was raised, however, about additional material that was included in the Note published for comment. Specifically, the following seemed to suggest a standard for approving a payment:

> If the consideration involves a payment to counsel for an objector, the proper procedure is by motion under Rule 23(h) for an award of fees; the court may approve the fee if the objection assisted the court in understanding and evaluating the settlement even though the settlement was approved as proposed.

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                Page 109

This comment is about a Rule 23(h) motion, and Rule 23(h) has a
Committee Note that addresses criteria for payments to objectors.
There is no reason to get into that issue here, so the consensus
was to delete the material after "award of fees."

### Other matters

The final subject for discussion was the added language
about maintaining confidentially of information about agreements
in connection with the proposal.  During the public comment
period one witness expressed concern that the risk that saying
the class would have access to everything that the court received
could require revelation of sensitive materials including such
things as the number of opt outs that would trigger a right for
the defendant to withdraw from the agreement.  That was addressed
in the draft as follows:

> That would give the court a full picture and make ~~this~~
> appropriate information available to the members of the
> class[, while maintaining confidentiality of sensitive
> information such as agreements that defendant may withdraw
> if more than a certain number of class members opt out].

The consensus was that the bracketed material above was not
useful.  The question whether substituting "appropriate" for
"this" is helpful remained open.  It was noted that ordinarily
these matters are handled by separate agreements and not part of
the settlement agreement.  On the other hand, they are to be
"identified" to the court reviewing the proposal, and thus might
be subject to review by class members if submitted pursuant to
the frontloading provisions of proposed Rule 23(e)(1).

### Next steps

Prof. Marcus will attempt to make the changes agreed upon
during this conference call and circulate by March 3 the next
generation of the revisions of the published preliminary draft.
The Subcommittee will attempt to confer by phone during the week
of March 13 to resolve remaining matters.  Ideally, many
remaining issues can be resolved by email without the need to
discuss in the next conference call.  Final agenda materials will
need to be at the A.O. by the first week of April.

Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                                    Page 110

## C. RULES 62, 65.1: STAYS OF EXECUTION

The proposed amendments of Rule 62 aimed at three changes, described more fully in the Committee Note. The automatic-stay provision is changed to eliminate the "gap" in the current rule, which ends the automatic stay after 14 days but allows the court to order a stay "pending disposition of" post-judgment motions that may be made as late as 28 days after judgment. The changes also expressly authorize the court to dissolve or supersede the automatic stay. Express provision is made for security in a form other than a bond, and a single security can be provided to last through the disposition of all proceedings after judgment and until final disposition on appeal. The former provision for securing a stay on posting a supersedeas bond is retained, without the word "supersedeas." The right to obtain a stay on providing a bond or other security is maintained without departing from interpretations of present Rule 62(d), but with changes that allow the security to be provided before an appeal is taken and that allow any party, not only an appellant, to obtain the stay. Subdivisions (a) through (d) are also rearranged, carrying forward with only a minor change the provisions for staying judgments in an action for an injunction or a receivership, or directing an accounting in an action for patent infringement.

The changes in Rule 65.1 are designed to reflect the expansion of Rule 62 to include forms of security other than a bond.

There was little comment, and no testimony, on Rule 62 or Rule 65.1. The summary of comments reflects only short and general statements approving the amendments. No one suggested the need for other changes.

The Committee recommends approval for adoption of amended Rules 62 and 65.1 substantially as published. One change is recommended to conform Rule 65.1 to proposed Appellate Rule 8(b), which is being amended to reflect the changes in Rules 62 and 65.1. These changes remove all references to "bond," "undertaking," and "surety" from Rule 65.1 ("bond" remains in Rule 62, in keeping with strong tradition). Focusing Rule 65.1 only on "security" and "security provider" is clean, and avoids any possible implication that a surety is not a security provider.

