IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JACK BOOTHE, individually and
on behalf of all others similarly  *
situated,

    Plaintiff,  *

v.  *      CIVIL NO. JKB-16-3742

NORTHSTAR REALTY FINANCE  *
CORP., INC., et al.,

    Defendants.  *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

This case involved the merger between Colony Capital, Inc., NorthStar Asset Management Group, Inc., and NorthStar Realty Financial Corp. ("Defendants"). A number of public shareholders—including Jack Boothe ("Plaintiff"), a shareholder in NorthStar Realty Finance Corp. ("NRF")—challenged the merger. In November 2017, Plaintiff and Defendants agreed to a settlement, terminating the case. Now, four former NRF shareholders move to intervene in the closed case, seeking relief from the judgment so that they can proceed on their own claims against Defendants. The motions have been fully briefed, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, the Court will deny the motion to intervene and for relief from the final order and judgment.

## I. *Procedural Background*

In June 2016, Defendants entered into a planned merger agreement. (*See* 11/18/16 S'holder Ltr., ECF No. 36-7.) Defendants notified their shareholders of the proposed merger and requested their votes. (*Id.*) Over the course of the next few months, several shareholders sued Defendants

1

for violating § 14(a) and § 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a), and Securities Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff filed his complaint on November 18, 2016. (Compl. at 1, ECF No. 1.) Plaintiff alleged that the joint proxy statement, circulated to the shareholders, "contain[ed] materially incomplete and misleading information concerning: (1) the financial projections for [Defendants], which were relied upon by the board in assessing the fairness of the Merger Consideration and by the Company's financial advisor, . . . and (ii) certain information regarding the valuation analyses [the financial advisor] performed in support of its fairness opinion." (*Id.* at 2–3.) Plaintiff sought class certification and an injunction against the merger. (*Id.* at 18.)

News of Plaintiff's complaint became public immediately. On November 18, *Law360* published an article, stating, "A [NRF] investor on Friday blasted the proposed three-way merger . . . contending in Maryland federal court that the 'unfair' deal shortchanges investors." (*Law360* Article, ECF No. 43-9.) The article named Jack Boothe as that investor. (*Id.*) News of the proposed settlement also promptly became public. On December 9, the parties filed the proposed settlement with the SEC and noted the "customary release of claims relating to the Mergers." (12/9/16 Form 8-K at 2, ECF No. 43-8.) One week later, *The DI Wire* reported on the proposed settlement, noting "in exchange for making the disclosures, defendants will be released from claims relating to the merger, upon court approval." (*The DI Wire* Article, ECF No. 43-10.)

Plaintiff and Defendants agreed to the proposed settlement in June 2017. (Joint Prop. Settlement, ECF No. 10-2.) The proposed settlement moved the Court to certify a non-opt out class of all NRF shareholders, preliminarily approve the terms of the settlement, approve the means of notifying the class of the settlement, and schedule a fairness hearing. (*Id.* at 7.) The Court granted preliminary approval. (Order, ECF No. 11.) Plaintiffs and Defendants hired a legal

administrative services company to mail notice of the proposed class action settlement to all class members who could be identified. (Fraga Affidavit, ECF No. 22-1.)

This Court held a fairness hearing. (Tr., ECF No. 26.) The Court heard from two objectors: Lawrence Dvores and Howard Hoffman. Collectively, the objectors argued that counsel had conflicting interests; that Plaintiff failed to pursue certain claims; that notice to shareholders was inadequate; and that the scope of the release was too broad. (*Id.* at 19, 23, 30–31.) The Court considered all these objections, inquiring into each issue. (*Id.* at 6:21–25, 19:17–20:4, 17:20–19:12, 23–40.) The Court determined that the settlement was fair and reasonable and, accordingly, approved it on November 30, 2017. (Judgment, ECF No. 30.) The settlement dismissed all claims against Defendants, and Plaintiff agreed to a broad release such that "all Class Members"—that is, all NRF shareholders—were deemed to have forever released completely claims of any kind that related to the merger. (Judgment at 4–6.) Dvores appealed.