### Rule 62 as Published

1 **Rule 62. Stay of Proceedings to Enforce a Judgment**
2
3 (a) AUTOMATIC STAY.; Exceptions for Injunctions, Receiverships, and Patent Accountings.
4      Except as provided in Rule 62(c) and (d), stated in this rule, no execution may issue on a
5      judgment, nor may and proceedings be taken to enforce it; are stayed for 30 days until 14
6      days have passed after its entry, unless the court orders otherwise. But unless the court
7      orders otherwise, the following are not stayed after being entered, even if an appeal is
8      taken:
9      (1) an interlocutory or final judgment in an action for an injunction or a receivership; or
10     (2) a judgment or order that directs an accounting in an action for patent infringement.

Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                 Page 111

11
12    (b)**Stay Pending the Disposition of a Motion.** On appropriate terms for the opposing party's
13          security, the court may stay the execution of a judgment — or any proceedings to enforce
14          it — pending disposition of any of the following motions:

15          (1) under Rule 50, for judgment as a matter of law;
16          (2) under Rule 52(b), to amend the findings or for additional findings;
17          (3) under Rule 59, for a new trial or to alter or amend a judgment; or
18          (4) under Rule 60, for relief from a judgment or order.
19
20    (b) STAY BY BOND OR OTHER SECURITY. At any time after judgment is entered, a party may
21          obtain a stay by providing a bond or other security. The stay takes effect when the court
22          approves the bond or other security and remains in effect for the time specified in the
23          bond or security.
24
25    (c) STAY OF AN INJUNCTION, RECEIVERSHIP, OR PATENT ACCOUNTING ORDER. Unless the court
26          orders otherwise, the following are not stayed after being entered, even if an appeal is
27          taken:

28          (1) an interlocutory or final judgment in an action for an injunction or receivership; or
29          (2) a judgment or order that directs an accounting in an action for patent infringement.
30
31    (d_e_) INJUNCTION PENDING AN APPEAL. While an appeal is pending from an interlocutory order or
32          final judgment that grants, continues, modifies, refuses, dissolves, or denies refuses to
33          dissolve or modify an injunction, the court may suspend, modify, restore, or grant an
34          injunction on terms for bond or other terms that secure the opposing party's rights. If the
35          judgment appealed from is rendered by a statutory three-judge district court, the order
36          must be made either:

37          **(1)** by that court sitting in open session; or
38          **(2)** by the assent of all its judges, as evidenced by their signatures.
39
40    (d) STAY WITH BOND ON APPEAL. If an appeal is taken, the appellant may obtain a stay by
41          supersedeas bond, except in an action described in Rule 62(a)(1) or (2). The bond may be
42          given upon or after filing the notice of appeal or after obtaining the order allowing the
43          appeal. The stay takes effect when the court approves the bond.
44
45                                        * * * * *

Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                                                   Page 112

COMMITTEE NOTE

Subdivisions (a), (b), (c), and (d) of former Rule 62 are reorganized and the provisions for staying a judgment are revised.

The provisions for staying an injunction, receivership, or order for a patent accounting are reorganized by consolidating them in new subdivisions (c) and (d). There is no change in meaning. The language is revised to include all of the words used in 28 U.S.C. § 1292(a)(1) to describe the right to appeal from interlocutory actions with respect to an injunction, but subdivisions (c) and (d) apply both to interlocutory injunction orders and to final judgments that grant, refuse, or otherwise deal with an injunction.

New Rule 62(a) extends the period of the automatic stay to 30 days. Former Rule 62(a) set the period at 14 days, while former Rule 62(b) provided for a court-ordered stay "pending disposition of" motions under Rules 50, 52, 59, and 60. The time for making motions under Rules 50, 52, and 59, however, was later extended to 28 days, leaving an apparent gap between expiration of the automatic stay and any of those motions (or a Rule 60 motion) made more than 14 days after entry of judgment. The revised rule eliminates any need to rely on inherent power to issue a stay during this period. Setting the period at 30 days coincides with the time for filing most appeals in civil actions, providing a would-be appellant the full period of appeal time to arrange a stay by other means. A 30-day automatic stay also suffices in cases governed by a 60-day appeal period.