Michael Bumgardner, William Pennington, John Wood, and Marjorie Wood ("Intervenors") seek to intervene in this case. (Mot. Intervene, ECF No. 36.) In July 2018, Intervenors filed complaints in California courts, alleging that Defendants violated different provisions of the Securities Exchange Act. *See* 15 U.S.C. §§ 77k, 77l(a)(2), 77o. (Cal. Compls., ECF No. 36-4, 36-5, 36-6.) At the end of July, Intervenors filed an amicus brief in Dvores's appeal, but Dvores settled in September. (Notice Dismissal, ECF No. 43-7.) On November 13, Intervenors moved to intervene, asserting that, as former NRF shareholders, they were members of the non-opt out class certified by this Court and, as such, their claims were released by Plaintiff's settlement agreement. (Mot. Intervene Mem. at 2, ECF No. 36-1.) To this Court, Intervenors argue that the judgment must be vacated or amended because Plaintiff (1) failed to investigate claims that were subsequently released; (2) misrepresented to the Court the nature of the claims

being released; (3) made misstatements in the Registration Statement; and (4) did not comply with the Private Securities Litigation Reform Act ("PSLRA"). (*Id.* at 12–20.)

## II. Legal Analysis

The Court addresses the motion to intervene first. *See In re Corneal*, JFM-00-3536, 2001 WL 34388125, at *3 n.2 (D. Md. Oct. 1, 2001). "[W]hether one may intervene logically precedes whether one may do so to reopen a judgment." *Bunge Agribusiness Singapore Pte. Ltd. v. Dalian Hualiang Enter. Grp.*, 581 F. App'x 548, 551 (7th Cir. 2014). Because absent class members are generally treated as non-parties to a class action, "it has long been the general rule that some form of participation in the litigation is necessary before an unnamed class member can seek relief under Rule 60(b)." *Adelson v. Ocwen Fin. Corp.*, 621 F. App'x 348, 351 (7th Cir. 2015); *cf. Devlin v. Scardelletti*, 536 U.S. 1, 14 (2005) (holding nonnamed class members who object to approval of a class action settlement at the fairness hearing have the power to appeal without moving to intervene). Intervenors are unnamed class members, who have not objected to the settlement until now; therefore, they must first prevail on intervention before claiming relief from the judgment.

### A. Motion to Intervene

District courts have broad discretion to grant or deny intervention. *Stuart v. Huff*, 706 F.3d 345, 350 (4th Cir. 2013) ("Rule 24's requirements are based on dynamics that develop in the trial court and ... the court is accordingly in the best position to evaluate [them]."). Liberal intervention is desirable to involve as many concerned individuals and dispose of as much of the controversy as comports with efficiency and due process. *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986). But, courts are reluctant to grant intervention where the intervenor appears to have known of the litigation and delayed unduly in seeking to intervene. Mary Kay Kane, 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1916 (3d ed. 2018).

Intervenors seek intervention of right or, alternatively, permissive intervention. A court *must* permit anyone to intervene who, on "timely motion," "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). A court *may* permit anyone to intervene, who, on "timely motion," "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Regardless of whether intervention is claimed of right or permissively, the claim must be timely; therefore, the court, in which the motion to intervene is pending, must first be satisfied that the motion is timely." *Nat'l Ass'n for Advancement of Colored People v. New York*, 413 U.S. 345, 365–66 (1973) [hereinafter *NAACP*] ("If it is untimely, intervention must be denied.").

### *1. Timeliness*

Intervenors assert that their motion is timely because they acted diligently. The standard for determining timeliness depends on the type of intervention sought. For intervention of right, "the timeliness requirement of Rule 24 should not be as strictly enforced as in a case where intervention is only permissive." *Brink v. Dalesio*, 667 F.2d 420, 428 (4th Cir. 1981); *see also Gottlieb v. Lincoln Nat'l Life Ins. Co.*, 388 F. Supp. 2d 574, 578 (D. Md. 2005) (granting intervention of right because "delay in seeking to intervene is minor and has not prejudiced [existing parties] as this matter is in its early stages"). The Court concludes that Intervenors have not established timeliness for intervention of right.

To determine the timeliness of a motion to intervene of right, a court must assess: (1) "how far the underlying suit has progressed"; (2) "why the movant was tardy in filing its motion"; and (3) "the prejudice any resulting delay might cause the other parties." *Alt v. U.S. Env't Prot.*

*Agency*, 758 F.3d 588, 591 (4th Cir. 2014); *see also NAACP*, 413 U.S. at 366 ("Timeliness is to be determined from all the circumstances."). "A district court has wide discretion in determining what is timely." *Bond v. Cricket Commc'ns, LLC*, Civ. No. MJG-15-923, 2017 WL 4838754, at *5 (D. Md. Oct. 26, 2017).