Amended Rule 62(a) expressly recognizes the court's authority to dissolve the automatic stay or supersede it by a court-ordered stay. One reason for dissolving the automatic stay may be a risk that the judgment debtor's assets will be dissipated. Similarly, it may be important to allow immediate enforcement of a judgment that does not involve a payment of money. The court may address the risks of immediate execution by ordering dissolution of the stay only on condition that security be posted by the judgment creditor. Rather than dissolve the stay, the court may choose to supersede it by ordering a stay that lasts longer or requires security.

Subdivision 62(b) carries forward in modified form the supersedeas bond provisions of former Rule 62(d). A stay may be obtained under subdivision (b) at any time after judgment is entered. Thus a stay may be obtained before the automatic stay has expired, or after the automatic stay has been lifted by the court. The new rule's text makes explicit the opportunity to post security in a form other than a bond. The stay takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or security—a party may find it convenient to arrange a single bond or other security that persists through completion of post-judgment proceedings in the trial court and on through completion of all proceedings on appeal by issuance of the appellate mandate. This provision does not supersede the opportunity for a stay under 28 U.S.C. § 2101(f) pending review by the Supreme Court on certiorari. Finally, subdivision (b) changes the provision in former subdivision (d) that "an appellant" may obtain a stay. Under new subdivision (b), "a party" may obtain a stay. For example, a party may wish to

Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                                     Page 113

44   secure a stay pending disposition of post-judgment proceedings after expiration of the automatic
45   stay, not yet knowing whether it will want to appeal.

### RULE 62 CLEAN TEXT

**Rule 62. Stay of Proceedings to Enforce a Judgment**

(a) AUTOMATIC STAY.; Exceptions for Injunctions, Receiverships, and Patent Accountings. Except as provided in Rule 62(c) and (d), execution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, unless the court orders otherwise.

(b) STAY BY BOND OR OTHER SECURITY. At any time after judgment is entered, a party may obtain a stay by providing a bond or other security. The stay takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or security.

(c) STAY OF AN INJUNCTION, RECEIVERSHIP, OR PATENT ACCOUNTING ORDER. Unless the court orders otherwise, the following are not stayed after being entered, even if an appeal is taken:

(1) an interlocutory or final judgment in an action for an injunction or receivership; or

(2) a judgment or order that directs an accounting in an action for patent infringement.

(d) INJUNCTION PENDING AN APPEAL. While an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights. If the judgment appealed from is rendered by a statutory three-judge district court, the order must be made either:

(1) by that court sitting in open session; or

(2) by the assent of all its judges, as evidenced by their signatures.

* * * * *

Gap Report

No changes have been made in the Rule and Committee Note as published.

Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                                    Page 114

## Rule 65.1 as Published

1  **Rule 65.1. Proceedings Against a Surety or Other Security Provider**
2
3      Whenever these rules (including the Supplemental Rules for Admiralty or Maritime
4          Claims and Asset Forfeiture Actions) require or allow a party to give security, and
5          security is given through a bond, other security, or other undertaking, with one or
6          more sureties or other security providers, each ~~surety~~ provider submits to the
7          court's jurisdiction and irrevocably appoints the court clerk as its agent for
8          receiving service of any papers that affect its liability on the bond, ~~or~~ undertaking,
9          or other security. The ~~surety's~~ security provider's liability may be enforced on
10         motion without an independent action. The motion and any notice that the court
11         orders may be served on the court clerk, who must promptly mail a copy of each
12         to     every     ~~surety~~     security     provider     whose     address     is     known.

1                                        COMMITTEE NOTE
2
3          Rule 65.1 is amended to reflect the amendments of Rule 62. Rule 62 allows a party to
4      obtain a stay of a judgment "by providing a bond or other security." Limiting Rule 65.1
5      enforcement procedures to sureties might exclude use of those procedures against a security
6      provider that is not a surety. All security providers are brought into Rule 65.1 by these
7      amendments.