Intervenors filed their motion to intervene late in the underlying proceedings: after the preliminary settlement, judgment, and termination of the case. *See Scott v. Bond*, 734 F. App'x 188, 191 (4th Cir. 2018) ("A settlement in principle raises a strong interest in finality."). "A motion to intervene filed after judgment must make a 'strong showing' to overcome the presumption that it is untimely." *Sewell v. Int'l Longshoremen's Ass'n, Local No. 333*, Civ. No. SKG-12-44, 2013 WL 6992150, at *2 (D. Md. Oct. 29, 2013) (quoting *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 840 (4th Cir. 1999)). The underlying suit has progressed to completion, and Intervenors move at the latest stage in the proceeding. *See Scott*, 734 F. App'x at 191 ("[I]n relation to the stage of the proceedings, the timeliness requirement is intended to prevent an intervenor from 'derailing a lawsuit within sight of the terminal.'" (quoting *Alt*, 758 F.3d at 591)).

Intervenors not only file late in the proceedings; they also appear to have been on notice of the lawsuit from the beginning. *See, e.g., Reaching Hearts Int'l, Inc. v. Prince George's Cnty.*, Civ. No. RWT-11-1959, 2011 WL 4459095, at *3 (D. Md. Sept. 23, 2011) (denying post-judgment motion to intervene where "intervenors were fully cognizant of the ongoing litigation"). In December 2016, the proposed settlement was filed with the SEC. (12/9/16 Form 8-K at 2.) After Plaintiff and Defendants received the Court's preliminary approval of the settlement, they hired a legal administrative services company to mail notice of the proposed class action settlement to all class members who could be identified. (Fraga Affidavit.) The company has since confirmed that notice was mailed to two Intervenors and was not returned to sender. (Amin-Gwiner Decl. ¶ 7,

ECF No. 42-3.) This Court spent a large portion of the fairness hearing investigating the sufficiency of the notice provided to shareholders. (Tr. at 23–40.) Even though Intervenors must establish the timeliness of their motion, they offer nothing but an assertion that they were unaware of the class action settlement to rebut the evidence that they had notice of the settlement as early as December 2016. (*See* Mot. Intervene Mem. at 22.) Because Intervenors file late in the proceedings and were on notice of the settlement, the first factor weighs against intervention.

As for the reason for this delay, Intervenors argue that they acted as diligently as they could and that, upon learning the truth about the merger, they filed securities complaints, an amicus brief for Dvores's appeal, and the motion to intervene. (*Id.*) "[A] movant seeking intervention must provide a plausible justification for a tardy motion to intervene." *Scott*, 734 F. App'x at 192. Plausible justifications include never receiving notice of a class action or a substantial change in circumstances in the case. *Id.*; *see also Gould v. Alleco, Inc.*, 883 F.2d 281, 287 (4th Cir. 1989) (concluding health problems did not justify tardy intervention where intervenor was capable of filing motions and was doing so in other cases). Intervenors argue that, until March 2018, "they were not on notice that valuable claims had been released by the Order." (Reply at 12, ECF No 48.[1]) According to the undisputed evidence, however, Intervenors were on notice of the release starting in December 2016. (Fraga Affidavit; Amin-Gwiner Decl. ¶ 7; 10/27/17 Tr. at 23–40.) Indeed, the Form 8-K filed with the SEC in December 2016 referenced that the settlement included "the customary release of claims related to the Merger." (12/9/16 Form 8-K at 2.)

---

[1] Having devoted a mere two pages of their original motion to argue intervention, Intervenors make this argument—and most of their intervention arguments—on Reply. Although "[t]he ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered," the courts have discretion and "are not precluded from considering such issues in appropriate circumstances." *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006). Here, Intervenors had the burden of establishing grounds for intervention—so obviously so that Plaintiff and Defendants presented full-fledged opposition arguments. Thus, the existing parties would not be prejudiced by the Court's consideration of Intervenor's new arguments and new evidence in Reply. The Court, therefore, exercises its discretion to piece together Intervenor's arguments from its Reply and its Rule 60 arguments, which contain the bulk of the showing of allegedly inadequate representation.

7

Intervenors argue that a March 2018 press release, detailing a net loss for shareholders of the newly merged corporation, constituted "a significant change in circumstances of this case." (Reply at 12.) Intervenors claim that the press release alerted them to Defendants' securities violations for the first time, but they do not specify what these violations were. (*Id.*) Based on Intervenors' Rule 60 arguments, the Court surmises that the March 2018 press release is the purported newly discovered evidence that alerted Intervenors to misstatements in the November 2016 registration statement. (Mot. Intervene Mem. at 18–19.) Intervenors do not explain exactly what was misleading in the registration statement nor how the March 2018 declaration of shareholders' net losses revealed it. (*See* Reg. Stat., ECF No. 36-8; Press Release, ECF No. 48-3.) On this showing, the Court cannot say whether the March 2018 press release constituted a change in circumstances, justifying tardy intervention.