*Revising Rule 65.1 as Published*

          The Committee recommends Rule 65.1 for adoption with changes designed to establish
uniformity with Appellate Rule 8(b). The changes remove all references to "bond,"
"undertaking," and "surety." "Security" and "security provider" include these forms of security
and sureties.

1  **Rule 65.1. Proceedings Against a ~~Surety or Other~~ Security Provider**
2
3      Whenever these rules (including the Supplemental Rules for Admiralty or Maritime Claims and
4          Asset Forfeiture Actions) require or allow a party to give security, and security is given
5          ~~through a bond, other security, or other undertaking,~~ with one or more ~~sureties or other~~
6          security providers, each ~~surety~~ provider submits to the court's jurisdiction and
7          irrevocably appoints the court clerk as its agent for receiving service of any papers that
8          affect its liability on the ~~bond, or undertaking, or other~~ security. The ~~surety's~~ security
9          provider's liability may be enforced on motion without an independent action. The
10         motion and any notice that the court orders may be served on the court clerk, who must
11         promptly mail a copy of each to every ~~surety~~ security provider whose address is known.

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                                          Page 115

COMMITTEE NOTE

1
2
3      Rule 65.1 is amended to reflect the amendments of Rule 62. Rule 62 allows a party to
4  obtain a stay of a judgment "by providing a bond or other security." Limiting Rule 65.1
5  enforcement procedures to sureties might exclude use of those procedures against a security
6  provider that is not a surety. All security providers, including sureties, are brought into Rule 65.1
7  by these amendments. But the reference to "bond" is retained in Rule 62 because it has a long
8  history.

## RULE 65.1 CLEAN TEXT

### Rule 65.1. Proceedings Against a Security Provider

Whenever these rules (including the Supplemental Rules for Admiralty or Maritime Claims and
Asset Forfeiture Actions) require or allow a party to give security, and security is given
with one or more security providers, each provider submits to the court's jurisdiction and
irrevocably appoints the court clerk as its agent for receiving service of any papers that
affect its liability on the security. The security provider's liability may be enforced on
motion without an independent action. The motion and any notice that the court orders
may be served on the court clerk, who must promptly mail a copy of each to every
security provider whose address is known.

COMMITTEE NOTE

Rule 65.1 is amended to reflect the amendments of Rule 62. Rule 62 allows a party to
obtain a stay of a judgment "by providing a bond or other security." Limiting Rule 65.1
enforcement procedures to sureties might exclude use of those procedures against a security
provider that is not a surety. All security providers, including sureties, are brought into Rule 65.1
by these amendments. But the reference to "bond" is retained in Rule 62 because it has a long
history.

Gap Report

The rule text was changed to eliminate references to "bond," "undertaking," and "surety."
An explanation was added to the Committee Note.

**Excerpt from the May 18, 2017 Report of the Advisory Committee on Civil Rules**

Report to the Standing Committee
Advisory Committee on Civil Rules
May 18, 2017                                                                                     Page 116

SUMMARY OF COMMENTS
RULE 62

*In General*

Hon. Benjamin C. Mizer, CV-2016-0004-0037: Says simply that the Department of Justice supports these amendments.
Cheryl L. Siler, Esq., Aderant CompuLaw, CV-2016-0004-0058: The proposed revisions are reasonable.

Pennsylvania Bar Association, CV-0064: Changing Rule 62(a) to provide a 30-day automatic stay "makes sense, since that would be the appeal period in most matters." The stay power established by Rule 62(a) makes present Rule 62(b) redundant; it is properly deleted. Adoption of the Rule 62 amendments is recommended.

RULE 65.1

*In General*

Hon. Benjamin C. Mizer, CV-2016-0004-0037: Says simply that the Department of Justice supports these amendments.

Cheryl L. Siler, Esq., Aderant CompuLaw, CV-2016-0004-0058: The proposed revisions are reasonable.

Pennsylvania Bar Association, CV-0064: The amendments conform to the changes in Rule 62. Adoption is recommended.

\* \* \* \* \*

○