Even after the March 2018 press release, Intervenors did not act in the underlying suit until filing an amicus brief in Dvores's appeal four months later. Plaintiffs argue that Intervenors should have moved to intervene during the appeal. (Pl. Opp. at 9, ECF No. 43.) But, filing motions to intervene during the pendency of an appeal of the same issue would result in the very "multiplicity of activity which Rule 23 was designed to avoid." *Parker v. Crown, Cork & Seal Co.*, 677 F.2d 391, 394 n.4 (4th Cir. 1982) (quoting *United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977)). The Court does not fault Intervenors for choosing to participate in Dvores's appeal rather than intervening; however, their delay in doing either remains unexplained. As such, Intervenors have not provided a plausible justification for their delay.

The third factor is whether the existing parties would be prejudiced by intervention and delay so late in the litigation process. Prejudice is the "most important consideration in reviewing a motion to intervene." *Scott*, 734 F. App'x at 191. In general, existing parties are prejudiced by

"[t]he delay caused by substantial additional litigation." *Id.* at 192 (noting intervention that would disrupt a proposed settlement late in the litigation process is disfavored because it may "threaten the delicate balance reached by existing parties after protracted negotiations"); *see also Bond*, 2017 WL 4838754, at *5 (holding intervention would cause prejudice even before the settlement was finalized where the parties had undergone "a formal arm-length settlement negotiation"); *Gould*, 883 F.2d at 286–87 (describing how "substantial additional litigation" would prejudice plaintiffs by causing additional attorney's fees to eat away at their settlement and by delaying accrual of interest which would only begin once the court approved the settlement). Here, Defendants claim that the existing parties would be prejudiced by intervention because "they and this Court spent considerable time and resources litigating, negotiating the settlement, documenting it, providing notice of it, and addressing the objections." (Def. Opp. at 9, ECF No. 42.) And, Intervenors do not dispute that substantial additional litigation would occur in the event of intervention. (*See* Reply at 18.) Because this Court agrees with other courts in the Fourth Circuit, which have held that substantial additional litigation prejudices existing parties, the third factor weighs against intervention.

Intervenors fail to make the "strong showing" necessary to overcome the presumption that their post-judgment motion is untimely. *See Sewell*, 2013 WL 6992150, at *2 (holding post-judgment intervenors failed to overcome presumption where their intervention would prolong proceedings, they knew about the proceedings from the beginning, and they offered no good reason for their delay). "In a class action the critical issue with respect to timeliness is whether the proposed intervenor moved to intervene 'as soon as it became clear . . . that the interests of the unnamed class members would no longer be protected by the named class representatives.'" *Hill v. W. Elec. Co.*, 672 F.2d 381, 386 (4th Cir. 1982) (quoting *United Airlines*, 432 U.S. at 394).

Intervenors did not move when it became clear that Plaintiffs were not pursuing Intervenor's claims and, in fact, were releasing those exact claims. Intervenors do not meet the threshold requirement of filing a timely motion for intervention of right.

### 2. *Adequate Representation*

Even if the motion to intervene were timely, Intervenors fail to establish all the elements for intervention of right. In addition to timeliness, a proposed intervenor must establish the following elements to intervene as a matter of right: (1) an interest in the litigation, (2) a risk that, absent intervention, the interest will be impaired, and (3) inadequate representation of the interest by the plaintiffs. *Scott*, 734 F. App'x at 191. For purposes of this analysis, the Court assumes without deciding that Intervenors have established their class-member status, giving them an interest in the litigation. The Court also assumes that Intervenors have demonstrated that the interest is impaired by the class action settlement's release of claims, some of which Intervenors now wish to pursue. The Court concludes, however, that Intervenors have not established inadequate representation on the part of the Plaintiff.

There is a presumption that Plaintiff adequately represented the Intervenors' interests. Although an intervenor's burden to show inadequate representation is minimal, a presumption of adequate representation arises where the intervenor has the same ultimate objective as a party to the suit. *In re Am. Capital Agency Corp. Stockholder Derivative Litig.*, Civ. No. TDC-16-3215, 2017 WL 3311209, at *5 (D. Md. Aug. 2, 2017). "[One] typical example is a class action, in which all of the members of the class have precisely the same interest." 7C Wright & Miller, *supra*, § 1909; *see, e.g., Jenkins ex rel. Jenkins v. Missouri*, 78 F.3d 1270, 1275 (8th Cir. 1996) ("There is a presumption of adequate representation when the persons attempting to intervene are members of a class already involved in the litigation or are intervening only to protect the interests of class

members."). Because Plaintiff and Intervenors are both former NRF shareholders and, consequently, class members, their interests in the class action settlement are identical.

Where the presumption of adequate representation applies, intervenors have the "onerous" burden of making a compelling showing of the circumstances in the underlying suit that render the representation inadequate. *In re Richman*, 104 F.3d 654, 660 (4th Cir. 1997). The Fourth Circuit has interpreted this compelling showing to mean a showing of "adversity of interest, collusion, or nonfeasance." *JLS, Inc. v. Pub. Serv. Comm'n of W.V.*, 321 F. App'x 286, 289 (4th Cir. 2009). *But see* 7C Wright & Miller, *supra*, § 1909 (3d ed. 2018) ("The wide variety of cases that come to the courts make it unlikely that there are three and only three circumstances that would make representation inadequate and suggest that adequacy of representation is a very complex variable."). The fact that intervenors may disagree with the existing party's litigation strategy does not rebut the presumption of the existing party's adequate representation. *Stuart*, 706 F.3d at 353.

Intervenors argue that Plaintiff provided inadequate representation by failing to (1) comply with the PSLRA; (2) investigate the claims that were subsequently released; and (3) disclose the claims at issue and the release's scope. (Reply at 17; Mot. Intervene Mem. at 13–22.) The Court turns to each of these arguments in turn to determine whether Intervenors have made a compelling showing of inadequacy.

### i. *PSLRA*

Intervenors assert that the PSLRA was violated in two ways: first, that Plaintiff did not provide proper early notice under 15 U.S.C. § 78u-4(a)(3)(A)(i), and, second, that the Court did not appoint a lead plaintiff. (Mot. Intervene Mem. at 19–20, 20 n.19.)

Turning first to the early notice issue, the PSLRA mandates:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff . . . shall cause to be published, in a widely circulated

> national business-oriented publication or wire service, a notice advising members of the purported plaintiff class—(I) of the pendency of the action, the claims asserted therein, and the purported class period; (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i). Plaintiff appears to concede that he did not publish early notice within twenty days of filing his suit. (Pl. Opp. at 19.) Instead, Plaintiff argues that the settlement process cured any deficiency with the PSLRA notice. (*Id.*) By contrast, Intervenors assert that noncompliance with the PSLRA early notice provision is fatal to a class action law suit. (Mot. Intervene Mem. at 20.)

The purpose of the early notice requirement is to describe the nature of the suit and inform class members of their opportunity to participate. *Ravens v. Iftikar*, 174 F.R.D. 651, 655 (N.D. Cal. 1997). "Congress' purpose was not to ensure notice to the entire class, but merely to those sophisticated and institutional investors that Congress deemed presumptively most adequate to serve as lead plaintiffs in securities class actions." *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 63 (D. Mass. 1996). Although the PSLRA requires early notice, it "is silent regarding the effect of failure to comply." *Griffin v. PaineWebber Inc.*, 84 F. Supp. 2d 508, 514 (S.D.N.Y. 1997). In *Griffin*, the court concluded that, even though plaintiff admitted his failure to comply with early notice, dismissing the action was improper because "such a remedy would not serve the purpose for which the early notice provision was enacted, which was to enable investors to intervene in the litigation and take charge of it by, among other things, selecting the lawyers to represent the class and setting the terms of their compensation." 84 F. Supp. 2d at 514.

This Court and others have held that courts need not strictly interpret PSLRA requirements if the necessary information is comprehensible and readily available. *In re Mut. Funds Inv. Litig.*, Civ. No. JFM-04-560, 2010 WL 4780244, at *2 (D. Md. Nov. 15, 2010); *see also In re Indep.*

*Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 184 (S.D.N.Y. 2003) (holding that notice substantially complied with PSLRA and that a "minor violation . . . cannot invalidate notice that otherwise constitutes 'the best notice practicable under the circumstances'"); *see Carson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, Civ. No. HFW-97-5147, 1998 WL 34076402, at *5 (W.D. Ark. March 30, 1998) (declining to dismiss action where plaintiff "offered no explanation for his failure to comply with the mandatory notice provisions of the PSLRA."); *see generally* Kevin P. Roddy, *Nine Years of Practice & Procedure under the Private Secs. Litig. Reform Act of 1995* II.B.5 (Am. Law Inst. 2005). In fact, if Congress had wanted a violation of the early notice requirement to be "fatal," it would have articulated as much, *Carson*, 1998 WL 34076402, at *6, as it did with other provisions of the statute, *see id.* ("The PSLRA does require . . . that a court dismiss a complaint when a plaintiff fails to properly plead the requirements of a § 10(b) securities fraud action. 15 U.S.C. § 78u-4(b)(3)(A).").

The cases cited by Intervenors do not hold that noncompliance with the PSLRA early notice requirement is fatal to a class action. Intervenors cite *In re USEC Secs. Litig.*, 168 F. Supp. 2d 560 (D. Md. 2001) and *Greebel*, 939 F. Supp. 57, but they misread them. Both cases conclude, as a threshold matter, that defendants have standing to challenge plaintiffs' compliance with the PSLRA because "[f]ailure of the named plaintiff to file a certification with the complaint and to serve notice to class members are fatal to maintenance of the putative class action." *Greebel*, 939 F. Supp. at 60. These cases stand for the proposition that notifying class members of a class action is important enough to give defendants standing to challenge plaintiffs' PSLRA compliance. They also state that failing to notify class members *at all* is fatal to a suit. The term "fatal" is not used in relation to early notice, which serves a different purpose from notice of the suit or of a proposed settlement. *Greebel*, 939 F. Supp. at 63. The courts analyzed early notice separately and found

*Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 184 (S.D.N.Y. 2003) (holding that notice substantially complied with PSLRA and that a "minor violation . . . cannot invalidate notice that otherwise constitutes 'the best notice practicable under the circumstances'"); *see Carson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, Civ. No. HFW-97-5147, 1998 WL 34076402, at *5 (W.D. Ark. March 30, 1998) (declining to dismiss action where plaintiff "offered no explanation for his failure to comply with the mandatory notice provisions of the PSLRA."); *see generally* Kevin P. Roddy, *Nine Years of Practice & Procedure under the Private Secs. Litig. Reform Act of 1995* II.B.5 (Am. Law Inst. 2005). In fact, if Congress had wanted a violation of the early notice requirement to be "fatal," it would have articulated as much, *Carson*, 1998 WL 34076402, at *6, as it did with other provisions of the statute, *see id.* ("The PSLRA does require . . . that a court dismiss a complaint when a plaintiff fails to properly plead the requirements of a § 10(b) securities fraud action. 15 U.S.C. § 78u-4(b)(3)(A).").

The cases cited by Intervenors do not hold that noncompliance with the PSLRA early notice requirement is fatal to a class action. Intervenors cite *In re USEC Secs. Litig.*, 168 F. Supp. 2d 560 (D. Md. 2001) and *Greebel*, 939 F. Supp. 57, but they misread them. Both cases conclude, as a threshold matter, that defendants have standing to challenge plaintiffs' compliance with the PSLRA because "[f]ailure of the named plaintiff to file a certification with the complaint and to serve notice to class members are fatal to maintenance of the putative class action." *Greebel*, 939 F. Supp. at 60. These cases stand for the proposition that notifying class members of a class action is important enough to give defendants standing to challenge plaintiffs' PSLRA compliance. They also state that failing to notify class members *at all* is fatal to a suit. The term "fatal" is not used in relation to early notice, which serves a different purpose from notice of the suit or of a proposed settlement. *Greebel*, 939 F. Supp. at 63. The courts analyzed early notice separately and found

its requirements were met in both cases. *USEC*, 168 F. Supp. 2d at 566–67; *Greebel*, 939 F. Supp. at 64.

Intervenors cite *In re Veritas Software Corp. Secs. Litig.*, 496 F.3d 962 (9th Cir. 2007), which vacated the district court's approval of a settlement and remanded to issue new notice to the class. *Id.* at 972. *Veritas* is distinguishable from this case. First, the notice at issue in *Veritas* was notice of proposed settlement, § 78u-4(a)(7)(A), not early notice, § 78u-4(a)(3)(A)(i). *Id.* at 969. Second, the Court in *Veritas* not only found the notice violated the PSLRA, it also found the notice was inadequate: "[i]n this case, where the notice was inadequate and overstated the likely recovery per share, it may have discouraged other objectors from speaking up." *Id.* at 972. The way in which the plaintiff failed to comply with the PSLRA—by noticing the class members with misleading information—caused the notice to be so inadequate as to "inject a fatal flaw into the entire settlement process." *Id.* Cases interpreting *Veritas* have concluded that it remanded because the notice was misleading, not because the notice violated the PSLRA. *See In re Am. Int'l Grp., Inc. Secs. Litig.*, Civ. No. DAB-04-8141, 2010 WL 5060697, at *3 (S.D.N.Y. Dec. 2, 2010).

Here, the record does not indicate that Plaintiff published early notice within twenty days of filing his complaint. In *Central Community Church of God v. Ent & Imler CPA Group, PC*, notice was not published until nearly a year after the plaintiff filed the complaint. Civ. No. DFH-03-678, 2005 WL 1115960, at *3 (S.D. Ind. May 9, 2005). The court in *Central Community* rejected defendants' arguments that the failure to comply with the PSLRA early notice requirement invalidated the class action because defendants offered "no argument or evidence that the notice was substantively defective or that potential class members have somehow not received sufficient notice of the nature of the claims being pursued or their opportunity to serve as lead plaintiff." *Id.*

"Potential class members who read the late notice or followed the litigation as a result of local publicity have not sought to take on the responsibility of serving as lead plaintiff." *Id.*

Intervenors similarly fail to show that NRF shareholders did not receive notice or were prejudiced by Plaintiff's failure to comply with the letter of the PSLRA. Plaintiff points out that the class action complaint received publicity early on, attaching one article published on November 18, 2016 (the day Boothe filed his complaint) and another on December 15, 2016. (*Law360* Article; *The DI Wire* Article.) This Court examined the issue of whether NRF shareholders received adequate notice of the proposed settlement and concluded that they did, in finding the settlement "fair, adequate and reasonable." (Tr. at 41:11.) Although shareholders should receive notice early so that they might move to become lead plaintiff or intervene in the litigation, none of the shareholders so moved upon receiving notice of the class action. Intervenors have thus failed to show that NRF shareholders were prejudiced. Like the court in *Central Community*, this Court acknowledges that a failure to comply with the early notice requirement "could affect a choice among competing applicants as lead plaintiffs," but, like in *Central Community*, "there are no competing applicants" here. 2005 WL 1115960, at *3.

The Court appointed Boothe lead plaintiff. Under the PSLRA, "the court shall consider any motion made by a purported class member in response to the notice . . . and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The court shall presume that the most adequate plaintiff is the person that "(aa) has filed the complaint or made a motion in response to a notice under subparagraph (A)(i); (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). In its

preliminary approval of the settlement, the Court found that Plaintiff and his counsel would "fairly and adequately represent the interest of the Settlement Class in enforcing their rights in the NRF action." (Order at 2.) And, it does not appear that another NRF shareholder filed a competing motion for lead plaintiff. (*See* Mot. Intervene Mem at 20 n.19.)

The Court does not minimize the importance of following the PSLRA in the first instance. It is certainly not best practices to skirt the PSLRA requirements; however, where, as here, there was actual notice given to the class members, with enough time to object, the failure to issue early notice does not rise to the level of inadequacy. The bulk of the case law concludes that dismissing after the fact is not in keeping with the text of the PSLRA and would not serve the statute's purposes. To the extent that Plaintiff failed to comply with the PSLRA, such failure does not constitute nonfeasance or any other form of inadequacy.

### ii. *Sufficiency of Investigation*

Intervenors argue that Plaintiffs failed to sufficiently investigate before agreeing to a broad release of claims. (Mot. Intervene Mem. at 13.) The Court evaluated the investigation at the fairness hearing to make sure that Plaintiff's counsel "did their diligence." (Tr. at 17:20–19:12.) Rather than list what more Plaintiff could have investigated, Intervenors challenge Plaintiff's decision to pursue the claims that he did and to agree to the release. For example, Intervenors cite to cases in other jurisdictions to show that courts have rejected disclosure-only settlements—like this one—where the settlement would broadly release claims that the lead plaintiff had not pursued. (Mot. Intervene Mem. at 14–15.) But a difference in litigation strategy does not establish that representation was inadequate. *Stuart*, 706 F.3d at 353. Although these cases could be persuasive considerations at a fairness hearing, they do not rebut the presumption that Plaintiff adequately represented the interests of the class here.

### *iii. Misrepresentation*

Intervenors argue that "Plaintiffs misrepresented the claims at issue in the case, the scope of the release, and, generally, what was at stake in the settlement." (Mot. Intervene Mem. at 15–16.) Intervenors appear to be making two points: that counsel for the existing parties colluded and that counsel misrepresented the claims being released. Intervenors assert that "[h]ad these questions been answered accurately, that would likely have caused this Court to reject the settlement." (*Id.* at 16.)

Intervenors acknowledge that the Court raised the issue of collusion at the fairness hearing. (*Id.*) At the hearing, counsel said, "It's not unusual, Your Honor, to coordinate litigation. We've done that in a number of cases. And there was no conflict at any given time, Your Honor. Because this was a disclosure case. This was not a monetary case. We were concerned with the proxy statement." (Tr. at 6:21–25.) Dvores also claimed that Plaintiff's counsel was improperly representing shareholders with conflicting interests. (*Id.* at 19:17–20:4.) The Court considered the objections to the class counsel but ultimately concluded that "Plaintiff and Class Counsel have fairly and adequately protected and represented the interests of the Settlement Class." (Judgment at 3.) Here, Intervenors state in a conclusive manner that Plaintiff "put his attorneys' interests ahead of the interest of NRF shareholders," (Mot. Intervene Mem. at 22), but they do not show how Plaintiff's counsel specifically failed to represent the class members or how Plaintiff's counsel colluded with defense counsel.

Intervenors also acknowledge that the Court questioned the scope of the release at the hearing. (*Id.* at 16.) Intervenors assert that counsel incorrectly assured the Court that "there were *no monetary claims at issue* or being released." (*Id.*) Intervenors do not quote the transcript, because the transcript contains no such statement. Rather, Plaintiff's counsel noted that "this was

17

a disclosure case," "not a monetary case," in describing the claims brought by Plaintiff. (Tr. at 6:24–25.) Further, counsel described the potential claims under Maryland and Delaware law:

> And in one case that comes to mind, it's on one of my slides, slide seven. Corwin v. KKR, Your Honor, I mean, essentially shareholder rights are—every day are getting extinguished by some of the recent case law being developed in Delaware Chancery Court. And essentially it says you can ratify an arm's length transaction if you disclose all the material information. So that defendants cannot get sued for damages after the transaction closes. That's the law on a state fiduciary duty case.
>
> And Colony capital, it's a Maryland corporation, but NSAM and NRF are Delaware corporations. And it would certainly apply to NSAM and NRF. And on Colony Capital, Maryland has pretty much adopted Delaware law. So I think it should also apply. And that is if the information [is] disclosed and there's an informed vote, you cannot sue for damages. The only exception is if there's an entire fairness. That's if it's a controlled transaction, which wasn't the case here. . . .
>
> And that's why we can easily give up claims because, frankly, there were no viable claims. And we conducted deposition[s] to ensure there was nothing that could even arise to a potential argument for entire fairness, which can be the traditional procedure where you have a lead buyout, or it could be that someone is receiving a unique benefit, sometimes there's an exception that allows sometimes to argue fairness. And no conflict existed here.

(*Id.* at 9:16-10:16.) Later in the hearing, counsel concluded:

> There were no claims whatsoever that we felt could be pursued. On the federal side, the Exchange Act, the statute is—its purpose is to ensure an informed vote. That's its purpose. And if you have the disclosure of material information done before the vote, which is what the statute tends to ensure, there's no damages that you can pursue after.

(*Id.* at 11: 8–14.) Nothing in the transcript indicates that counsel told the Court that the proposed settlement would release no monetary claims. Even if counsel had said so, the Court was unlikely to be misled because the Court could read the text of the release, which clearly released all "claims, demands, rights, liabilities," etc., in connection with the merger. (Judgment at 4.)

18

The Court concludes that Intervenors fail to show that Plaintiff was inadequate in his compliance with the PSLRA, his investigation of potential claims, and his representations to the Court. Therefore, although the Court denies intervention of right as untimely, it does not deny it on that ground alone. Turning to the substantive elements, the Court concludes that Intervenors fail to establish inadequate representation too.[2]

### B. *Motion for Relief from the Judgment*

Because the Court denies intervention, it must deny relief from the judgment as well. *See Corneal*, 2001 WL 34388125, at *3 n.2 (concluding nonparty proposed intervenor must first succeed in intervening before seeking relief from court order); *see, e.g.*, *In re Pet Food Prods. Liab. Litig.*, 345 F. App'x 857, 860–61 (3d Cir. 2009) ("Since Earl could not intervene, he was not a party to the lawsuit and the District Court had no choice but to deny his Rule 60(b) motion.").

### III. Conclusion

For the foregoing reasons, an Order shall enter denying Intervenors' motion to intervene and for relief from the final order and judgment.

DATED this 12 day of February, 2019.

BY THE COURT:

_____
James K. Bredar
Chief Judge

---

[2] In addition, the Court declines to exercise its discretion to grant permissive intervention. "A court, in exercising its discretion, 'must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" *Reaching Hearts*, 2011 WL 4459095, at *4 (quoting Fed. R. Civ. P. 24(b)(3)). The analyses of delay and prejudice were encompassed in this Court's analysis of intervention of right. Therefore, because this Court has concluded that the motion to intervene was untimely and intervention would unduly prejudice the existing parties, permissive intervention is denied.